## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **FOOD NOT BOMBS HOUSTON,** | § | |
| **BRANDON WALSH** | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **C.A. No. 4:24-CV-00338** |
| | § | |
| **THE CITY OF HOUSTON, TEXAS,** | § | |
| **Defendant** | § | |

## Consolidated with

| | | |
|---|---|---|
| **PHILLIP PICONE,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | **C.A. NO. 4:23-CV-1206** |
| **OFFICER A. ANCIRA,** *in his* | § | |
| *Individual capacity***, and THE CITY OF** | § | |
| **HOUSTON, TEXAS,** | § | |
| **Defendants** | § | **Judge Andrew Hanen** |

## DEFENDANT CITY OF HOUSTON, TEXAS'S
## <u>CONSOLIDATED MOTION FOR SUMMARY JUDGMENT</u>

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant the City of Houston, Texas files this its Consolidated Motion for Summary Judgment on Plaintiffs' claims and causes of action pursuant to Federal Rule of Civil Procedure 56.

## TABLE OF CONTENTS

I.   NATURE AND STAGE OF THE PROCEEDINGS ...................................1

II.  STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ........2

III. SUMMARY OF THE ARGUMENT .........................................................2

IV.  SUMMARY JUDGMENT EVIDENCE ....................................................4

V.   ARGUMENT AND AUTHORITIES........................................................6

     A.   SUMMARY JUDGMENT STANDARD ........................................6

     B.   FACTUAL BACKGROUND ...........................................................7

          1.   Houston's Policy to End Street Homelessness.......................7

          2.   The Citations ......................................................................13

     C.   SUMMARY JUDGMENT IS APPROPRIATE ...........................14

          1.   Houston's charitable food services provider program is not an
               unconstitutional restraint on speech or expressive conduct ...14

          2.   Food Not Bombs Houston has no injury in fact and no
               associational standing ...........................................................22

          3.   Even if Plaintiff's feeding people on public property without
               permission is protected speech or expressive conduct, it is
               subject to Houston's reasonable time, place, and manner
               restrictions.............................................................................23

          4.   Houston's ordinance constitutional on its face and as applied
               and Houston's official policies do not cause a constitutional
               injury to Plaintiffs .................................................................25

          5.   Houston's charitable feeding ordinance is presumed valid....29

**6.    Plaintiffs' claims under 42 U.S.C. §1983 and the First and Fourteenth Amendments to the U.S. Constitution are time-barred** ............................................................. **31**

**7.    Plaintiffs' requests for declaratory and injunctive relief are improper and unavailable  where Plaintiffs have no viable substantive cause of action** ......................................................... **34**

**VI.    CONCLUSION AND PRAYER FOR RELIEF** ...................................... **36**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Haworth*,
300 U.S. 227, 239–241 (1937) .........................................................35

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 557 (2007) ...............................................................23

*Black v. City of Killeen*,
78 S.W.3d 686, 691 (Tex. App.—Austin 2002, pet. denied) ...........................22

*Burrell v. Newsome*,
883 F.2d 416, 418 (5th Cir. 1989) ...........................................31, 32

*Butnaru v. Ford Motor Co*.,
84 S.W.3d 198, 210 (Tex. 2002) ....................................................35

*Celotex Corp. v. Catrett*,
477 U.S. 317, 322–25 (1986) ............................................................6

*City of Brookside Vill. v. Comeau*,
633 S.W.2d 790, 792 (Tex. 1982) ............................................29, 30

*City of Grants Pass, Oregon v. Johnson*
603 U.S. 520, 560 (2024) ...............................................................34

*City of Houston v. Guthrie*,
332 S.W.3d 578, 596-97 (Tex. App.—Houston [1st Dist.] 2009, pet.
denied) .............................................................................................34

*City of Houston v. Petroleum Traders Corp*.,
261 S.W.3d 350, 355 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ........14

*City of Richardson v. Kaplan*,
438 S.W.2d 366, 366 Tex. 1969) ....................................................34

*Clark v. Cmty. for Creative Non-Violence*,
468 U.S. 288, 293 (1984) ......................................................16, 17

*Collins v. City of Harker Heights, Texas*
    503 U.S. 115, 128-29 (1992)...........................................................35

*Cox v. Louisiana*,
    379 U.S. 536 (1965)..............................................................27, 30

*Dilley v. City of Houston*,
    222 S.W.2d 992, 993 (Tex. 1949) …………………………………………14

*Ethio Exp. Shuttle Service, Inc. v. City of Houston*,
    164 S.W.3d 751, 756 (Tex. App.—Houston [14th Dist.] 2005, no pet ……… 14

*Forsyth County v. Nationalist Movement*,
    505 U.S. 123, 131 (1992) …………………………………………………… 31

*Friends of the Earth Inc. v. Chevron Chemical Co*.,
    129 F.3d 826, 827-28 (5th Cir. 1997) …………………………………… 2, 22

*Funk v. Stryker Corp.*,
    631 F.3d 777, 783 (5th Cir. 2011) ……………………………………………7

*Hulin v. Fibreboard*,
    178 F.3d 316, 322 (5th Cir. 1999)…………………………………………… 35

*Hunt v. City of San Antonio*,
    462 S.W.2d 536, 539 (Tex. 1971) ..................................................29

*Hunt v. Washington State Apple Advertising Comm'n*,
    432 U.S. 333, 343 (1977) ........................................................2, 22

*Jackson v. Johnson*,
    950 F.2d 263, 265 (5th Cir. 1992) ..................................................32

*King-White v. Humble Indep. Sch. Dist*.,
    803 F.3d 754, 760 (5th Cir. 2015) ..................................................32

*Longoria v. City of Bay City, Texas*,
    779 F.2d 1136, 1138 (5th Cir. 1986) …………………………………...…..33

*Lowe v. Ingalls Shipbuilding*,
    723 F.2d 1173, 1179 (5th Cir. 1984) .........................................................35

*Malone v. City of Houston*,
    278 S.W.2d 204, 206 (Tex. Civ. App.—Galveston 1955, writ ref'd n.r.e.)….. 34

*McCullen v. Coakley*,
    573 U.S. 464 (2014) …………………………………………...........*ibid.*

*Monell v. Dep't of Soc. Servs. v. New York*,
    436 U.S. 658, 694 (1978)…………………………………..…………. *ibid.*

*Niemotko v. State of Md.*,
    340 U.S. 268, 271 (1951) ………………………………….................31

*Pineda v. City of Houston*,
    291 F.3d 325, 328 (5th Cir. 2002) .................................................27

*Piotrowski v. City of Houston*,
    51 F.3d 512, 514 n.5 (5th Cir. 1995) .........................................33

*Piotrowski v. City of Houston*,
    237 F.3d 567, 576) (5th Cir. 2001) ..........................................*ibid.*

*Public Affairs Assocs., Inc. v. Rickover*,
    369 U.S. 111, 112 (1962) .............................................................35

*Quick v. City of Austin*,
    7 S.W.3d 109, 117 (Tex. 1998) ....................................................30

*Ryan v. Rosenthal*,
    314 S.W.3d 136, 142-43(Tex. App.—Houston [14th Dist.] 2010, pet.
    denied) ...................................................................................34

*Santa Monica Food Not Bombs v. City of Santa Monica*,
    450 F.3d 1022, 1032 (9th Cir. 2006) .............................................30

*Shuttlesworth v. City of Birmingham, Alabama*,
    394 U.S. 147, 151 (1969) .....................................................17, 19

*Singleton v. Darby*,
    609 F. App'x 190, 195 (5th Cir. 2015) .........................................26

*Spotts v. United States*,
    613 F.3d 559, 574 (5th Cir. 2010) …………………….……………...........32

*State v. Logue*,
    376 S.W.2d 567, 569 (Tex. 1964) ……………………….…………….….…..........34

*Stecher v. City of Houston*,
    272 S.W.2d 925, 928 (Tex. Civ. App.—Galveston 1954, writ ref'd n.r.e.) …..35

*Tex. Ass'n of Bus. v. Texas Air Control Bd.*,
    852 S.W.2d 440, 447 (Tex. 1993) ……………………………………….…….. 23

*Thompson v. City of Palestine*,
    510 S.W.2d 579, 582 (Tex. 1974) ……………………………………………30

*Tooke v. City of Mexia*,
    197 S.W.3d 325, 343 (Tex. 2006) ……………………….…………………14

*Torch, Inc. v. LeBlanc*,
    947 F.2d 193, 194 (5th Cir. 1991).……………………………………………35

*Triple Tee Golf, Inc. v. Nike, Inc*.,
    485 F.3d 253, 261 (5th Cir. 2007) ……………………….…………….…….6

*United States v. Albertini*,
    472 U.S. 675, 689 (1985) ……..…………….………………………. 21

*United States v. O'Brien*,
    391 U.S. 367, 377 (1968). ……..………………………….………..… *ibid.*

*Ward v. Rock Against Racism*,
    491 U.S. 781, 791 (1989) …………………………….…………………16

*Warth v. Seldin*,
    422 U.S. 490, 511 (1975) …………………...…………………………. 23

*Wilton v. Seven Falls Co*.,
    515 U.S. 277, 286 (1995) …………………………….…………………35

*World Wide Street Preachers Fellowship v. Town of Columbia*,
    591 F.3d 747, 752-53 (5th Cir. 2009) ……………………………….……27

**Statutes**

U.S. CONST. amend. I ...............................................................*ibid*.

42 U.S.C. §1983.......................................................................*ibid*.

21 C.F.R. §§100.1-190.6.................................................................*ibid.*

25 TEX. ADMIN. CODE §228.1, *et seq*............................................*ibid.*

TEX. CIV. PRAC. & REM. CODE §101.0215 ......................................14

TEX. CIV. PRAC. & REM. CODE §16.003 ....................................32, 34

TEX. CIV. PRAC. & REM. CODE §16.051 ......................................34

TEX. HEALTH & SAFETY CODE §437.001, *et seq*...............................*ibid.*

TEX. LOC. GOV'T CODE §51.003(a)...............................................*ibid.*

TEX. LOC. GOV'T CODE § 51.072 ...............................................16

TEX. PEN. CODE §42.03(c)......................................................27

## Rules

Federal Rule of Civil Procedure 56.................................................*ibid.*

Federal Rule of Evidence 201(b),(c) ...............................................7

Pursuant to Federal Rule of Civil Procedure 56(c), Houston moves for summary judgment on Plaintiffs' claims that Houston's Charitable Food Ordinance caused a constitutional injury to Plaintiffs Brandon Walsh, Phillip Picone and Food Not Bombs Houston (FNBH) and seeks dismissal of such claims as a matter of law.

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Phillip Picone filed his Original Complaint against Ancira and Houston on March 31, 2023 (Dkt. 1)[1] and his First Amended Original Complaint on May 20, 2023 (Dkt. 8)[2]. Defendants Ancira and Houston moved to dismiss the claims in Plaintiff's First Amended Complaint on June 21, 2023 (Dkt. 14). Defendant Ancira's motion to dismiss was granted on November 1, 2023 (Dkt. 25). The Court dismissed the Fourth Amendment claims against Houston but ordered Houston to file a motion for summary judgment on Plaintiff's First Amendment constitutional claims by December 4, 2023 (Dkt. 25).  Houston's motion was denied as moot on June 6, 2024 (Dkt. 32) following the consolidation of Picone's case with the case filed by Plaintiffs Food Not Bombs Houston ("FNBH") and Brandon Walsh on June 6, 2024. (Dkt. 29).

---

[1] The abbreviation "Dkt. 1" as used in this paragraph refers to the Original Complaint in C.A. No. 4:23-CV-1206. All other references to "Dkt. 1" in this brief refer to the Original Complaint in C.A. No. 4:24-CV-00338.
[2] The abbreviation "Dkt. 8" as used herein refers to the First Amended Original Complaint in C.A. No. 4:23-CV-1206.

FNBH and Walsh filed their Complaint for Declaratory and Injunctive Relief on January 30, 2024 (Dkt. 1)[3]. Plaintiffs FNBH and Walsh's Motion for Temporary Restraining Order and Preliminary Injunction was filed on January 30, 2024 (Dkt. 4) and was granted on February 14, 2024 (Dkt. 15). Discovery is complete in the consolidated cases and the deadline for dispositive motions is March 28, 2025. (Dkt. 27; 39).

## II.    STATEMENT OF THE ISSUES AND STANDARD FOR REVIEW

1.    Does Plaintiff Food Not Bombs Houston have associational standing? *Friends of the Earth, Inc. v. Chevron Chemical Co*., 129 F.3d 826, 827-28 (5th Cir. 1997) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977);

2.    Can Plaintiffs prove that Houston's charitable feeding ordinance promulgated by an official policy maker caused a deprivation of Plaintiff's constitutional rights under the First Amendment? *Monell v. Dep't of Soc. Servs. v. New York*, 436 U.S. 658, 694 (1978); U.S. CONST. amend. I.

3.    Do the standards in the U.S. Food and Drug Administration model Food Code, as adopted by the State of Texas, sufficiently support Sections 20-252 and 20-257 of Houston's charitable feeding ordinance?  25 TEX. ADMIN. CODE §228.1, *et seq*.; TEX. HEALTH & SAFETY CODE §437.001, *et seq*.; 21 C.F.R. §§100.1-190.6.

4.    Are Plaintiffs' claims against Houston time-barred? *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001).

## III.    SUMMARY OF THE ARGUMENT

Plaintiffs interfere with Houston's governmental obligations to ensure healthy and safe food distribution by seeking to invalidate Houston's Charitable Food

---

[3] Original Complaint in C.A. No. 4:24-CV-00338.

Services Ordinance and the Houston Health Department ("HHD") rules and regulations governing charitable food service events on public property. (Dkt. 8 at 2, ¶¶3-5; Dkt. 1 at 25-26). Plaintiffs complain that the ordinance violates their First Amendment rights to speak freely, express themselves freely, associate with fellow citizens, and freely practice their religion. *Id*. Plaintiffs complain of civil rights violations and seek damages, declaratory and injunctive relief against Houston. (Dkt. 8 at 16-17, ¶¶66-70; Dkt. 1 at 25-26). Plaintiff Picone complains that Houston engaged in a pattern and practice of discrimination in violation of the principles outlined in *Monell*. (Dkt. 8 at 14-15, ¶¶54-58). Plaintiffs FNBH and Walsh complain the ordinance is an invalid time, place and manner restriction, an invalid prior restraint, and that it interferes with expressive association. (Dkt. 1 at 19-25). Plaintiffs cannot establish a direct causal link between Houston's municipal policy as set forth in the content neutral charitable food sharing ordinance and HHD regulations at issue and the alleged constitutional deprivations (free speech and expressive association). U.S. CONST. amend. I. Plaintiffs' challenge to Houston's ordinance under 42 U.S.C. §1983 and the First Amendment to the U.S. Constitution is barred by the applicable statutes of limitations. Plaintiffs' First Amendment constitutional claims should be dismissed and the constitutionality of Houston's charitable food service ordinance Sections 20-252 and 20-257 should be upheld pursuant to Federal Rule of Civil Procedure 56.

## IV.    SUMMARY JUDGMENT EVIDENCE

**Exhibit A**          City of Houston Ordinance No. 2012-269;

**Exhibit B**          City of Houston Ordinance No. 2015-820;

**Exhibit C**          Affidavit of Jennifer Lynn Kennedy;

   **Exhibit C(1)**          Charitable Food Services Ordinance [COH 000009-11];

   **Exhibit C(2**)          Charitable Feeding Regulations [COH 000012-16];

   **Exhibit C(3)**          City of Houston HHD Charitable Food Services Guidelines [COH 008219-20];

   **Exhibit C(4)**          Email from Christopher Sparks to David Opheim dated February 9, 2023 [COH 110287-92];

   **Exhibit C(5)**          Photo of Notice installed at Library [COH 000001-2] (Exhibit 18);

   **Exhibit C(6)**          Memo from Dr. Rhea B. Lawson to Walter Hambrick, Mayor's Office dated August 10, 2022 [COH 084996-97];

   **Exhibit C(7)**          City of Houston's Objections and Answers to Plaintiff's First Set of Interrogatories dated January 26, 2025;

   **Exhibit C(8)**          COH First Amendment Expression—Tranquility Park [COH 001018];

   **Exhibit C(9)**          Email from Patrick Key to Graciana Garces dated January 2, 2013 [COH 001579-81];

   **Exhibit C(10)**          Email from Patrick Key to James Koski dated January 23, 2015 re: Charitable Feeding discussion points [COH 002138-40];

   **Exhibit C(11)**          Email dated January 22, 2015 re: measurable reduction in trash after passage of ordinance in 2012 [COH 002125-26];

   **Exhibit C(12)**          Email dated February 11, 2015 from Joe Turner re James Bute Park [COH 002198];

   **Exhibit C(13)**          Email dated November 16, 2015 re: addresses no longer approved for feeding from HHD website [COH 003065];

   **Exhibit C(14)**          Email dated March 25, 2016 from Carolyn Gray to citizen re: trash complaints [COH 003959-60];

| | |
|---|---|
| **Exhibit C(15)** | Email dated March 31, 2016 from Rubi Longoria to citizen re Peggy's Point Plaza Park [COH 003979-81]; |
| **Exhibit C(16)** | Email dated July 8, 2016 from Joe Turner to Rubi Longoria re drug use, Purple Kush [COH 11863-64; COH 048066-67]; |
| **Exhibit C(17)** | Email dated September 13, 2016 from David McCoy re: drug use, Purple Kush [COH 025692-93] (Exhibit 34); |
| **Exhibit C(18)** | HHD complaint about conditions outside Downtown Central Library, urine and feces as of April 3, 2020 [FNB010387-89]; |
| **Exhibit C(19)** | Email from Saima Kadir to Dr. Lawson dated January 9, 2023 re: trash outside Downtown Central Library [COH 091789-92]; |
| **Exhibit C(20)** | Photos of trash and bricks to hold place in line (Exhibit 9); |
| **Exhibit C(21)** | Email from Dr. Rhea Lawson to Mayor Sylvester Turner dated November 5, 2021 [COH-089759]; |
| **Exhibit C(22)** | Email re: knife incident at Downtown Central Library [COH 110561-72]; |
| **Exhibit C(23)** | Photo of knife [COH 112774-76]; |
| **Exhibit C(24)** | Incident report dated June 28, 2022 re: man throwing bricks at vehicles [COH 112963-65]; |
| **Exhibit C(25)** | Incident report dated June 28, 2022 re: man throwing rock at vehicle [COH 112960-62]; |
| **Exhibit C(26)** | Email from Brian Crimmins dated February 28, 2023 re: notice signs [COH 110561]; |
| **Exhibit C(27)** | Social media posts on YouTube, Facebook, and Houston Food Not Bombs website; and |
| **Exhibit C(28)** | Draft offense report dated February 7, 2025 re: harassing COH Public Library employee in person and on the telephone, posting of employee's private information on social media accounts Reddit and Instagram [COH 122174-80]; and |
| **Exhibit C(29)** | Draft incident report dated February 7, 2025 re: harassing phone calls, verbal altercation over blocking emergency ramp; threats of rape, dragging behind a car, harassing phone calls [COH 122181-82]. |

**Exhibit D**        Deposition excerpts for Renee Beckham (pp. 95; 147-54);

    **Exhibit D(1)**        HHD Complaint investigation at 500 McKinney dated April 1, 2022 (Exh. 45);

**Exhibit E**        Deposition excerpts for Brandon Walsh (pp. 33-39; 49-57; 65; 82-87);

    **Exhibit E(1)**        Food Not Bombs FAQs (Exh. 11);

**Exhibit F**        Deposition excerpts for Phillip Picone (pp. 54-56, 86-90);

**Exhibit G**        Deposition excerpts for Saima Kadir (pp. 105-120).

## V.     ARGUMENT AND AUTHORITIES

### A.     SUMMARY JUDGMENT STANDARD

1.     Summary judgment is appropriate where there is no genuine dispute as to any issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc*., 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). The burden then shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322. Where the nonmoving party has failed to make a sufficient showing on an

essential element of his case with respect to which he has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Id*. at 323.

2.     A district court may take judicial notice of facts that are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201(b); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).   The court must take notice of a fact where "a party requests it and the court is supplied with the necessary information." FED. R. EVID. 201(c)(2).

## B.     FACTUAL BACKGROUND

### 1.     Houston's Policy to End Street Homelessness

3.     In the spring of 2012, the Houston City Council approved an ordinance establishing a voluntary program to coordinate outdoor food service operations for those in need, including persons experiencing food insecurity. *See* Houston Ordinance No. 2012-269, attached as **Exh. A; C(1)**. The ordinance was amended in 2015 upon the creation of the HHD. *See* Houston Ordinance No. 2015-820, attached as **Exh. C(3)**.   The intent of the ordinance was three pronged: (1) to improve the quality, quantity, and distribution of food provided outdoors; (2) to expand the opportunities for the homeless to connect with service providers; and (3) to reduce the disproportionate environmental impact of food service operations on public and

private property. *See* Affidavit of Jennifer Lynn Kennedy, attached as **Exh. C**. The policy supporting the enactment of the ordinance is undisputed.

4.    Houston's focus on providing housing to persons experiencing homelessness along with food and basic necessities came with Houston's adoption of the Way Home model in 2011. *Id*. Instead of just providing food, Houston wanted to be able to provide stable housing so that individuals could have a home of their own and eat in their own kitchen. *Id*. Organizations such as the Coalition for the Homeless and SEARCH homeless services could build relationships with persons experiencing homelessness and provide them with the resources they need to get into the housing pipeline, ultimately reducing the number of people that need food on the street. *Id*. Mayor Whitmire's goal is to end street homelessness in Houston. *Id*.

5.    The charitable food services program consists of four basic steps: (1) register the formal or informal food service organization; (2) get free, food handling training for the food service organization; (3) get property owner consent; and (4) schedule your food service. *See* **Exh. C(2)**. Classes are conducted on the third Saturday of each month through virtual training from 12-2 p.m., beginning August 2020. *See* **Exh. C**. Registration instruction and information are listed on the HHD website. *Id*. Registration is voluntary and no permit is required. Participation in the charitable food service program itself is voluntary and the only mandatory step is the

requirement to obtain owner consent before using either public or private property for food service of more than five people. *Id.*

6.    Adequate trash containment to contain all trash, refuse, and litter on the site of each charitable food service event has been a hallmark of the charitable food service program from its inception. *Id.*; **Exh. C(11)**. Under the HHD regulations, any charitable food service providers seeking to provide food on City property must have adequate trash receptacles, trash containment and removal measures to contain all trash, refuse, and litter on the site of the food service event and to properly dispose of all trash, refuse, litter and remove unused foods from the site at the conclusion of the food service event. **Exh. C**.

7.    In early 2016, the synthetic marijuana drug called Kush permeated the City including the population of persons experiencing homelessness and there was a noticeable increase in use of Kush in the homeless population. *Id.*; **Exhs. C(16)-(17)**. Many of the Kush users would attend the charitable feeding events high on Kush and create a disturbance at the event. *Id.* Kush use led to lots of issues at the parks. *Id.* As a result, charitable feeding events were canceled at the parks due to the City's serious concerns that it could no longer safely host charitable feeding events on park property. *Id.* The Rapid Rehousing program began in 2016. **Exh. C**. The City made an effort to collaborate with organizations conducting the feedings to offer housing services along with the feedings. *Id.*; **Exh. C(16)**.

8.     In 2022, the City experienced an increase in several different types of violent incidents at the Downtown Central Library. **Exhs. C, C(22)-(25)**. Houston Police Officer Captain Kennedy had to pull naked men out of the bathroom inside the Downtown Central Library because they were showering in the sinks there. **Exh. C.** Captain Kennedy has apprehended individuals experiencing homelessness having sex in the bathrooms and in the back corners of the library. *Id*. Individuals also have been found using drugs inside the library, threatening library staff inside the library under the influence of drugs and/or alcohol, and possessing weapons inside the library. *Id*.

9.     In 2022, outside the library, individuals under the influence of intoxicants were in the Downtown Central Library Plaza harassing the security guards. *Id*. Individuals lined up for charitable feeding would pull up pieces of historic bricks that are no longer being made along the sidewalk to place them as markers to hold their place in line for the feedings. *Id*. Houston incident reports document individuals throwing rocks at cars exiting the Central Library parking garage in the early evening in June 2022, causing property damage. **Exhs. C(24)-C(25)**. Houston Police Captain Jennifer Kennedy has seen and have read incident reports that some individuals have sat down on the sidewalk or placed their belongings on the sidewalk, blocking pedestrian access. **Exh. C**. Individuals waiting for charitable feedings outside the Downtown Central Library have urinated or defecated on the side of the building or on a tree in the area. **Exh. C(18).**

10

10.    As a result of the increased violence in October 2022, Houston Police Officer presence increased at the Downtown Central Library. **Exh. C**. Metal detectors were installed. *Id*. The library hired Houston Police officers to work for an overtime program that was funded directly by the library's budget. *Id*. Additional Houston Police officers were also requested for scheduled events. *Id*. The enhanced security reduced the instances of violence at the library. *Id*. The cost of providing extra security to the Downtown Library is over $2,000 per week for 4 feeding events per week. *Id*.

11.    In February 2023, Houston installed signs on the premises of the Downtown Central Library indicating charitable feeding was no longer allowed at that location and that charitable feeding was welcomed at a new City-owned location—61 Riesner. *Id*.; **Exh. C(5)**. Food Not Bombs volunteers and others were warned verbally and in writing that feedings would no longer take place at the Downtown Central Library and were instructed to move operations to the new location at 61 Riesner Street. **Exh. C**. Houston Police Officers offered assistance including shuttle transportation for those willing to move charitable feeding operations to 61 Riesner Street. *Id*. By moving operations to 61 Riesner, Food Not Bombs volunteers would not have to serve different food, serve a different constituency, or make any change to signage on their t-shirts or any other signage. *Id*. As of the date of this motion and on March 3, 2023, the date Plaintiff Phillip Picone received a citation at 500 McKinney as set forth more fully in his complaint, the City of Houston Properties Approved for

11

Charitable Food Services Events has had one approved location, 61 Riesner Street, Houston, Texas 77002. *Id*.

12.     Ordinance Section 20-257 authorizes and requires the director of public health to develop rules, regulations, and criteria for the use of city property for food services events and City departments maintain a list of such properties with areas approved for food services events. *See* **Exh. C(1)**. The Houston Public Library is not an approved property with an area approved for food services events as of February 25, 2023. *See* Notice installed at Houston Public Library, Downtown Central Branch attached as **Exh. C(5)**. As set forth in the Notice, the HHD updated rules and regulations govern charitable food services events on public property and non-compliance with these rules and regulations puts the individual at risk of violating the law. *Id*. The Notice also expresses that the City supports and is grateful for the charitable food services provided throughout the City and to assist efforts, has provided a dedicated location with the appropriate needed space and infrastructure/ amenities to serve Houstonians with the dignity they deserve. *Id*.

13.     The HHD Charitable Feeding Program regulations for approved charitable food service locations on City of Houston property require:  (1) adequate parking for the personnel conducting the food service event, with a minimum of ten (10) dedicated parking spaces during charitable food service events; (2) adequate trash containment to contain all trash, refuse, and litter on the site of the food service

event; and (3) two portable restrooms with handwashing stations available during food service events and available 24 hours per day, seven (7) days per week. *See* **Exh. C(3)**.

14.    The HHD Charitable Feeding Program regulations for approved charitable food service providers on City of Houston property require: (1) adequate personnel to conduct the food service event and restore the site at the conclusion of the food service event; (2) adequate trash receptacles, trash containment and removal measures to contain all trash, refuse, and litter on the site of the food service event and to properly dispose of all trash, refuse, litter and remove unused foods from the site at the conclusion of the food service event, and (3) adherence to guidelines for food preparation, transport, serving, handling, storage and packaging in accordance with the FDA model food code/ Houston Food Ordinance. *Id.; see also* U.S. Food and Drug Administration model Food Code, as adopted by the State of Texas, 25 TEX. ADMIN. CODE §228.1, *et seq.*; TEX. HEALTH & SAFETY CODE §437.001, *et seq.*

### 2.    The Citations

15.    Following the notice and grace period for compliance with the updated HHD rules and regulations, Plaintiff Picone received a citation for sharing food without authorization on City property at 500 McKinney Street on March 3, 2023. (Dkt. 8 at 8-9, ¶¶22-24; 9, ¶¶24-26).  Plaintiff Picone acknowledges that the only approved location for food sharing with more than five people on City property on

that date was 61 Riesner Street and that he was sharing food with Houston citizens who are experiencing poverty or homelessness at 500 McKinney Street, the location of the Houston Central Library. (Dkt. 8 at 8-9, ¶¶22-24; 10, ¶¶28-31). Plaintiff Picone acknowledges that others at 500 McKinney Street under similar circumstances have received citations. *Id*. at 12, ¶42. Plaintiff Brandon Walsh has never received a citation for violation of Houston's Charitable Feeding Ordinance. *See* Brandon Walsh Deposition at 58, ln. 5-7, attached as **Exh. E**; Dkt. 1 at 3, ¶9.

## C. SUMMARY JUDGMENT IS APPROPRIATE

### 1. Houston's charitable feeding ordinance is not an unconstitutional restraint on speech or expressive conduct

16.   The charitable feeding ordinance promotes and maintains the health and safety of Houstonians, including the vulnerable homeless population, by ensuring safe and sanitary food sharing and waste disposal. *See* TEX. HEALTH & SAFETY CODE §365.012; §437.001, *et seq*; **Exhs. A, B, C(1)-(3)**.[4] The ordinance restricts only certain actions that are directly related to the health and well-being of

---

[4] Health and sanitation services are government functions. TEX. CIV. PRAC. & REM. CODE §101.0215(2). Where the Legislature has designated activities to be governmental functions, their character as governmental functions is conclusively established. *See Ethio Exp. Shuttle Service, Inc. v. City of Houston*, 164 S.W.3d 751, 756 (Tex. App.—Houston [14th Dist.] 2005, no pet.), citing TEX. CIV. PRAC. & REM. CODE §101.0215(c). Immunity applies to governmental functions, or functions "in the performance of purely governmental matters solely for the public benefit." *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006) (quoting *Dilley v. City of Houston*, 222 S.W.2d 992, 993 (Tex. 1949)). Governmental functions are defined as those functions that are "enjoined on a municipality by law and [are] given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." TEX. CIV. PRAC. & REM. CODE §101.0215; *see also City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 355 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Houston's citizens and that support State law. *Id.* By requiring adherence to guidelines for food preparation, transport, serving, handling, storage and packaging in accordance with the national standards set out in the FDA model food code/ Houston Food Ordinance, the ordinance provides City representatives with clear standards to guide their decisions and contains no facial restrictions on the free exercise of speech or expressive activity. *Id.*; *see also* U.S. Food and Drug Administration model Food Code, as adopted by the State of Texas, 25 TEX. ADMIN. CODE §228.1, *et seq.*; TEX. HEALTH & SAFETY CODE §437.001, *et seq.*

17.    Food for human consumption has unique characteristics separate and apart from any quality of that food that might be considered First Amendment protected activity under certain circumstances. U.S. CONST. amend. I. Food is only safe for consumption if it is handled properly, and if left unregulated, consumption of food that does not meet health and safety standards and abandonment of unused food left to deteriorate or decay on public property can cause serious public health and safety consequences if left unchecked. For these reasons, the provision of food for human consumption is regulated by the state and by the federal government. *See* 25 TEX. ADMIN. CODE §228.1, *et seq.*; 21 C.F.R. §§100.1-190.6.

18.    The passage the ordinance in 2012 and its subsequent enforcement are within the City's constitutional power as a "home-rule" city and are related to the City's important governmental interest in ensuring the health and safety of its

citizens by addressing public issues of poor sanitation, crime, loitering, crowds, heavy trash accumulation, noise, traffic control, and food safety. *See generally* TEX. LOC. GOV'T CODE § 51.072; CITY OF HOUSTON CHARTER ART. II, SEC. 2. Such an important governmental interest is unrelated to the suppression of expressive activity as it "serves purposes unrelated to the content of expression." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *see also McCullen v. Coakley*, 573 U.S. 464, 480-481 (2014); TEX. HEALTH & SAFETY CODE §437.001, *et seq*.

19.    The Ordinance draws no distinctions between food service activities with a message and food service activities without a message.  The test for content neutral regulation of First Amendment expressive conduct asks whether the regulation is narrowly drawn to further a substantial governmental interest unrelated to the suppression of free speech.  *United States v. O'Brien*, 391 U.S. 367, 377 (1968); *Clark v. the Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984). A time, place, and manner restriction on First Amendment speech or expressive conduct must be narrowly tailored to serve a significant governmental interest and leave open ample alternative channels for communication of the information.  *Id*. The requirement of narrow tailoring is satisfied as long as regulation promotes substantial governmental interest that would be achieved less effectively absent the regulation, and the means chosen are note substantially broader than necessary to achieve the governmental interest.    *Ward*, 491 U.S. at 799-800.

Government may, consistent with the First Amendment, enforce reasonable time, place, and manner regulations on expression in a park. U.S. CONST. amend. I; *Shuttlesworth v. City of Birmingham, Alabama*, 394 U.S. 147, 151 (1969); *see also* **Exh. C(8)**.

20.    The United States Supreme Court's decision in *Clark* provides the appropriate analytical framework for evaluation of Houston's ordinance, rules and regulations in light of Plaintiff's claims that they infringe upon Plaintiff's First Amendment freedoms. 468 U.S. at 293. In *Clark*, the Community planned to sleep overnight in symbolic tents on the National Mall in Washington, D.C. to make a symbolic statement regarding the plight of the homeless. *Id*. at 291. The Park Service allowed the participants to erect tents but not to sleep in them, as a regulation permitted overnight camping only in campgrounds designated for that purpose. *Id*. at 291-92. The Supreme Court upheld the prohibition on overnight sleeping, finding that the regulation withstood constitutional scrutiny "either as a time, place, or manner restriction or as a regulation of symbolic conduct." *Id*. at 294. The challenged regulation was a reasonable time, place, or manner restriction because it was content-neutral, left open alternative channels of speech, and was narrowly focused on the substantial interest of the government in "maintaining the parks in the heart of our Capital in an attractive and intact condition, readily available to the millions of people who wish to see and enjoy them by their presence." *Id*. at 296.

Furthermore, the regulation satisfied the four-part test of *United States vs. O'Brien*, because there was no contention that a prohibition on overnight sleeping in public parks was beyond the constitutional power of the government to enforce, the government had a substantial interest in conserving park property that was "plainly served by …measures such as the proscription of sleeping that are designed to limit the wear and tear on park properties," that interest was unrelated to the suppression of expression, and the incidental restrictions on the alleged freedoms under the First Amendment were no greater than necessary to further the interest of the government. 391 U.S. at 377; TEX. HEALTH & SAFETY CODE §437.001, *et seq.*

21.    The Charitable Feeding Program regulates charitable food service locations on City of Houston property in a neutral manner that is completely unrelated to the content of any speech or expression contemporaneously provided with the food service.  The Program's health and safety-based requirements of (1) adequate parking for the personnel conducting the food service event, (2) adequate trash containment on the site of the food service event; and (3) two (2) portable restrooms with handwashing stations available during food service events ensures the health and safety of all participants. **Exh. C(3)**. Providers need not obtain a permit, a license, pay any fee, or even register with the City, but must only provide (1) adequate personnel to conduct the food service event and restore the site at the conclusion of the food service event; (2) adequate trash removal measures to contain

all trash, refuse, and litter on the site of the food service event and to properly dispose of all trash, refuse, litter and remove unused foods from the site at the conclusion of the food service event, and (3) adherence to FDA model food code/ Houston Food Ordinance guidelines for food preparation, transport, serving, handling, storage and packaging. *Id.* All such requirements promote sanitation, safety and support Houston's enforcement of its health and safety ordinances, State law prohibiting public health nuisances, and State law prohibiting littering and illegal dumping. TEX. HEALTH & SAFETY CODE §341.011, *et seq.* (regulating public health nuisances), §365.012 (regulating the disposal of litter or other solid waste at a place that is not an approved solid waste site, including on public property); 25 TEX. ADMIN. CODE §228.1, *et seq.*; *see also* Houston Code of Ordinances §28-19 (regulating use of public space as restrooms), §10-483 (regulating the accumulation of any boxes that may be used as a harborage for rats). No City official can arbitrarily deny the use of 61 Riesner for charitable feeding—it is available to all organizations on an as-requested basis. **Exh. C(3)**. The requirements of the ordinance, rules and regulations are content-neutral, leave open alternative channels of speech, and are narrowly focused on the substantial interest of the government in ensuring healthy and safe delivery of food and removal of all trash, refuse, litter and remove unused foods from the site at the conclusion of the food service event. *See* **Exh. C(3).** Nothing in the ordinance provides any opportunity for any undetectable censorship.

*Shuttlesworth*, 394 U.S. at 151.  Any burden on speech, if any, is not done in a manner inconsistent with Houston's advancement of its governmental goals of keeping the public safe and promoting the health and well-being of all members of the public.  *McCullen*, 573 U.S. at 486. The standards guiding the ordinance are clearly outlined in state and federal law and provide clear direction to the City officials in implementing such standards. 25 TEX. ADMIN. CODE §228.1, *et seq.*.

22.    Plaintiffs have ample alternative channels for communication other than in-person expressive activity at 500 McKinney Street at the Downtown Central Library. Plaintiffs have regularly communicated their speech through electronic media including YouTube, Facebook, Reddit, Instagram, and on the FNBH website. *See* **Exhs. C, C(27)-(28)**. Plaintiff Walsh through his business "Punk with a Camera" prints t-shirts, flyers, banners for a living and communicates through social media including YouTube.  *See* **Exh. E** at 4, **Exh. C(27)**.

23.    Plaintiffs do not contest that it is within the power of local government to regulate usage of City property and impose health and safety regulations on the activity of feeding groups of 5 or more people.  The City's interests are served by the ordinance and the City's interest in regulating charitable feeding groups grounded in State and local health and safety laws is unrelated to the suppression of speech. Indeed, there are no restrictions on the broad variety of messages that have been conveyed and food that has been shared at 61 Riesner Street from March 2023

20

through the present. **Exh. C(9)-(10)**. The incidental restriction of alleged freedoms under the First Amendment Plaintiff claims to have experienced is not greater than necessary to further the interests of the City in ensuring the health and safety of its citizens.  The City is in the best position to determine how best to manage the burdens that Plaintiff places on City property by engaging in charitable feeding activities and the City has established a suitable downtown location available to Plaintiff and all other interested individuals and groups at 61 Riesner, Houston, Texas 77002. The Ordinance is no more restrictive than necessary to further Houston's governmental health and safety interests.  *McCullen*, 573 U.S. at 490-94.

24.     The limited, content-neutral restrictions in Houston's charitable feeding ordinance and regulations promulgated by the HHD do not interfere with any message conveyed through the charitable feeding activity. Plaintiff Picone admits that others at 500 McKinney Street under similar circumstances have received citations, implying that enforcement of the ordinance is not selective and content-based. (Dkt. 8 at 12, ¶42). The ordinance is enforced at multiple locations, not just 500 McKinney Street.  *See* Deposition of Renee Beckham at 154-57, attached as Exhibit D. The ordinance regulates feeding conduct in a reasonable way, tied to the stated purpose of the ordinance. "[A]n incidental burden on speech is no greater than is essential, and therefore is permissible under *O'Brien*, so long as the neutral regulation promotes a substantial government interest that would be achieved less

effectively absent the regulation." *United States v. Albertini*, 472 U.S. 675, 689 (1985). Because the reasonable restrictions to time, place and manner do not in any way prevent the sharing of Plaintiffs' message, and Plaintiffs have ample alternative means of communication, they do not violate the free speech or free exercise clauses of the First Amendment. U.S. CONST. amend. I.

25.     Houston has a governmental obligations to ensure food safety and any incidental burden on Plaintiff's speech is no greater than is essential. (Dkt. 8 at 13-14, ¶¶48-53). The neutral charitable feeding ordinance promotes a substantial governmental interest that would be achieved less effectively absent the regulation. Plaintiff's challenge to the ordinance on its face should be dismissed pursuant to Federal Rule of Civil Procedure 56.

## 2.     Food Not Bombs Houston Has No Injury In Fact and No Associational Standing

Food Not Bombs Houston ("FNBH") states it is an unincorporated association affiliated with the grassroots international Food Not Bombs movement. Dkt. 1, at ¶16.  An association has standing to bring suit on behalf of its members when (1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members. *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826, 827-28 (5th Cir. 1997) (*citing Hunt v. Washington State Apple Advertising*

*Comm'n*, 432 U.S. 333, 343 (1977); *Warth v. Seldin*, 422 U.S. 490, 511 (1975)); *Tex. Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 447 (Tex. 1993) (citations omitted). FNBH makes no allegations of facts to show the third required element of associational standing. Rather, FNBH only alleges that it engages in food sharing to communicate its message that "food is a human right" and it "shares food with anyone without restriction, to communicate its message and exhibit what a community based on mutual aid looks like." Dkt. No. 1 at 5, ¶16). FNBH's "formulaic recitation" of the elements of associational standing is insufficient to establish standing. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Without an injury, FNBH's claims do not meet the *Twombly* test and should be dismissed. *Id*.

### 3. Even if Plaintiff's feeding people on public property without permission is protected speech or expressive conduct, it is subject to Houston's reasonable time, place, and manner restrictions

26.    Even if Plaintiff's feeding people on public property without permission is protected speech, it is subject to time, place, and manner restrictions based on the government's significant interest in protecting the health and safety of the public. The City's reasonable time, place and manner restrictions are fair and apply to every member of the public. Plaintiff possesses no First Amendment right to conduct food sharing on City property where food sharing is not otherwise permitted.

27.    The City has designated an appropriate time (24 hours/ 7 days per week), an appropriate place (61 Riesner Street, Houston, Texas 77002), and manner

(reasonable health and safety criteria) restrictions on charitable feeding on public property.  *See* **Exhs. A, B, C(1)-(3).** The City has put the necessary infrastructure in place to address unusually high accumulation of litter and discarded food at a specific location (61 Riesner Street).  The City has prepared in advance to remedy the potential health and safety issues promptly before it attracts birds, rats, vermin, bugs and other animals that are a nuisance could spread disease. The restrictions imposed by the City serve legitimate government interests unrelated to the content of the expression. It is also reasonable to require the consent of the property owner before conducting a charitable food service event on the City's property, and any incidental restriction on speech or expressive content is no more restrictive than necessary and leaves open multiple alternate channels of communication.

28.    In this case, Plaintiff Picone admits that he received adequate notice that Houston limits charitable food service to the designated location of 61 Riesner. (Dkt. 8 at 8, §§19-20). Plaintiff admits that he was sharing food "for about an hour" with multiple members of the public on a charitable basis, on City property, at an unapproved location. Dkt. 8 at 10, ¶¶28-30; 12 at ¶42.  Plaintiff Picone also admits he has been familiar with Houston's charitable food sharing ordinance for many years and chose not to share food at the only approved location on City property.  *Id.*

at 8-9, ¶¶19-25.

29.    Plaintiff Picone's claims that he has engaged in speech in the form of food sharing, freely associating with those with whom he was sharing food, and exercising his Catholic religion by feeding the hungry are subject to the reasonable time, place and manner restrictions found in City Code Sections 20-252 and 20-257 and in the HHD rules, regulations and guidelines governing charitable food service events. Dkt. 8 at 13, ¶51; **Exhs. A, B**. Plaintiff Picone's freedom to share food and associate with the hungry by exercising his Catholic faith can be conducted at any time with the permission and approval of the property owner at 61 Riesner Street, Houston, Texas. *Id.* Because Houston's time, place, and manner restrictions are based on the government's significant interest in protecting the health and safety of the public, Plaintiffs' claims should be dismissed pursuant to Rule 56.

### 4.    Houston's ordinance constitutional on its face and as applied and Houston's official policies do not cause a constitutional injury to Plaintiffs

30.    Because the ordinance is neither unconstitutional on its face nor as applied, Plaintiff Picone cannot satisfy *Monell* and the City must be dismissed. *Monell v. Dep't of Soc. Servs. v. New York*, 436 U.S. 658, 694 (1978). The enactment and function of the City ordinance is a matter of government property rights and does not run counter to guaranteed First Amendment freedoms. In *United States v. O'Brien*, the United States Supreme Court held that a governmental regulation is

justified if it "is within the constitutional power of the Government; if it furthers an important or substantial governmental interest" that is unrelated to the suppression of free speech; and "if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. 367, 377 (1968).

31.     Regarding any "incidental restrictions on alleged First Amendment freedoms," any potential harm resulting from the prohibition of food service events on public property without the prior consent of the property owner is cured by the provision of an alternate, pre-approved location for food service events at 61 Riesner Street. *See* HOUSTON HEALTH DEPARTMENT, *Charitable Feeding* (last visited Sept. 20, 2023).[5] 61 Riesner Street has access to adequate parking, trash containment, restrooms, and hand washing stations in accordance with the HHD criteria detailed in subsection (A) and functions as an open alternative channel for the expression of the defendant's message, especially as it is less than a mile away from the offense location of the present case.[6]

32.     In *Singleton v. Darby*, the Fifth Circuit addressed protected speech claims in the roadway context and found the officers' actions were both objectively

---

[5] https://www.houstonconsumer.org/services/permits/food-permits/charitable-feeding.
[6] *Id.*; Walking Directions from 1000 Smith Street, Houston, TX 77002 to 61 Riesner Street, Houston, TX 77002, Google Maps, http://maps.google.com (using the "Directions" feature, search starting point field for "1000 Smith St., Houston, TX 77002" and search destination point field for "61 Riesner St., Houston, TX 77002").

reasonable and constitutionally sound. 609 F. App'x 190, 195 (5th Cir. 2015). The Court held that a person does not engage in protected speech when he is obstructing a roadway or passageway, explaining "[t]he First Amendment does not entitle a citizen to obstruct traffic or create hazards for others." *Id.* at 193 (citing *Cox v. Louisiana*, 379 U.S. 536, 553-58 (1965)). "A State may therefore enforce its traffic obstruction laws without violating the First Amendment…" even if the suspect is protesting. *Id.* at 193 (citing TEX. PEN. CODE § 42.03(c); *Cox*, 379 U.S. at 553-58).

33.    Under *Monell v. Dep't. of Soc. Servs. v. New York*, the plaintiff must demonstrate that the City had a "policy or custom" that acted as the "moving force" behind a constitutional violation. 436 U.S. 658, 694 (1978); *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 752-53 (5th Cir. 2009) (citing *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). No officer has threatened, arrested, or otherwise curtailed any protected activity. In order to prevail under Section 1983, a plaintiff must show that the municipality's policy or custom caused the constitutional deprivation. *Monell*, 436 U.S. at 690-91.

34.    The challenged ordinance was passed for the health and safety of Houston's citizens, does not violate the constitutional rights of the Plaintiff, and is no more restrictive than necessary. The only requirement for an outdoor food service event serving 5 or more people is to obtain the consent of the property owner. *See* Houston Code §§20-252; 20-254, attached as **Exh. C(1).** The ordinance programs

are largely voluntary. *Id*. Establishing property owner consent for conducting activity on the owner's property does not qualify as a "moving force behind a constitutional violation" and Plaintiff's claims under *Monell* should be dismissed.

35.     The ordinance supports the health and safety of Houston's citizens and does not violate Plaintiff's constitutional rights. When one holds an outdoor food service event in which charitable food services are provided to five or more people at a time, a person or organization must do just one thing: obtain the consent of the property owner. *See* **Exh. C(1)**. Houston had only one approved location for charitable feeding as of February 24, 2023—61 Riesner Street, Houston, Texas 77002. *Id.* Plaintiff acknowledges that 61 Riesner Street is the only Houston property currently designated for charitable feeding, yet claims a preference for the Library Plaza. Dkt. 8 at 9, ¶24. Plaintiff does not articulate the manner in which he claims his constitutional rights have been violated.  *See* Dkt. 8 at 10, ¶¶28-31.

36.     From 2011 through the present, no Houston Police Officer or Houston employee has ever told Plaintiff Picone that he could not say something, could not post a sign, or could not wear a certain t-shirt. *See* Deposition of Phillip Picone at 89, line 8-90, line 1, attached as **Exh. F.** In his 13 years of participating in Food Not Bombs charitable feeding events at the downtown public library, only one Houston employee has asked him to move his feeding operations across the street, one block

over, offering that he could serve over there. *Id*. at 87, on. 24—89, ln. 2. Such activities do not constitute infringement on Plaintiff Picone's right to free speech.

37.    Plaintiffs' freedom of speech, association and religion claims are subject to the reasonable time, place and manner restrictions found in City Code Section 20-252 and in the Houston Health Department rules, regulations and guidelines governing charitable food service events. Plaintiffs' as-applied First Amendment challenge does not outweigh Houston's substantial health and safety interests or the City's responsibility to protect the health and safety of all its residents. *See* Dkt. 8 at 10, ¶¶28-31. Because Houston has only consented to charitable food sharing at 61 Riesner Street, Plaintiffs' challenge to conducting food sharing without the property owner--Houston's current permission at 500 McKinney Street should be dismissed.

### 5.    Houston's charitable feeding ordinance is presumed valid

38.    A municipal ordinance is presumed valid and "courts have no authority to interfere unless the ordinance is unreasonable and arbitrary – a clear abuse of municipal discretion." *City of Brookside Vill. v. Comeau*, 633 S.W.2d 790, 792 (Tex. 1982); *Hunt v. City of San Antonio*, 462 S.W.2d 536, 539 (Tex. 1971). The party seeking to attack the ordinance bears an "**extraordinary burden**" to show that "no conclusive or even controversial or issuable fact or condition existed" that would provide a rationale for the ordinance's enactment. *Comeau*, 633 S.W.2d at 792 (Tex. 1982) (citing *Thompson v. City of Palestine*, 510 S.W.2d 579, 582 (Tex. 1974)

(emphasis added)); *Black v. City of Killeen*, 78 S.W.3d 686, 691 (Tex. App.—Austin 2002, pet. denied). Courts must "consider all the circumstances and determine, as a substantive matter, if reasonable minds could differ as to whether the ordinance has a substantial relationship to the protection of the general health, safety, or welfare of the public." *Quick v. City of Austin*, 7 S.W.3d 109, 117 (Tex. 1998). "If the evidence reveals a fact issue in this respect, the ordinance **must** be upheld." *Id*. (emphasis added); *Comeau*, 633 S.W.2d at 793 (Tex. 1982). Texas has codified these principles in Texas Local Government Code Section 51.003. TEX. LOC. GOV'T CODE §51.003(a).

39.    Plaintiffs do not challenge the ordinance as an "unreasonable and arbitrary" exercise of municipal authority. The City's health and safety interests that led to the creation of the ordinance are sufficient reasons for its enactment and Plaintiff cannot prove the lack of "a substantial relationship" between the ordinance and the public's "general health, safety, or welfare." *See Quick*, 7 S.W.3d at 117.

40.    A sister court has held when addressing a First Amendment facial challenge to an ordinance regarding food distribution, that "whether food distribution can be expressive activity protected by the First Amendment under particular circumstances is a question to be decided in an as-applied challenge." *Santa Monica Food Not Bombs v. City of Santa Monica,* 450 F.3d 1022, 1032 (9th Cir. 2006). The City has the right to regulate the provision of food for the public's health and safety. *See, e.g*., *Cox*, 379 U.S. at 554. The time, place and manner

regulations set forth in the charitable feeding ordinance and the supporting regulations contain "narrow, objective and definite standards" to guide the health official's decision and render the implementation of the ordinance subject to effective judicial review. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992), quoting *Niemotko v. State of Md.*, 340 U.S. 268, 271 (1951).

41.     By ensuring the public health concerns regarding food preparation, handling and storage are addressed, the ordinance protects all citizens of Houston and is not inconsistent with civil liberties protected by the First Amendment. Plaintiffs' challenges do not outweigh the City's responsibility to protect the health and safety of all its residents. Plaintiff's challenge seeking to invalidate parts of the ordinance and conduct food sharing at 500 McKinney Street should be dismissed.

**6.     Plaintiffs' claims under 42 U.S.C. §1983 and the First and Fourteenth Amendments to the United States Constitution are time-barred.**

42.     Because there is no specified federal statute of limitations for Section 1983 claims, federal courts utilize the forum state's general personal injury limitations period. *See Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 760 (5th Cir. 2015). The two year statute of limitations bars Plaintiffs' claims on the facts alleged. TEX. CIV. PRAC. & REM. CODE § 16.003(a) (2005). "Although Texas law governs the limitations period and the tolling exceptions, federal law governs when a cause of action arises."

*Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992) (citing *Burrell*, 883 F.2d at 418). "Under federal law, a claim accrues and 'the [limitations] period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010) (quoting *Piotrowski*, 237 F.3d at 576).

43.    Plaintiffs fail to make a timely claim challenging Houston's charitable feeding ordinance under 42 U.S.C. §1983 and the First Amendment to the U.S. Constitution. City Code Sections 20-251, *et seq*. were enacted in 2012 and modified in 2015. Plaintiff Picone testified that he was aware that he had sufficient information to know that he had been injured in April 2012 when the ordinance was adopted, in June 2012 when the ordinance began to be enforced, and in 2019, when he sued the City to have the ordinance declared unconstitutional. *See* **Exh. F** at 55, ln. 15—56, ln. 5. Plaintiffs had sufficient information to know of any injury under the charitable food service ordinance on its effective date of July 1, 2012, over ten years ago. (Dkt. 8 at 7, ¶17; 14, ¶56).  The undisputed summary judgment evidence conclusively demonstrates that Picone's claims accrued in 2012.

44.    Injury is a prerequisite to Plaintiffs' challenge to this ordinance under Section 1983 and the cause of action on a claim accrues when the injured party knows or has reason to know of the injury which forms the basis for the action. *See, e.g., Longoria v. City of Bay City, Texas*, 779 F.2d 1136, 1138 (5th Cir. 1986). The

two-year limitations period in Tex. Civ. Prac. & Rem. Code §16.003 applies to Plaintiff's First Amendment to the U.S. Constitution claims under Section 1983. *Piotrowski v. City of Houston*, 51 F.3d 512, 514 n.5 (5th Cir. 1995); *Piotrowski v. City of Houston*, 237 F.3d at 576. The residual four-year statute of limitations period following the original ordinance expired on July 1, 2016. Tex. Civ. Prac. & Rem. Code §16.051. In addition, municipal acts or proceedings are conclusively presumed valid if not challenged within three years. *See* Tex. Loc. Gov't Code §51.003(a). Plaintiffs have been sharing food since the ordinance was enacted yet did not sue the City until May 20, 2023 and January 30, 2024, outside the limitations period.

45.    It is well-settled under Texas law that civil courts do not have jurisdiction over an action seeking to stay the enforcement of a municipal ordinance except where the law attempted to be enforced is unconstitutional and void and its enforcement will result in irreparable injury to vested property rights. *See Malone v. City of Houston*, 278 S.W.2d 204, 206 (Tex. Civ. App.—Galveston 1955, writ ref'd n.r.e.); *Stecher v. City of Houston*, 272 S.W.2d 925, 928 (Tex. Civ. App.—Galveston 1954, writ ref'd n.r.e.) (emphasis added) (affirming trial order dismissing for want of jurisdiction action against City of Houston, its Police Chief and City Attorney, and the Texas Attorney General seeking injunction against enforcement of City penal traffic ordinance). The charitable feeding ordinance is ***not*** unconstitutional or void, and (2) its enforcement will ***not*** result in irreparable injury to any vested

property rights. *See City of Houston v. Guthrie*, 332 S.W.3d 578, 596-97 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also City of Richardson v. Kaplan*, 438 S.W.2d 366, 366 Tex. 1969) (per curiam); *State v. Logue*, 376 S.W.2d 567, 569 (Tex. 1964); *Ryan v. Rosenthal*, 314 S.W.3d 136, 142-43(Tex. App.—Houston [14th Dist.] 2010, pet. denied). Houston's charitable feeding ordinance is conclusively presumed valid, and enforcing the ordinance is not an unreasonable and arbitrary abuse of municipal discretion. *See* TEX. LOC. GOV'T CODE §51.003(a). Houston is entitled to judgment upholding its ordinance as a matter of law.

7. **Plaintiffs' requests for declaratory and injunctive relief are improper and unavailable where they have no viable substantive cause of action**

46.    Plaintiffs impermissibly seek to have the federal district court serve as a *de facto* federal housing best practices board that would displace the discretionary policymaking authority entrusted to local elected municipal government representatives and its community partners. As the Supreme Court noted in *City of Grants Pass, Oregon v. Johnson,* "[h]omelessness is complex. Its causes are many. So may be the public policy responses required to address it." 603 U.S. 520, 560 (2024). Interfering with Houston's housing first policy and established community framework for addressing the needs of persons experiencing homelessness would be improper and inconsistent with both federalism and our tri-partite system of

government – in which the federal courts are charged with interpreting policy; not writing it. *See Hulin v. Fibreboard Corp.*, 178 F.3d 316, 322 (5th Cir. 1999):

> [T]he administration of government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces. Decisions concerning the allocation of resources to individual programs, such as sewer maintenance, and to particular aspects of those programs, . . . involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country.

*Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 128-29 (1992).

47.    Federal courts have broad discretion to grant or refuse declaratory judgment. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Since its inception, the Declaratory Judgment Act [the "Act"] has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Act is "an authorization, not a command." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). It gives federal courts the competence to declare rights, but does not impose a duty to do so. *Id*. The Act is a procedural device that creates no substantive rights and requires the existence of a justiciable controversy. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–241 (1937); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984). Similarly, a request for injunctive relief, absent a viable substantive cause of action supporting entry of a judgment, is fatally defective and does not state a claim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198,

210 (Tex. 2002). For the reasons set our more fully above, no justiciable controversy exists that can support the grant of declaratory or injunctive relief in this case.

## VI.    CONCLUSION

For the reasons stated above, Defendant City of Houston respectfully requests that Plaintiffs' claims be dismissed pursuant to Rules 56 of the Federal Rules of Civil Procedure with prejudice to the refiling of the same and grant such other relief to which Defendants may be justly entitled.

Respectfully submitted,

**ARTURO G. MICHEL**
City Attorney
**SUZANNE R. CHAUVIN**
Chief, General Litigation Section


By:        */s/ M. Lucille Anderson*
M. Lucille Anderson
Sr. Assistant City Attorney III
Federal ID No. 19377
Texas Bar No. 00793260
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-0368
832.393.6485
832.393.6259 Fax

**ATTORNEYS FOR DEFENDANT
CITY OF HOUSTON, TEXAS**

**OF COUNSEL:**

Kenneth Soh
Sr. Assistant City Attorney III

Federal ID No. 11882
Texas State Bar No.: 00794670
Kenneth.soh@houstontx.gov
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-0368
832.393.6485
832.393.6259 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2025, I served the following attorneys with a true and correct copy of the foregoing document in accordance with Rule 5(b)(3) of the Federal Rules of Civil Procedure via the court's electronic filing / service system (and/or mail to the plaintiff).

Randall Hiroshige
Travis Fife
Christina Beeler
Texas Civil Rights Project
1405 Montopolis
Austin, Texas 78741
(512) 474-5073

Remington Alessi
Attorney at Law
PO Box 230381
Houston, Texas 77223
(281) 438-3733

Randall Kallinan

*/s/ M. Lucille Anderson*
M. Lucille Anderson
Senior Assistant City Attorney