1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FOOD NOT BOMBS HOUSTON,      ]
BRANDON WALSH,               ]
    Plaintiffs,             ]
                             ]
v.                           ]  C.A. No. 4:24-CV-338
                             ]
THE CITY OF HOUSTON, TEXAS,  ]
    Defendant.              ]

-----------------------------------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF


PHILLIP PICONE


FEBRUARY 18, 2025

-----------------------------------------------------------

    ORAL DEPOSITION OF PHILLIP PICONE, produced as a witness at the instance of the Defendant, and duly sworn, was taken in the above-styled and numbered cause on the 18th of February, 2025, from 10:04 a.m. to 12:18 a.m., before Shawn Kelley, CSR No. 3448 in and for the State of Texas, by machine shorthand and computer-aided transcription, at 511 Broadway Street, Houston, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

Nell McCallum & Associates Inc. Houston (713) 861-0203

NELL McCALLUM & ASSOCIATES, INC.

EXHIBIT

F

1  VIDEOGRAPHER: Good morning. Today is Tuesday,
2  February 18th, 2025. The time is 10:04 a.m., and we are
3  now on the record.
4                    PHILLIP PICONE,
5  having been first duly sworn, testified as follows:
6                 EXAMINATION BY MR. SOH
7     Q. Can you please state your name for the record?
8     A. Phillip Picone.
9     Q. Mr. Picone, my name is Ken Soh, and I'm a lawyer
10 with the City of Houston, and we're here to take your
11 deposition in a lawsuit that you filed against the City
12 over the, I'll call it, the charitable food ordinance.
13 Do you understand that?
14    A. Yes.
15    Q. All right. So let's go ahead and get started.
16 Tell me about yourself. Were you born in -- born in
17 Houston?
18    A. No, I'm originally from New York, --
19    Q. Okay.
20    A. -- born and raised. I came down here in '78 when
21 I was 21 --
22    Q. Okay.
23    A. -- to go to school.
24    Q. Great.
25    A. And the plan wasn't to live here. It was just to

54

1  in -- in scriptures that are quoted in both lawsuits,
2  but at least those two portions of the Bible are copied
3  in both lawsuits, correct?
4      A.  There are different versions of the Bible that --
5      Q.  Right.
6      A.  -- might word things a little differently, but
7  the concept comes through the same.
8      Q.  But both the 2019 and 2023 lawsuits have the --
9  in essence, the same -- at least the same two Bible
10 verses quoted?
11     A.  Apparently they do.
12     Q.  Okay.  Fair enough.  All right.  So in 2019, when
13 you filed the first lawsuit against the City -- oh, by
14 the way, have you filed any other lawsuits against any
15 other parties in your life?
16     A.  Never.
17     Q.  Okay.  So the only two lawsuits -- and I don't
18 care about divorces or anything like that, but the only
19 two lawsuits that you have been a part of were the two
20 lawsuits that are currently in front of you marked as
21 Exhibit 49 and 50, correct?
22     A.  Yeah, Exhibit 49 would be the first lawsuit I've
23 ever filed.
24     Q.  And Exhibit 50 is --
25     A.  Or been a part of.

```
 1     Q.   And Exhibit 50 is the second?
 2     A.   The second one.
 3     Q.   And only?
 4     A.   That's it.
 5     Q.   Okay.  So back to your 2019 lawsuit, can you
 6   explain to me just in your own words why you wanted
 7   the -- the charitable feeding ordinance declared
 8   unconstitutional?
 9          MS. GILBERT:  Objection, the document speaks for
10   itself.
11          MR. SOH:  Okay.
12     A.   Yeah, I think this whole paper kind of
13   explains --
14          MR. SOH:
15     Q.   And the reason why -- the reason why I'm asking
16   you that is I do not want to get into -- I'm sure your
17   lawyer's told you I do not want to get into discussions
18   and conversations that you had with your lawyer at any
19   point in time in this deposition.
20          What I'm just getting from you is in your own
21   words, in 2019 when you filed this lawsuit, why did you
22   want to declare the charitable feeding ordinance
23   unconstitutional?
24     A.   It's fair to say I probably wanted it to be
25   declared unconstitutional when it was voted on in April
```

```
 1   of 2012 and began to be enforced in June of 2012, but at
 2   that time, without any input from Food Not Bombs, Annise
 3   Parker, who wrote it or at least was mayor at the time
 4   and it had her blessings, she exempted Food Not Bombs
 5   from the ordinance.
 6          She actually put out something on her letterhead
 7   and sent us a piece of paper saying that -- that we were
 8   exempt and that we could serve on that property.  She
 9   actually wrote down the address of 500 McKinney, that we
10   had permission to be there.
11          That made it a little hard for us to want to
12   fight something, because we were still able to feed.
13   You know, at that time we're looking at it like that,
14   you know, we're still able to share our food.  You know,
15   but it had a chilling effect on other organizations that
16   were feeding, as well, whether they were, you know,
17   places where immigrants could go, you know, for -- you
18   know, for safety or whether they were churches that were
19   sharing food in their community or just other volunteers
20   organizations.  And it had a -- that had a chilling
21   effect on them.  And the way I know that is because when
22   that ordinance went into effect, suddenly the numbers
23   that -- of the people coming to Food Not Bombs increased
24   dramatically because of those other places closing down.
25          And so, you know, but, like I said, you know, we
```

86

```
 1   if you just want me to start asking you some questions
 2   about it, let me know.
 3        A.   Okay.
 4        Q.   All right.  Before we get to that, I just saw
 5   something on my outline I forgot to ask you about.  In
 6   all of your times at a Food Not Bombs Houston charitable
 7   feeding event at the library, okay, did any police
 8   officer or any employee of the -- of the City of Houston
 9   attempt to restrict, modulate, change any of -- any of
10   Food Not Bombs Houston's speech?
11        A.   Can you clarify it?
12        Q.   Were you ever -- did any police officer or
13   employee of the City of Houston tell anyone from Food
14   Not Bombs hey, you can't wear that T-shirt, you can't
15   say those things, you can't post those signs, anything
16   like -- like that?
17             MR. KALLINEN:  Objection, compound, asks a legal
18   question.
19        A.   I do recall people coming out of the library
20   every once in a while and telling us we couldn't have
21   been there.
22             MR. SOH:
23        Q.   Right.
24        A.   But who that person was, you know, I -- I didn't
25   get involved.
```

87

```
 1      Q.  Sure.  But with respect to your free speech
 2  claim, right, did any police officer or any employee of
 3  the City of Houston tell you you can't say that?
 4          MR. KALLINEN:  Objection, asked and answered and
 5  asks a legal question, confusing as to the -- the reach
 6  of speech.
 7      A.  Yeah, yeah, what he said, because -- because --
 8  because speech is not limited to what comes out of my
 9  mouth.
10      Q.  Okay.
11      A.  Right?  And so in the case of Food Not Bombs,
12  feeding people is my speech.
13      Q.  Okay.  With regards to any written or oral
14  statements, did any police officer or employee of the
15  City of Houston say to you or any other member of Food
16  Not Bombs hey, you can't do that or you can't say that?
17      A.  I can't recall.
18      Q.  Okay.
19      A.  Remember, now, I'm only there on Fridays, --
20      Q.  Yeah, but --
21      A.  -- you know.
22      Q.  -- in your -- in your --
23      A.  And I come and go, boom.
24      Q.  In your 13 years or so of -- of participating in
25  Food Not Bombs charitable feeding events at the downtown
```

```
 1  public library, do you recall any police officer or any
 2  employee of the City of Houston saying hey, you can't
 3  say that or you can't post that sign?
 4      A.  You know what?  Now that I'm thinking about it a
 5  little more, there was a guy named Marc Eichenbaum.
 6      Q.  Right.
 7      A.  Do you know Marc?
 8      Q.  I believe -- was that the -- the unofficial term
 9  for him would be the Houston homeless czar?
10      A.  Something like that.
11      Q.  Yes.
12      A.  Yeah, the -- under Turner.
13      Q.  Right.
14      A.  Turner appointed him.  He came down one time
15  and -- that I recall, right?  Because, again, I'm only
16  there on Fridays.  He came down one time and was around
17  this time, before the tickets when Turner said we were
18  going to start getting tickets.  He came down and told
19  us that we weren't supposed to be there, that we should
20  be somewhere else.
21          We -- there was a conversation that went on
22  regarding Riesner, Riesner, and he even said well, why
23  don't you just move across the street one block over,
24  and we'll put a canopy over there, and you can serve
25  over there.
```

1      So, yeah, he was -- he was trying to tell us not
2  to serve where we were serving.  Would that be
3  infringing on my speech?
4      MR. SOH:  I'm going to object as nonresponsive.
5      Q.  But, I mean, I guess let me rephrase the
6  question.  Okay?
7      A.  Okay.
8      Q.  From 2011 through the present, did any City of
9  Houston police officer or employee ever tell you or did
10 you ever witness a City of Houston police officer or a
11 City of Houston employee telling another member of Food
12 Not Bombs hey, you can't post that sign, you can't say
13 that, or you can't wear that T-shirt?
14     MR. KALLINEN:  Objection, compound, asked and
15 answered.
16     A.  How about you can't serve here, would that
17 qualify?
18     MR. SOH:
19     Q.  No, that's a different thing altogether.  I'm
20 just talking --
21     A.  Okay.
22     Q.  -- about the -- the --
23     A.  Okay.  Well, the -- the things that you just
24 listed, --
25     Q.  Right.

```
 1    A.    -- I would say I hadn't heard that.
 2    Q.    Okay.  Fair enough.  Let's go back to your
 3  declaration here, Exhibit 53.  Okay?  Some just quick
 4  questions about it.  Paragraph 5 you talked about you
 5  attended St. Thomas -- I'll say St. Thomas University.
 6  You were a business major; is that correct?
 7    A.    Yeah.
 8    Q.    Okay.
 9    A.    I was going for accounting.
10    Q.    Okay.  Let's go to page 2.  And, generally, your
11  declaration includes a lot of the same information that
12  was included in your 2019 and 2023 complaints, including
13  scripture citations, Isaiah and Matthew, as well as the
14  agreements and mission statement and vision of Food Not
15  Bombs Houston; is that correct?
16    A.    Right.
17    Q.    Okay.
18    A.    It is.
19    Q.    Paragraph 8 you talk about you share food in
20  north Houston and Spring Branch?
21    A.    Yes.
22    Q.    We talked about that previously, and I wanted to
23  get some clarification on that.  When you say north
24  Houston and Spring Branch, are you talking about your
25  previous testimony about helping to feed homeless people
```

96

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
 2                       HOUSTON DIVISION

 3   FOOD NOT BOMBS HOUSTON,    ]
     BRANDON WALSH,             ]
 4        Plaintiffs,           ]
                                ]
 5   v.                         ]   C.A. No. 4:24-CV-338
                                ]
 6   THE CITY OF HOUSTON, TEXAS,]
          Defendant.            ]
 7
     ------------------------------------------------------
 8

 9                    REPORTER'S CERTIFICATION

10                 DEPOSITION OF PHILLIP PICONE

11                      FEBRUARY 18, 2025

12        I, Shawn Kelley, Certified Shorthand Reporter

13   No. 3448 in and for the State of Texas, hereby certify

14   to the following:

15        That the witness, PHILLIP PICONE, was duly sworn

16   by the officer and that the transcript of the oral

17   deposition is a true record of the testimony given by

18   the witness;

19        That the deposition transcript was submitted on

20   _____, 2025, to Randall Kallinen,

21   attorney for Plaintiff Phillip Picone, for examination,

22   signature, and return to the offices of Nell McCallum &

23   Associates, Inc., by _____, 2025.

24        That the amount of time used by each party at the

25   deposition is as follows:
```

NELL McCALLUM & ASSOCIATES, INC.

97

```
 1        Kenneth Soh - (1 hour, 50 minutes)
 2        That pursuant to information given to the
 3   deposition officer at the time said testimony was taken,
 4   the following includes all parties of record:
 5        Randall Hiroshige, Attorney for the Plaintiffs
 6   Foot Not Bombs Houston and Brandon Walsh
 7        Randall Kallinen, Attorney for the Plaintiff
 8   Phillip Picone
 9        Kenneth Soh and Natoya Inglis, Attorneys for the
10   Defendant The City of Houston, Texas
11        I further certify that I am neither counsel for,
12   related to, nor employed by any of the parties in the
13   action in which this proceeding was taken, and further
14   that I am not financially or otherwise interested in the
15   outcome of the action.
16        Certified to by me this _____ day of _____,
17   2025.
18
19                    _____
20                    Shawn Kelley, Texas CSR No. 3448
                      Expiration Date:  1/31/24
21                    Nell McCallum & Associates
                      Firm Registration No. 10095
22                    Expiration Date:  1/31/25
                      718 Westcott
23                    Houston, Texas   77007
                      (713) 861-0203
24
25
```

NELL McCALLUM & ASSOCIATES, INC.