IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FOOD NOT BOMBS HOUSTON; *et al.*, | § § | Civil Action No. 4:24-cv-338 |
| Plaintiffs, | § § | (Jury Trial) |
| v. | § § § | |
| THE CITY OF HOUSTON, TEXAS; *et al.*, | § § § | |
| Defendants. | § | |

**PLAINTIFF PHILLIP PICONE'S MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY, AND HIS SUPPORT OF A PERMANENT INJUNCTION**

**TO THE HONORABLE ANDREW S. HANEN:**

NOW COMES PLAINTIFF Phillip Picone, moving for summary judgment as to the liability of the City of Houston under Federal Rule of Civil Procedure 56. He joins Plaintiffs Food Not Bombs Houston (FNBH) and Brandon Walsh's motion for summary judgment and for permanent injunction in its entirety.[1] To further bolster those claims and pursue the claims unique to him, he respectfully shows the Court as follows:

---

[1] Doc. 44. Note that Plaintiff Picone necessarily references some documents from his case before it was consolidated under the current case number. If a document is referenced by itself, it is a document in the consolidated case. If it is preceded by the previous case number, it is a document in the pre-consolidated case.

# I. Table of Contents

I. Table of Contents ................................................................................................................ 2

II. Table of Authorities ........................................................................................................ 3

III. Nature and Stage of the Proceedings ............................................................................... 4

IV. List of Exhibits ................................................................................................................. 4

V. Statement of Issues .............................................................................................................. 4

VI. Standard of Review .......................................................................................................... 5

VII. Summary of Argument ..................................................................................................... 5

VIII. Argument ......................................................................................................................... 6

A. The Anti-Food-Sharing Law is unconstitutional on its face. .................................................. 6

   1. Free Speech .................................................................................................................... 6

   2. Freedom of Religion ..................................................................................................... 11

B. The Anti-Food-Sharing Law is unconstitutional as applied to Plaintiff. ............................. 14

C. Defendant City of Houston should be held liable under Monell. ......................................... 14

IX. Conclusion ...................................................................................................................... 16

VERIFICATION ....................................................................................................................... 17

CERTIFICATE OF SERVICE ................................................................................................. 17

## II.   Table of Authorities

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................. 5
*Celotex Corp. v Catrett*, 477 U.S. 317 (1986) ........................................................................... 5
*City of Chicago v. Morales*, 527 U.S. 41 (1999) ....................................................................... 6
*Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288 (1984) ............................................. 8
*Connors v. Graves*, 538 F.3d 373 (5th Cir. 2008) .................................................................... 5
*Crawford-El v. Britton*, 523 U.S. 574 (1998) ......................................................................... 15
*Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123 (1992) ................................................... 9
*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235 (11th Cir. 2018) ......... 8
*Hartman v. Moore*, 547 U.S. 250 (2006) ............................................................................... 15
*Houston v. Hill*, 482 U.S. 451 (1987) .................................................................................. 6, 7
*Kolender v. Lawson*, 461 U.S. 352 (1983) ............................................................................... 6
*Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988) ................................................... 6, 7
*McCullen v. Coakley*, 573 U.S. 464 (2014) .......................................................................... 6, 8
*Minn. Voters All. v. Mansky*, 138 S. Ct. 1876 (2018) ............................................................... 6
*Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977) ................................................... 15
*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) ............................................................................. 15
*Pleasant Grove City v. Summum*, 555 U. S. 460 (2009) ...................................................... 6, 8
*Reichle v. Howards*, 566 U.S. 658 (2012) ............................................................................. 15
*United States v. O'Brien*, 391 U.S. 367 (1968) ........................................................................ 8
*Webb v. Town of Saint Joseph*, 925 F.3d 209 (5th Cir. 2019) ............................................... 14
*Willis v. Cleco Corp.*, 749 F.3d 314 (5th Cir. 2014) ................................................................ 5

**Other Authorities**

Fed. R. Civ. P. 56(a) .................................................................................................................. 5
Houston Code of Ordinances § 20-251–57 ..................................................................... 6, 8, 11

### III.   Nature and Stage of the Proceedings

Mr. Picone originally filed his civil rights case on March 31st, 2023, and the complaint was amended for the first and only time on May 20th, 2023.[2] The Court consolidated his case with the present one on June 6th, 2024. Plaintiffs FNBH and Brandon Walsh filed their motion for summary judgment and permanent injunction on March 28th, 2025.[3] Defendant City of Houston also moved for summary judgment on the same day.[4] Based on the scheduling order and Plaintiff Picone's unopposed motion to extend, this motion is timely filed on or before April 1st, 2025.[5]

### IV.   List of Exhibits

Plaintiff Phillip Picone incorporates the contents of each of the following Exhibits by reference, as if fully set forth herein:

1. Declaration of Plaintiff Phillip Picone

2. PDF of City of Houston webpage granting FNBH express written permission to use the Library for events at the time of the incident in question

3. Emails between City officials regarding the Library

4. Incident report regarding events discussed in Exhibit 3

5. Citation received by Plaintiff Phillip Picone

### V.   Statement of Issues

1. Whether the Anti-Food-Sharing Law is facially unconstitutional.

---

[2] No. 4:23-cv-1206 Docs. 1, 8.
[3] Doc. 44.
[4] Doc. 46.
[5] Docs. 39, 45.

*Plaintiff Phillip Picone's MSJ*
**4** *of* **17**

2. Whether the Anti-Food-Sharing Law is unconstitutional as applied to Plaintiff.

3. Whether the City of Houston may be liable under § 1983 through *Monell* for the violation of Plaintiff's First Amendment Rights.

## VI.   Standard of Review

A court may only enter summary judgment when the moving party establishes that it is entitled to judgment as a matter of law because no genuine dispute exists as to any material fact.[6] The Court must draw all reasonable inferences in the light most favorable to the nonmoving party: Plaintiff here.[7] The burden rests on the moving party to demonstrate the lack of a genuine dispute of material fact.[8] On the other hand, the nonmoving party must identify the evidence in the record that supports its claim, and explain how the identified evidence does so.[9] There is a genuine dispute where a reasonable jury could find for the nonmoving party, and a fact is material if it could affect the outcome of the case.[10]

## VII.   Summary of Argument

The Anti-Food-Sharing Law is unconstitutional on its face and as applied to Phillip, which creates a First Amendment violation actionable under *Monell*. Plaintiff Phillip Picone joins Plaintiffs FNBH and Brandon Walsh's motion for summary judgment and permanent injunction, and adds that the Anti-Food-Sharing Law is also subject to and fails strict scrutiny under the First Amendment, and that the City of Houston is liable to him under *Monell* for the violation of his First Amendment free speech and freedom of religion rights.

---

[6] Fed. R. Civ. P. 56(a).
[7] *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).
[8] *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986).
[9] *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citations omitted).
[10] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## VIII.   Argument

First and foremost, Plaintiff Phillip Picone wholly supports and joins Plaintiffs FNBH and Brandon Walsh's motion for summary judgment and permanent injunction, and he incorporates it herein by reference.[11] Their motion focuses on the Anti-Food-Sharing Law as an unconstitutional prior restraint on First Amendment free speech rights, which it is.[12] Plaintiff Picone will bolster that argument, and also explain why the Anti-Food-Sharing Law also violates First Amendment freedom of religion rights, which would bring it under strict scrutiny, and show that the City is liable to him for damages under *Monell*.

### A. The Anti-Food-Sharing Law is unconstitutional on its face.

#### 1. *Free Speech*

In short, the Anti-Food-Sharing Law is unconstitutionally vague and overbroad,[13] is an unconstitutional prior restraint on protected speech,[14] and clearly fails First Amendment scrutiny as a limit on speech in a traditional public forum.[15]

With respect to vagueness and overbreadth, the Anti-Food-Sharing Law crucially does not define key terms, namely "sponsor," "conduct," "benefit," or "those in need."[16] Absent those definitions, it is impossible to know what actions constitute "sponsoring" or "conducting" a food service event, whether those actions provide a "benefit," and whether the beneficiaries would be considered "those in need." Because it has such a vague law,

---

[11] Doc. 44.
[12] Doc. 44.
[13] *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)); *Houston v. Hill*, 482 U.S. 451, 465–66 (1987).
[14] *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988).
[15] *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018); *McCullen v. Coakley*, 573 U.S. 464, 477 (2014); *Pleasant Grove City v. Summum*, 555 U. S. 460, 469 (2009).
[16] Houston Code of Ordinances § 20-252.

"Houston's ordinance criminalizes a substantial amount of constitutionally protected speech, and accords the police unconstitutional discretion in enforcement."[17]

The phrase "those in need" is particularly vexing and ripe for abuse by unfettered discretion. On one hand, it could easily be read to exclude most of Houston's citizens that are experiencing poverty or homelessness, as they have numerous options when searching for food — they could go to a shelter, a food bank, a food service event at 61 Reisner, or share food with Phillip and FNBH — and therefore aren't in *need* of food.[18] On the other hand, it could just as easily be read to include those that left their homes to shelter from a storm as they did during Hurricane Harvey, or those whose homes were left devastated by floods as a result of such storms and had to rely on charity and government relief efforts for their food. As a result, it is left to individual officers to determine which acts of compassion to punish, and which to allow. Moreover, it is exactly that effectively limitless discretion that makes the Anti-Food-Sharing Law an unconstitutional prior restraint on any actions that *might* be prohibited by the law, depending on who gets to define those terms and, presumably, who receives the food.[19]

In fact, Mr. Picone's ticket is an excellent example; it lists the violation as "feed[ing] homeless,"[20] but Mr. Picone had no way of knowing that Defendant Ancira would read "those in need" as the specific people experiencing homelessness with whom he shared his food. Indeed, Mr. Picone had been sharing food with those experiencing homelessness alongside other FNBH members at the Library Plaza for the entirety of the Anti-Food-

---

[17] *Houston*, 482 U.S. at 466.
[18] No. 4:23-cv-1206 Doc. 8 ¶ 16.
[19] *Lakewood*, 486 U.S. at 757.
[20] Ex. 5.

Sharing Law's existence, most of the time in front of police officers, and had not been issued a citation, warning, or other indication that any Houston Police Department (HPD) officer interpreted the ordinance in that way.[21]

Finally, the Anti-Food-Sharing Law purports to regulate not just the Library Plaza, but *all* public property.[22] Whether or not the Library Plaza specifically is a traditional public forum (it is), the fact that it extends to all public property necessarily implicates a restriction to expressive conduct on traditional public fora like streets, parks, or in this case, plazas.[23] And food sharing is indeed expressive conduct: FNBH shares food to communicate its positions against poverty, food waste, and war, as well as draw attention to the fact that significant government resources are committed to military purposes while poverty worsens and is comparatively ignored.[24] More generally, food sharing is often an expression of religious devotion, as it has been for Phillip.[25] As a result, even assuming *arguendo* that the Anti-Food-Sharing Law is content neutral,[26] it would still be subject to intermediate scrutiny under longstanding Supreme Court jurisprudence.[27]

Thus, in order to survive a First Amendment challenge, the Anti-Food-Sharing Law must be narrowly tailored to achieve a significant government interest.[28] First, "[a] government

---

[21] Ex. 1.
[22] Houston Code of Ordinances § 20-252.
[23] *McCullen*, 573 U.S. at 476–77; *Pleasant Grove*, 555 U. S. at 469.
[24] Ex. 1; *see also Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1245 (11th Cir. 2018) ("The nature of FLFNB's activity, combined with the factual context and environment in which it was undertaken, lead to the conclusion that FLFNB engaged in a form of protected expression") (cleaned up).
[25] Ex. 1.
[26] Plaintiff does not concede this position.
[27] *See, e.g., McCullen*, 573 U.S. at 485; *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293–94 (1984) (applying intermediate scrutiny to time, place, and manner restrictions, and noting that the regulation should "leave open *ample* alternative channels for communication of the information") (emphasis added); *United States v. O'Brien*, 391 U.S. 367 (1968).
[28] *Id.*

regulation that allows arbitrary application is inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view."[29] Because the Anti-Food-Sharing Law is vague as to what actions constitute "conducting" or "sponsoring" a food service event, and fails to define "those in need," it allows the kind of arbitrary application that the Supreme Court definitively bars from passing intermediate scrutiny. Moreover, the ordinance is *not* narrowly tailored — it applies to *all* "food sharing events" on *all* public *and private* property — and does *not* serve a significant government interest.

During this litigation, the City only pointed to a vague concern about "food safety,"[30] despite the fact that Plaintiff could find no evidence of food safety issues generally among food distributed to those experiencing homelessness and poverty precipitating the passage of the Anti-Food-Sharing Law, and despite the fact that there have been no food safety issues whatsoever when FNBH has shared food over the course of many years. Moreover, the City has thus far failed to provide any such evidence. Such a citation to such a vague, unsupported interest is not enough under Fifth Circuit precedent.[31]

In fact, evidence indicates that the City's recent enforcement of the Anti-Food-Sharing Law has nothing to do with "food safety" at all, and even works against the health and safety of Houston's citizens experiencing homelessness. In the emails attached herein, City officials, including the Mayor, discussed problems at the Library as a cooling center during a

---

[29] *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 130–31 (1992).
[30] *See generally, e.g.,* No. 4:23-cv-1206 Doc. 26.
[31] *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) ("The Commission is not able to articulate the harm it will suffer if enjoined from enforcing the relevant code provisions. It notes the same vague, unsupported anti-corruption grounds").

dangerous heat wave, cited to an assault that was incorrectly implied to have been committed by a homeless person, and resulted in Mayor Turner himself telling the Chief of Police that the "feeding outside the library must come to an end" as a result because they were "losing the library."[32]

But where the unconstitutionality of the Anti-Food-Sharing Law is most clear is the unbridled discretion it grants the City to determine the location of charitable feedings, and the lack of all alternatives to the pre-approved location at 61 Reisner. As Supreme Court precedent makes clear, subjecting protected expression to the City's "unbridled discretion" presents "too great" a "danger of censorship and of abridgment of our precious First Amendment freedoms."[33] "[D]istaste for [such] censorship -- reflecting the natural distaste of a free people -- is deep-written in our law."[34] Indeed, "a long line" of Supreme Court decisions makes it abundantly clear that an ordinance making "the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official — as by requiring a permit or license which may be granted or withheld in the discretion of such official — is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms."[35] Even regulation of the time, place, and manner of protected First Amendment activities must "leave open *ample* alternative channels."[36]

---

[32] *Compare* Ex. 3 *with* Ex. 4 (redacted for privacy, but one number and partial street name included to demonstrate that the arrestee was not, in fact, homeless).
[33] *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975).
[34] *Id.*
[35] *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969) (quoting *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958)).
[36] *Clark*, 468 U.S. at 293–94.

Just as the Eleventh Circuit found the "Park Rule" to be unconstitutionally overbroad because of the unfettered discretion it gave city officials,[37] the Anti-Food-Sharing Law is equally overbroad for the same reason. Even if the Court finds that the Anti-Food-Sharing Law does provide specific standards for participation in the *voluntary* program it creates,[38] it has three fundamental problems. First and foremost, it explicitly gives City officials completely unfettered discretion to dictate food sharing events: it requires participants to pledge their "cooperation" with City officials on the "scheduling and siting of food service events," and those same officials are responsible for determining continued compliance with this "pledge" in order to continue participation in the program.[39] Such unfettered discretion is exactly the type of ordinance that the First Amendment was designed to prevent, and the type that the Supreme Court has repeatedly stricken down. Second, it provides no alternatives whatsoever to participation in the program it creates — certainly not "ample" enough for First Amendment scrutiny. Third and finally, there are no listed or practical alternatives to the *one* location provided by the City at 61 Reisner, as FNBH's motion resoundingly demonstrates.[40] A *single location* in the country's *fourth largest metro area* cannot be considered "ample" enough for First Amendment scrutiny either.

2. *Freedom of Religion*

The Anti-Food-Sharing Law is also an unconstitutional prior restraint on the practice of religion by forcing advanced planning and express written permission in order to share food with more than 5 people. As Phillip describes, sometimes food sharing occurs as religious

---

[37] *See Fort Lauderdale Food Not Bombs*, 901 F.3d 1235, 1245.
[38] Houston Code of Ordinances § 20-254; Plaintiff does not concede this position.
[39] Houston Code of Ordinances § 20-254.
[40] *See generally* Doc. 44.

duty and spirit compel people, and this ordinance prevents that from occurring lest such a spontaneous act of charity attract more than 5 people, irrespective of the food server's intent.[41] Because it acts as a prior restraint on the free practice of religion, the Anti-Food-Sharing Law should be analyzed under strict scrutiny.

Just three short years ago, the U.S. Supreme Court reiterated the importance of conduct in the confluence of the Free Speech and Free Exercise clauses of the First Amendment, which "work in tandem":

> Where the Free Exercise Clause protects religious exercises, whether communicative or not, the Free Speech Clause provides overlapping protection for expressive religious activities. That the First Amendment doubly protects religious speech is no accident. It is a natural outgrowth of the framers' distrust of government attempts to regulate religion and suppress dissent. In Anglo-American history, government suppression of speech has so commonly been directed *precisely* at religious speech that a free-speech clause without religion would be Hamlet without the prince.[42]

The Court went on to note that the First Amendment "protects not only the right to harbor religious beliefs inwardly and secretly[, i]t does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of (or abstention from) physical acts."[43] This double-protection is afforded strict scrutiny.[44]

In *Redlich v. City of St. Louis*, the Eighth Circuit dealt with a very similar issue where it affirmed the grant of summary judgment against a pastor's challenge to a St. Louis ordinance

---

[41] Ex. 1.
[42] *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022) (cleaned up) (emphasis in original).
[43] *Id.* (cleaned up).
[44] *Id.*

restricting the distribution of certain foods without a permit.[45] But St. Louis's ordinance, as well as the justification and defense of its ordinance, differs from Houston's in several key ways. First, St. Louis's ordinance was targeted at the unpermitted provision of *specific food items* that commonly carried food-borne illnesses,[46] whereas Houston's ordinance restricts food sharing to a specific *location* (regardless of the food shared), but only references food safety with respect to participants in its *voluntary* program. Second, St. Louis's ordinance "adopted the 2009 Edition of the National Food Code, which is based on scientific research and was intended to provide municipalities with guidelines and rules to limit risk factors known to cause foodborne illness,"[47] while Houston's ordinance has no scientific or evidence-based underpinnings, choosing instead to funnel everyone toward the Health Department's voluntary program. Finally and most tellingly, St. Louis defended its ordinance by attaching, among other things, "evidence that it has traced incidents of illness among its homeless population to illegally distributed food dating back to 2012,"[48] whereas Houston has done nothing to demonstrate a legitimate food safety concern tied to food sharing in Houston.

Thus, based on the failings of the Anti-Food-Sharing Law as described both here and in § A.1, *supra* (as well as the further issues described in FNBH's motion),[49] there are no facts before this Court upon which it can find that the City has satisfied strict scrutiny. As a result,

---

[45] *See Redlich v. City of St. Louis*, 51 F.4th 283 (8th Cir. 2022).
[46] *Id.* at 285.
[47] *Redlich*, 51 F.4th at 289.
[48] *Id.* at 288.
[49] Doc. 44.

it should hold that the Anti-Food-Sharing Law is unconstitutional, and permanently enjoin its enforcement.

### B. The Anti-Food-Sharing Law is unconstitutional as applied to Plaintiff.

Even if the Anti-Food-Sharing Law was considered constitutional on its face, it is clearly unconstitutional as applied to Plaintiff Picone. For years, he and other members of FNBH performed the same conduct in front of police officers, but the Anti-Food-Sharing Law was never enforced until a day before Phillip was arbitrarily ticketed. Because of this disparate treatment for his message and religious practice, the ordinance was unconstitutional in its application to him.[50]

### C. Defendant City of Houston should be held liable under Monell.

Plaintiff Picone also brings a *Monell* claim against the City, along with a facial and as-applied challenge to the Anti-Food-Sharing Law. With respect to the *Monell* standard, the Fifth Circuit clarified that:

> [o]ur caselaw establishes three ways of establishing a municipal policy for the purposes of *Monell* liability. First, a plaintiff can show "written policy statements, ordinances, or regulations." Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "perform the specific act that forms the basis of the § 1983 claim."[51]

Mr. Picone relies on the first two methods of establishing liability. First, the Anti-Food-Sharing Law itself, passed by the City as its official, written policy, caused Phillip's constitutional injuries by seeking to crack down (if poorly) on charitable acts of feeding the

---

[50] *See McCullen*, 573 U.S. at 485 n. 4.
[51] *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) (citations omitted).

City's citizens without access to stable housing or food sources.[52] Moreover, by being regularly present at FNBH events for years and ultimately programmatically issuing tickets to FNBH members,[53] the City has established a custom of violating FNBH members' First Amendment rights by unjustifiably enforcing the Anti-Food-Sharing Law against them.

On the First Amendment claim, the U.S. Supreme Court has reiterated the principle that government officials cannot retaliate against individuals for engaging in protected speech absent sufficient non-retaliatory grounds.[54] In order to determine whether an arrest was retaliatory, the absence of probable cause "generally provide[s] weighty evidence that the officer's animus caused the arrest."[55] That said, the absence of probable cause is not required where "officers have probable cause to make arrests, but typically exercise their discretion not to do so. In such cases, an unyielding requirement to show the absence of probable cause could pose a risk that some police officers may exploit the arrest power as a means of suppressing speech."[56] Here, again, the arbitrary enforcement against Phillip pursuant to the Anti-Food-Sharing Law and the City's new, programmatic issuance of tickets to FNBH members when officers had previously demonstrated a long history wherein they *exclusively* "exercised their discretion not to do so" until the day before Mr. Picone's ticket was issued violates the First Amendment.

Moreover, his arrest was wholly without probable cause. The Anti-Food-Sharing Law explicitly clarifies that "[a]n individual or organization providing charitable food services

---

[52] Ex. 1.
[53] Ex. 1, *see also* Doc. 44-31.
[54] *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006), *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998), *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 283–84 (1977)).
[55] *Id.* at 1724 (citing *Reichle v. Howards*, 566 U.S. 658, 668 (2012)).
[56] *Id.* at 1727 (internal citations and quotations omitted).

with the consent of the property owner but without participating in the program established by this article *shall not be deemed in violation of this article*."[57] The indisputable evidence shows that he and FNBH had express permission to use "the Central Houston Public Library Plaza, 500 McKinney, Houston 77002, as an approved charitable food service location" at the time the citation was issued.[58] Thus by Anti-Food-Sharing Law's own terms, Phillip was not "in violation of this article," and on that basis alone, his arrest pursuant to the City's policy and custom wholly lacked probable cause.

## IX.   Conclusion

For the foregoing reasons, Plaintiff respectfully requests **GRANT** this motion for summary judgment, **GRANT** the other Plaintiffs' motion for summary judgment and permanent injunction, and enter judgment in his favor and against Defendant City of Houston, and enjoin the City of Houston. With respect to the determination of relief, including damages, Plaintiff requests an evidentiary hearing.

Respectfully submitted,

*/s/ Alexander C. Johnson*
Alexander C. Johnson
Kallinen Law PLLC
State Bar of Texas
    Bar No. 24123583
U.S. Southern District of Texas
    Federal ID No. 3679181
511 Broadway Street
Houston, Texas 77012
Telephone: 573.340.3316
Fax: 713.893.6737
Email: alex@acj.legal
**Attorney for Plaintiff**

---

[57] Houston Code of Ordinances § 20-254 (emphasis added).
[58] Ex. 2.

>*/s/ Randall L. Kallinen*
>Randall L. Kallinen
>Kallinen Law PLLC
>State Bar of Texas
>   Bar No. 00790995
>U.S. Southern District of Texas
>   Federal ID No. 19417
>511 Broadway Street
>Houston, Texas 77012
>Telephone: 713.320.3785
>Fax: 713.893.6737
>Email: AttorneyKallinen@aol.com
>**Attorney for Plaintiff**

## VERIFICATION

I hereby verify, under penalty of perjury, that each of the Exhibits attached to this Motion are true and correct copies of the documents they purport to be.

>*/s/ Alexander C. Johnson*
>Alexander C. Johnson

## CERTIFICATE OF SERVICE

I certify that on April 1st, 2025, I have served a true and correct copy of the foregoing document that was delivered by the ECF in accordance with the Federal Rules of Civil Procedure to all ECF notice attorneys of record.

>*/s/ Alexander C. Johnson*
>Alexander C. Johnson