IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **FOOD NOT BOMBS HOUSTON,** | § | |
| **BRANDON WALSH** | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **C.A. No. 4:24-CV-00338** |
| | § | |
| **THE CITY OF HOUSTON, TEXAS,** | § | |
| **Defendant** | § | |

**Consolidated with**

| | | |
|---|---|---|
| **PHILLIP PICONE,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | **C.A. NO. 4:23-CV-1206** |
| **OFFICER A. ANCIRA,** *in his* | § | |
| *Individual capacity*, **and THE CITY OF** | § | |
| **HOUSTON, TEXAS,** | § | |
| **Defendants** | § | **Judge Andrew Hanen** |

**DEFENDANT CITY OF HOUSTON, TEXAS'S RESPONSE TO
FOOD NOT BOMBS HOUSTON AND BRANDON WALSH'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant the City of Houston, Texas files this its Response to Food Not

Bombs Houston and Brandon Walsh's Motion for Summary Judgment on its claims

and causes of action pursuant to Federal Rule of Civil Procedure 56.

## <u>TABLE OF CONTENTS</u>

I.     NATURE AND STAGE OF THE PROCEEDINGS.................................1

II.    STATEMENT OF THE ISSUES AND STANDARD OF REVIEW........2

III.   SUMMARY OF THE ARGUMENT .............................................................2

IV.   SUMMARY JUDGMENT EVIDENCE.........................................................4

V.    ARGUMENT AND AUTHORITIES .........................................................6

     A.    SUMMARY JUDGMENT STANDARD ........................................6

     B.    FACTUAL BACKGROUND .........................................................7

          1.    Houston's policy to end street homelessness ........................7

          2.    The Citations ...............................................................13

     C.    THE ORDINANCE IS SUFFICIENTLY SUPPORTED .............14

          1.    Houston's charitable food services provider program is subject to intermediate scrutiny ...............................................13

          2.    Houston's ordinance survives intermediate scrutiny.............21

          3.    Food Not Bombs Houston has no injury in fact and no associational standing for its vagueness claims.......................30

          4.    Walsh has no injury in fact and no standing for an as-applied or facial challenge to the ordinance...............................32

          5.    Houston's ordinance is constitutional on its face and as applied and Houston's official policies do not cause a constitutional injury to Plaintiffs .......................................................34

          6.    Plaintiffs' claims for permanent injunctive relief are not appropriate for summary judgment .........................................35

VI.   CONCLUSION AND PRAYER FOR RELIEF .......................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 250 (1986) ...................................................................7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 557 (2007) ............................................................31, 32

*Butnaru v. Ford Motor Co.*,
84 S.W.3d 198, 210 (Tex. 2002) ....................................................36

*Celotex Corp. v. Catrett*,
477 U.S. 317, 322–25 (1986) ......................................................6, 7

*City of Grants Pass, Oregon v. Johnson*
603 U.S. 520, 560 (2024) ..............................................................35

*City of Lakewood v. Plain Dealer Publ'g Co.*,
486 U.S. 750, 759 (1988) ........................................................17, 34

*Clark v. Cmty. for Creative Non-Violence*,
468 U.S. 288, 293-99 (1984) ...................................................... *ibid.*

*Fairchild v. Liberty Indep. Sch. Dist.*,
597 F.3d 747, 758 (5th Cir. 2010) ……………………………………23, 27

*Friends of the Earth Inc. v. Chevron Chemical Co.*,
129 F.3d 826, 827-28 (5th Cir. 1997) …………………………………… 30, 31

*Holder v. Humanitarian Law Project*,
561 U.S. 1, 18-19 (2010) ..............................................................32

*Hunt v. Washington State Apple Advertising Comm'n*,
432 U.S. 333, 343 (1977) ..............................................................30

*Lujan v. Def. of Wildlife*,
504 U.S. 555, 560 (1992) ........................................................... *ibid.*

*McCullen v. Coakley*,
   573 U.S. 464 (2014) ……………………………………………............*ibid.*

*Reed v. Town of Gilbert*,
   576 U.S. 155, 163 (2015) ..................................................................14

*Shuttlesworth v. City of Birmingham, Alabama*,
   394 U.S. 147, 151 (1969) .................................................... *ibid.*

*Tex. Ass'n of Bus. v. Texas Air Control Bd.*,
   852 S.W.2d 440, 447 (Tex. 1993) ……….………………………..… 30

*TikTok, Inc. v. Garland*,
   604 U.S. ---, 145 S.Ct. 57 (2025) ……………….….………………*ibid.*

*Triple Tee Golf, Inc. v. Nike, Inc.*,
   485 F.3d 253, 261 (5th Cir. 2007) …………….….………………….6

*Turner Broadcasting System, Inc. v. FCC*,
   512 U.S. 622, 642 (1994) .................................................... *ibid.*

*United States v. Albertini*,
   472 U.S. 675, 689 (1985) ……..……….……………………….. *ibid.*

*United States v. O'Brien*,
   391 U.S. 367, 377 (1968). ……..…………………..….….……… *ibid.*

*Ward v. Rock Against Racism*,
   491 U.S. 781, 791 (1989) ………………………..………………*ibid.*

*Warth v. Seldin*,
   422 U.S. 490, 511 (1975) ……………………...….…………………… 30

**Statutes**

U.S. CONST. amend. I ..................................................... *ibid.*

21 C.F.R. §§100.1-190.6.................................................. *ibid.*

25 TEX. ADMIN. CODE §228.1, *et seq.*................................... *ibid.*

TEX. HEALTH & SAFETY CODE §437.001, *et seq.*…………………………..*ibid.*

TEX. LOC. GOV'T CODE § 51.072 …………..…………………………18

**Rules**

Federal Rule of Civil Procedure 56 ................................................................. *ibid.*

Federal Rule of Civil Procedure 65(a)(2) ............................................................36

Pursuant to Federal Rule of Civil Procedure 56(c), Houston responds to Plaintiffs FNBH and Walsh's motion for summary judgment.

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Food Not Bombs Houston ("FNBH") and Brandon Walsh ("Walsh") filed their Complaint for Declaratory and Injunctive Relief on January 30, 2024 (Dkt. 1)[1]. Plaintiffs FNBH and Walsh's Motion for Temporary Restraining Order and Preliminary Injunction was filed on January 30, 2024 (Dkt. 4) and was granted on February 14, 2024 (Dkt. 15). Plaintiff Phillip Picone's case was consolidated with this case on June 6, 2024. (Dkt. 29). Discovery is complete in the consolidated cases and FNBH and Walsh filed a motion for summary judgment and permanent injunction on March 28, 2025. (Dkt. 44). Houston filed a consolidated motion for summary judgment on March 28, 2025 (Dkt. 46).

## II.    STATEMENT OF THE ISSUES AND STANDARD FOR REVIEW

1.     Does intermediate scrutiny apply to Houston's content-neutral regulation of non-expressive activity that disproportionately burdens those engaged in expressive activity? *TikTok, Inc. v. Garland*, 604 U.S. ---, 145 S.Ct. 57, ___ (2025);

2.     Does the ordinance further an important government interest unrelated to suppression of free expression on an as-applied challenge? *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); U.S. CONST. amend. I;

3.     Do the standards in the U.S. Food and Drug Administration model Food Code, as adopted by the State of Texas, sufficiently support Sections 20-252 and 20-

---

[1] Original Complaint in C.A. No. 4:24-CV-00338.

1

257 of the ordinance?  25 Tex. Admin. Code §228.1, *et seq*.; Tex. Health & Safety Code §437.001, *et seq*.; 21 C.F.R. §§100.1-190.6;

4.      Do Plaintiffs Food Not Bombs Houston and Brandon Walsh have standing? *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992).

## III.    SUMMARY OF THE ARGUMENT

Plaintiffs interfere with Houston's governmental obligations to ensure healthy and safe food distribution by seeking to invalidate sections 20-252 and 20-257 of Houston's Charitable Food Services Ordinance and the Houston Health Department ("HHD") rules and regulations governing charitable food service events on public property. (Dkt. 1 at 25-26). Plaintiffs complain that the ordinance violates their First Amendment rights to use the food sharing process to protest war, poverty, and the City's response to homelessness. *See* Plaintiff's motion at 2 (Dkt. 44). Plaintiffs complain that the ordinance is an invalid time, place and manner restriction, an invalid prior restraint, and that it interferes with expressive association. (Dkt. 1 at 19-25). Plaintiffs cannot establish a direct causal link between Houston's municipal policy as set forth in the content neutral charitable food sharing ordinance and HHD regulations at issue and the alleged constitutional deprivations (free speech and expressive association). U.S. Const. amend. I. Plaintiffs' motion should be denied and the constitutionality of Houston's charitable food service ordinance Sections 20-252 and 20-257 should be upheld pursuant to Federal Rule of Civil Procedure 56.

## IV.    SUMMARY JUDGMENT EVIDENCE

**<u>Exhibit A</u>**            City of Houston Ordinance No. 2012-269;

| | |
|---|---|
| **Exhibit B** | City of Houston Ordinance No. 2015-820; |
| **Exhibit C** | Affidavit of Captain Jennifer Lynn Kennedy; |
| **Exhibit C(1)** | Charitable Food Services Ordinance [COH 000009-11]; |
| **Exhibit C(2**) | Charitable Feeding Regulations [COH 000012-16]; |
| **Exhibit C(3)** | City of Houston HHD Charitable Food Services Guidelines [COH 008219-20]; |
| **Exhibit C(4)** | Email from Christopher Sparks to David Opheim dated February 9, 2023 [COH 110287-92]; |
| **Exhibit C(5)** | Photo of Notice installed at Library [COH 000001-2] (Exhibit 18); |
| **Exhibit C(6)** | Memo from Dr. Rhea B. Lawson to Walter Hambrick, Mayor's Office dated August 10, 2022 [COH 084996-97]; |
| **Exhibit C(7)** | City of Houston's Objections and Answers to Plaintiff's First Set of Interrogatories dated January 26, 2025; |
| **Exhibit C(8)** | COH First Amendment Expression—Tranquility Park [COH 001018]; |
| **Exhibit C(9)** | Email from Patrick Key to Graciana Garces dated January 2, 2013 [COH 001579-81]; |
| **Exhibit C(10)** | Email from Patrick Key to James Koski dated January 23, 2015 re: Charitable Feeding discussion points [COH 002138-40]; |
| **Exhibit C(11)** | Email dated January 22, 2015 re: measurable reduction in trash after passage of ordinance in 2012 [COH 002125-26]; |
| **Exhibit C(12)** | Email dated February 11, 2015 from Joe Turner re James Bute Park [COH 002198]; |
| **Exhibit C(13)** | Email dated November 16, 2015 re: addresses no longer approved for feeding from HHD website [COH 003065]; |
| **Exhibit C(14)** | Email dated March 25, 2016 from Carolyn Gray to citizen re: trash complaints [COH 003959-60]; |
| **Exhibit C(15)** | Email dated March 31, 2016 from Rubi Longoria to citizen re Peggy's Point Plaza Park [COH 003979-81]; |

**Exhibit C(16)**　　Email dated July 8, 2016 from Joe Turner to Rubi Longoria re drug use, Purple Kush [COH 11863-64; COH 048066-67];

**Exhibit C(17)**　　Email dated September 13, 2016 from David McCoy re: drug use, Purple Kush [COH 025692-93];

**Exhibit C(18)**　　HHD complaint about conditions outside Downtown Central Library, urine and feces as of April 3, 2020 [FNB010387-89];

**Exhibit C(19)**　　Email from Saima Kadir to Dr. Lawson dated January 9, 2023 re: trash outside Downtown Central Library [COH 091789-92];

**Exhibit C(20)**　　Photos of trash and bricks to hold place in line;

**Exhibit C(21)**　　Email from Dr. Rhea Lawson to Mayor Sylvester Turner dated November 5, 2021 [COH-089759];

**Exhibit C(22)**　　Email re: knife incident at Downtown Central Library [COH 110561-72];

**Exhibit C(23)**　　Photo of knife [COH 112774-76];

**Exhibit C(24)**　　Incident report dated June 28, 2022 re: man throwing bricks at vehicles [COH 112963-65];

**Exhibit C(25)**　　Incident report dated June 28, 2022 re: man throwing rock at vehicle [COH 112960-62];

**Exhibit C(26)**　　Email from Brian Crimmins dated February 28, 2023 re: notice signs [COH 110561];

**Exhibit C(27)**　　Social media posts on YouTube, Facebook, and Houston Food Not Bombs website; and

**Exhibit C(28)**　　Draft offense report dated February 7, 2025 re: harassing COH Public Library employee in person and on the telephone, posting of employee's private information on social media accounts Reddit and Instagram [COH 122174-80]; and

**Exhibit C(29)**　　Draft incident report dated February 7, 2025 re: harassing phone calls, verbal altercation over blocking emergency ramp; threats of rape, dragging behind a car, harassing phone calls [COH 122181-82].

**Exhibit D**　　Affidavit of Renee Beckham;

4

| **Exhibit D(1)** | Article V. Charitable Food Services Ordinance [COH 000009-11]; |
| **Exhibit D(2)** | Charitable Feeding Regulations [COH 000012-16]; |
| **Exhibit D(3)** | Houston Health Department City of Houston Charitable Food Services Guidelines [COH 008219-20]; |
| **Exhibit D(4)** | Registered Charitable Food Service Groups list as of October 30, 2019; |
| **Exhibit D(5)** | Email from Christopher Sparks to David Opheim dated February 9, 2023 re: updates to HHD website [COH 110287-92]; |
| **Exhibit D(6)** | Email from Patrick Key to Graciana Garces dated January 2, 2013 re: update on first 6 months of ordinance [COH 001579-81]; |
| **Exhibit D(7)** | Email from Patrick Key to James Koski dated January 23, 2015 re: Charitable Feeding discussion points [COH 002138-40]; |
| **Exhibit D(8)** | Email dated January 22, 2015 re: measurable reduction in trash after passage of ordinance in 2012 [COH 002125-26]; |
| **Exhibit D(9)** | Email dated February 11, 2015 from Joe Turner re: Harris County formally denied any further feeding at James Bute Park [COH 002198]; |
| **Exhibit D(10)** | Email dated November 16, 2015 re: removal of addresses no longer approved for feeding from HHD website [COH 003065]; |
| **Exhibit D(11)** | Email dated March 25, 2016 from Carolyn Gray to citizen re trash complaints at Peggy's Point Plaza Park [COH 003959-60]; |
| **Exhibit D(12)** | Email dated March 31, 2016 from Rubi Longoria to citizen re Peggy's Point Plaza Park [COH 003979-81]; |
| **Exhibit D(13)** | Email dated September 13, 2016 from David McCoy re: drug use, Purple Kush [COH 025692-93]; |
| **Exhibit D(14)** | Email dated July 8, 2016 from Joe Turner to Rubi Longoria re drug use, Purple Kush and homeless |

initiatives re how best to provide services to those in need, not just feedings [COH 048066-67];

**Exhibit D(15)**    HHD complaint about conditions outside Downtown Central Library, urine and feces as of April 3, 2020 [FNB010387-89]

**Exhibit D(16)**    Memo from Dr. Rhea B. Lawson to Walter Hambrick, Mayor's Office dated August 10, 2022 re: feedings and the problems they cause continue  unabated [COH 084996-97]

**Exhibit D(17)**    Email from Saima Kadir to Dr. Lawson dated January 9, 2023 re: trash, rocks, and food waste outside Downtown Central Library [COH 091789-92]; and

**Exhibit D(18)**    Photos of trash and bricks to hold place in line;

**Exhibit E**    Deposition excerpts for Brandon Walsh (pp. 33-39; 49-57; 65; 82-87);

**Exhibit E(1)**    Food Not Bombs FAQs (Exh. 11);

**Exhibit F**    Deposition excerpts for Capt. Jennifer Lynn Kennedy (pp. 46-53; 78-85;126-45; 174-77);

**Exhibit G**    Deposition excerpts for Saima Kadir (pp. 105-120); and

**Exhibit H**    Deposition of Renee Beckham (pp. 154-57).

## V.    ARGUMENT AND AUTHORITIES

### A.    SUMMARY JUDGMENT STANDARD

1.    Summary judgment is appropriate only where there is no genuine dispute as to any issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). The burden then

shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. Rule 56(c). *Celotex*, 477 U.S. at 322. Where there is a genuine issue as to any material fact, the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

**B.    FACTUAL BACKGROUND**

**1.    Houston's policy to end street homelessness**

2.    In the spring of 2012, the Houston City Council approved an ordinance establishing a voluntary program to coordinate outdoor food service operations for those in need, including persons experiencing food insecurity. *See* Houston Ordinance No. 2012-269, attached as **Exh. A; C(1)**. The ordinance was amended in 2015 upon the creation of the HHD. *See* Houston Ordinance No. 2015-820, attached as **Exh. C(3)**.  The intent of the ordinance was three pronged: (1) to improve the quality, quantity, and distribution of food provided outdoors; (2) to expand the opportunities for the homeless to connect with service providers; and (3) to reduce the disproportionate environmental impact of food service operations on public and private property. *See* Affidavit of Houston Police Dept. Captain Jennifer Kennedy, **Exh. C**. Mayor Whitmire's goal is to end street homelessness in Houston. *Id.*

3.    The charitable food services program consists of four basic steps: (1) register the formal or informal food service organization; (2) get free, food handling training for the food service organization; (3) get property owner consent; and (4)

schedule your food service. *See* **Exh. C(2)**. Registration instructions and information are listed on the HHD website. *See* **Exh. C**. Registration is voluntary and **no permit is required**. Participation in the charitable food service program itself is voluntary and the only mandatory step is the requirement to obtain owner consent before using either public or private property for food service of more than five people. *Id*. Plaintiffs challenge this requirement found in Section 20-252. *See* **Exh. C(1)**.

4.      Plaintiffs challenge Section 20-257 governing the use of City parks and other city property for food service events, which requires the director of public health to develop rules, regulations, and criteria for the use of city property for food service events. *Id.* Adequate trash containment to contain all trash, refuse, and litter on the site of each charitable food service event has been a hallmark of the charitable food service program from its inception. *Id*.; **Exh. C(11)**. Any charitable food service providers on City property must have adequate trash receptacles, trash containment and removal measures to contain all trash, refuse, and litter on the site of the food service event and to properly dispose of all trash, refuse, litter and remove unused foods from the site at the conclusion of the food service event. **Exh. C**.

5.      In early 2016, the synthetic marijuana drug called Kush permeated the City including the population of persons experiencing homelessness and there was a noticeable increase in use of Kush in the homeless population. *Id*.; **Exhs. C(16)- (17)**. Many of the Kush users would attend the charitable feeding events high on

Kush and create a disturbance at the event. *Id*. Kush abuse led to lots of issues at the parks. *Id*. As a result, charitable feeding events were canceled at the parks due to the City's serious concerns that it could no longer safely host charitable feeding events on park property. *Id*. The Rapid Rehousing program began in 2016. The City made an effort to collaborate with organizations conducting the feedings to offer housing services along with the feedings. **Exhs. C, C(16)**. There was no enforcement of the ordinance from 2016-2019. Deposition of Capt. Kennedy at 79, ln. 10-14, **Exh. F**.

6.    In 2022, the City experienced an increase in several different types of violent and disturbing incidents at the Downtown Central Library. **Exhs. C, C(22)-(25)**. Captain Kennedy had to pull naked men out of the bathroom inside the Downtown Central Library because they were showering in the sinks there. **Exh. C.** Captain Kennedy has apprehended individuals experiencing homelessness having sex in the bathrooms and in the back corners of the library. *Id*. Individuals also have been found using drugs, threatening library staff while under the influence of drugs and/or alcohol, as well as possessing weapons inside the library. *Id*.

7.    In 2022, outside the library, individuals under the influence of intoxicants were in the Downtown Central Library Plaza harassing the security guards. *Id*. Individuals lined up for charitable feeding would pull up pieces of historic bricks that are no longer being made along the sidewalk to place them as markers to hold their place in line for the feedings. *Id*. Individuals threw rocks at

cars exiting the Central Library parking garage in the early evening in June 2022, causing property damage. **Exhs. C(24)-C(25)**. Captain Kennedy has seen and has read incident reports that some individuals have sat down on the sidewalk or placed their belongings on the sidewalk, blocking pedestrian access. **Exh. C**.

8.    Individuals waiting for charitable feedings outside the Downtown Central Library have urinated or defecated on the side of the building or on a tree in the area. **Exh. C(18).** Chief Librarian Saima Kadir has encountered vomit on the sidewalk in the area of a food service event, in addition to food waste, half-eaten food, and Styrofoam containers that have leftover food. *See* Former Library Director Rhea Lawson's November 5, 2021 report of human wasted regularly left on the library grounds and one woman openly defecating on the Julia Ideson Building grounds, attached as **Exh. C(21)**; Deposition of Saima Kadir at 115, ln. 14-116, ln. 24, attached as **Exh. G**. HHD received a citizen complaint about conditions outside Downtown Central Library, urine and feces as of April 3, 2020. **Exh. D(15)**.

9.    As a result of the increased violence in October 2022, Houston Police presence increased at the Downtown Central Library. **Exh. C**. Metal detectors were installed. *Id*. The library hired Houston Police officers to work for an overtime program that was funded directly by the library's budget. *Id*. Additional police officers were requested for scheduled events. *Id*. The enhanced security reduced the

instances of violence at the library. *Id*. The cost of providing extra security is over $2,000 per week for 4 feeding events per week at the library. *Id*.

10.     In February 2023, Houston installed signs on the premises of the Downtown Central Library indicating charitable feeding was no longer allowed at that location for any individuals or groups and that charitable feeding was welcomed at a new City-owned location—61 Riesner. *Id*.; **Exh. C(5)**. Food Not Bombs volunteers and others were warned verbally and in writing that feedings would no longer take place at the Downtown Central Library and were instructed to move operations to the new location at 61 Riesner Street. **Exh. C**. Houston Police Officers offered assistance including shuttle transportation for those willing to move charitable feeding operations to 61 Riesner Street. *Id*. By moving operations, FNBH volunteers would not have to serve different food, serve a different constituency, or make any change to signage on their t-shirts or any other signage. *Id*. As of the date of this motion, the City of Houston Properties Approved for Charitable Food Services Events has had one approved location, 61 Riesner Street. *Id*.

11.     Ordinance Section 20-257 authorizes and requires the director of public health to develop rules, regulations, and criteria for the use of city property for food services events and City departments maintain a list of such properties with areas approved for food services events. *See* **Exh. C(1)**. The Houston Public Library is not an approved property with an area approved for food services events as of February

25, 2023. *See* Notice installed at Downtown Central Library attached as **Exh. C(5)**. As set forth in the Notice, the HHD updated rules and regulations govern charitable food services events on public property and non-compliance with these rules and regulations puts the individual at risk of violating the law. *Id.*

12.    The HHD regulations for approved charitable food service locations on City of Houston property require:  (1) adequate parking for the personnel conducting the food service event, with a minimum of ten (10) dedicated parking spaces during charitable food service events; (2) adequate trash containment to contain all trash, refuse, and litter on the site of the food service event; and (3) two portable restrooms with handwashing stations available during food service events and available 24 hours per day, seven days per week. *See* **Exh. C(3)**.

13.    The HHD Charitable Feeding Program regulations for approved charitable food service providers on City of Houston property require: (1) adequate personnel to conduct the food service event and restore the site at the conclusion of the food service event; (2) adequate trash receptacles, trash containment and removal measures to contain all trash, refuse, and litter on the site of the food service event and to properly dispose of all trash, refuse, litter and remove unused foods from the site at the conclusion of the food service event, and (3) adherence to guidelines for food preparation, transport, serving, handling, storage and packaging in accordance with the Houston Food Ordinance. Houston Code of Ordinances §20-251, *et seq.;*

*see also* U.S. Food and Drug Admin. model Food Code, as adopted by Texas, 25 TEX. ADMIN. CODE §228.1, *et seq*.; TEX. HEALTH & SAFETY CODE §437.001, *et seq*.; *see also* Order of Preliminary Injunction dated February 14, 2024 (Dkt. 16).

### 2. The Citations

14. Following the notice and grace period for compliance with the updated HHD rules and regulations, and following receipt of a written warning, enforcement began. Deposition of Capt. Kennedy at 142, ln. 6-10, attached as **Exh, F**. Plaintiff Brandon Walsh has never received a citation for violation of Houston's Charitable Feeding Ordinance. *See* Brandon Walsh Deposition at 58, ln. 5-7, attached as **Exh. E**; Dkt. 1 at 3, ¶9.

## C. SUMMARY JUDGMENT FOR HOUSTON IS APPROPRIATE

### 1. Houston's charitable food services provider program is subject to intermediate scrutiny

15. The Supreme Court acknowledges as recently as January 2025 that it had not yet articulated a clear framework for determining whether a regulation of non-expressive activity (such as serving food) that disproportionately burdens those engaged in expressive activity (such as food-related protests) triggers heightened review. *TikTok*, 145 S. Ct. at 66. Laws that target speech based on its communicative content are presumptively unconstitutional and may be justified "only if the government proves that they are narrowly tailored to serve compelling state interests." *Id*., citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Content-

neutral laws "are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue." *TikTok*, 145 S. Ct. at 66, citing *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 642 (1994).

16.    The charitable feeding ordinance promotes and maintains the health and safety of Houstonians, including the vulnerable homeless population, by ensuring safe and sanitary food sharing and waste disposal. *See* TEX. HEALTH & SAFETY CODE §365.012; §437.001, *et seq*; **Exhs. A, B, C(1)-(3)**. The ordinance on its face is not content-based because it does not discuss ideas, messages, or other speech-related topics. *Reed*, 576 U.S. at 163. The ordinance does not facially regulate "particular speech because of the topic discussed or the idea or message expressed." *Id*. The ordinance likewise does not deserve to be treated as a content-based regulation of speech because the ordinance can be justified without reference to the content of the regulated speech and because its adoption was completely independent from any government disagreement with the message the "speech" conveys. *Id*. at 164, citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

17.    Food poisoning can cause illness or even death. *See* Affidavit of Renee Beckham, attached as **Exh. D**. As applied to the Plaintiffs, the challenged provisions of the ordinance are facially content-neutral and are justified by a content-neutral rationale of improving the quality of food provided outdoors. *Id*. The ordinance is

"decidedly content agnostic." *Tik Tok*, 145 S.Ct. at 68. It "neither references the content of the speech" nor "reflects disagreement with the message such speech conveys." *Id*.; *see also Ward*, 491 U.S. at 792-93.

18.    The ordinance restricts only certain actions, and such restrictions are directly related to the health and well-being of Houston's citizens. *Id*. By requiring adherence to established guidelines for food preparation, transport, serving, handling, storage and packaging in accordance with the national standards set out in the FDA model food code as adopted in Texas, the ordinance provides City representatives with clear standards to guide their decisions and contains no facial restrictions on the free exercise of speech or expressive activity. Houston Code of Ordinances §20-251, *et seq*., attached as **Exh. C(1)**; *see also* U.S. Food and Drug Administration model Food Code, as adopted by the State of Texas, 25 TEX. ADMIN. CODE §228.1, *et seq*.; TEX. HEALTH & SAFETY CODE §437.001, *et seq*. FNBH's assertion on page 4 of its motion (Dkt. 44) that the ordinance "contains no criteria by which the City decides whether to grant or deny permission for charitable feedings" is both unsupported and incorrect, as demonstrated by Houston's competent summary judgment evidence that the ordinance allows the Houston Health Department to enact rules, regulations and criteria supporting the ordinance, and that it did so. *See* **Exhs. D(1)-(3)**; *see also* Deposition of Capt. Kennedy at 128, ln. 12-130, ln. 21, attached as **Exh. F**.

19.     The ordinance is not "a subtle means of exercising a content preference" as might justify application of a strict scrutiny standard of review. *Turner*, 512 U.S. at 645.  Houston Chief Sanitarian Renee Beckham has trained numerous food service organizations in proper food handling rules, guidelines and techniques. *See* **Exh. D**. As of October 30, 2019, 199 Charitable Food Services Groups have become registered through Houston's provider program. *Id*. The application of the ordinance underscores no content preference whatsoever in the ordinance's training program and the provisions of the ordinance serve the government's interest "in a direct and effective way." *Ward*, 491 U.S. at 800.

20.     Likewise, the regulations Houston enacted pursuant to the ordinance do not operate to exercise any content preference that may trigger a heightened scrutiny review under a facial challenge. Sections 20-252 and 20-257 and the supporting regulations are not presumed invalid under the First Amendment. **Exh. C(1)**. Under the current regulations of the Houston Health Department, ***any*** charitable food service providers seeking to provide food on City property must have adequate trash receptacles, trash containment and removal measures to contain all trash, refuse, and litter on the site of the food service event and to properly dispose of all trash, refuse, litter and remove unused foods from the site at the conclusion of the food service event. **Exh. C(2)**. (emphasis added). The regulations apply regardless of the type of food served or the identity of the food handlers and servers.  There is simply no "real

16

and substantial threat" of censorship to be found in Sections 20-252 or 20-257 of the ordinance or the supporting regulations. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 759 (1988).

21.    Food for human consumption has unique characteristics separate and apart from any quality of that food that might be considered First Amendment protected activity under certain circumstances. U.S. CONST. amend. I. Special characteristics of food justify rules requiring proper handling and waste disposal. *See id*. Food is only safe for consumption if it is handled properly.  If left unregulated, consumption of food that does not meet health standards and abandonment of unused food left to deteriorate or decay on public property can cause serious public health and safety consequences. For these reasons, the provision of food for human consumption is regulated by the state and by the federal government. *See* 25 TEX. ADMIN. CODE §228.1, *et seq*.; 21 C.F.R. §§100.1-190.6. The ordinance and supporting regulations further important governmental interests unrelated to the suppression of free expression and do not burden substantially more speech than necessary to further the governmental interests of improve the quality, quantity, and distribution of food provided outdoors; expanding the opportunities for the homeless to connect with service providers; and reducing the disproportionate environmental impact of food service operations on public and private property. *See* **Exh. D**.

22.    The passage of the ordinance in 2012 and its subsequent enforcement are within the City's constitutional power as a "home-rule" city and are related to the City's important governmental interest in ensuring the health and safety of its citizens by addressing public issues of poor sanitation, crime, loitering, crowds, heavy trash accumulation, noise, traffic control, and food safety. *See generally* TEX. LOC. GOV'T CODE § 51.072; CITY OF HOUSTON CHARTER ART. II, SEC. 2. Such an important governmental interest is unrelated to the suppression of expressive activity as it "serves purposes unrelated to the content of expression." *Ward*, 491 U.S. at 791; *see also McCullen v. Coakley*, 573 U.S. 464, 480-481 (2014); TEX. HEALTH & SAFETY CODE §437.001, *et seq*.

23.    The Ordinance draws no distinctions between food service activities with a message and food service activities without a message. **Exh. C(1)**. The test for content neutral regulation of First Amendment expressive conduct asks whether the regulation is narrowly drawn to further a substantial governmental interest unrelated to the suppression of free speech. *United States v. O'Brien*, 391 U.S. 367, 377 (1968); *Clark v. the Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984). A time, place, and manner restriction on First Amendment speech or expressive conduct must be narrowly tailored to serve a significant governmental interest and leave open ample alternative channels for communication of the information. *Id*. The requirement of narrow tailoring is satisfied as long as regulation

promotes substantial governmental interest that would be achieved less effectively absent the regulation, and the means chosen are not substantially broader than necessary to achieve the governmental interest.    *Ward*, 491 U.S. at 799-800. Government may, consistent with the First Amendment, enforce reasonable time, place, and manner regulations on expression in a park.    U.S. CONST. amend. I; *Shuttlesworth v. City of Birmingham, Alabama*, 394 U.S. 147, 151 (1969); *see also* **Exh. C(8)**.

24.    "Sound policymaking often requires legislators to forecast future events and to anticipate the likely impact of these events based on deductions and inferences for which complete empirical support may be unavailable." *Turner*, 512 U.S. at 665; quoted in *TikTok*, 145 S.Ct. at 69-70; accord *Clark*, 468 U.S. at 293; *see also* TEX. HEALTH & SAFETY CODE §437.001, *et seq.* It is generally known that that food poisoning can cause illness or even death.    *See* **Exh. D**. Legislators may regulate food service accordingly. Houston regulates food service to ensure the health and safety of the public. Sec. 20-250, et seq.; 25 TEX. ADMIN. CODE §228.1, *et seq*.; TEX. HEALTH & SAFETY CODE §437.001, *et seq*.; 21 C.F.R. §§100.1-190.6.

25.    With respect to the Plaintiffs in this case, Houston has raised a fact issue regarding the safety of the food FNBH serves. Despite FNBH's unsupported assertion on page 6 of its motion (Dkt. 44) that the City "has not received a single complaint about the safety of the food FNBH serves," HHD has received a citizen

complaint about unsanitary food conditions from food being served by a FNBH subgroup Coronavirus Relief Meals outside Downtown Central Library, as of April 3, 2020, that "[b]asically this group is serving food in a toilet." **Exh. D(15)**. Chief Librarian Saima Kadir has encountered vomit on the sidewalk in the area of a food service event, in addition to food waste, half-eaten food, and Styrofoam containers that have leftover food. *See* Deposition of Saima Kadir at 115, ln. 14-116, ln. 24, attached as **Exh. G**; *see also* Former Library Director Rhea Lawson's November 5, 2021 report of human wasted regularly left on the library grounds and one woman openly defecating on the Julia Ideson Building grounds, attached as **Exh. C(21)**.

26.    It does not take special powers of deductive reasoning to anticipate the likely impact of unregulated food service events on public sidewalks. The experiences of library staff and other Houston citizens confirm that unsanitary events connected with FNBH's food service happened on multiple occasions outside the Downtown Houston Central Library. *Id*.; *see also* **Exhs. D(15)-(18)**. Houston has raised a genuine issue of material fact as to whether the food FNBH serves meets the health and safety standards proscribed by Texas law and Plaintiffs are not entitled to summary judgment on the issue of whether the food Plaintiffs serve is safe for the consumption of Houston citizens. *See* 25 TEX. ADMIN. CODE §228.1, *et seq.*; TEX. HEALTH AND SAFETY CODE §437.001, *et seq.*

27.    FNBH has produced no competent summary judgment evidence that its members or its group has been "criminalized" by an ordinance and regulations that apply equally to all Houstonians. *See* motion at 2, 15 (Dkt. 44). FNBH's assertions that the City "disproportionately uses policing and criminalization to harm unhoused Houstonians rather than meeting their direct needs" on page 3 of its motion (Dkt. 44) is contradicted by Houston's competent summary judgment evidence of Captain Kennedy's personal experience with physical violence and harm to persons and property at the Downtown Central Library in 2022, necessitating a heightened level of security and need to keep the peace at that location. *See* **Exh. C**. By enacting an ordinance supporting Houston's legitimate governmental purpose that includes a citation enforcement procedure, Houston's governmental action to promote and ensure the health and safety of all its citizens is measured, appropriate and serves a legitimate governmental purpose. **Exhs. C; C(1)-(2)**.

### 2.    Houston's ordinance survives intermediate scrutiny

28.    Even assuming Plaintiff's feeding people on public property without permission is protected speech or expressive conduct, Houston's content-neutral regulation satisfies intermediate scrutiny because it "promotes a substantial government interest that would be achieved less effectively absent the regulation" and does not "burden substantially more speech than is necessary" to further that interest. *TikTok*, 145 S. Ct. at 70, citing *Ward*, 491 U.S. at 799 (quoting *United States*

*v. Albertini*, 472 U.S, 675, 689 (1985)("no more than is essential").  The Program's health and safety-based requirements of (1) adequate parking for the personnel conducting the food service event, (2) adequate trash containment on the site of the food service event; and (3) two portable restrooms with handwashing stations available during food service events ensures the health and safety of all participants. **Exh. C(3)**. Volunteers need not fight vehicular traffic or search for limited on-street parking to set up their food service on a sidewalk.  Volunteers and patrons need not relieve themselves in public, nor serve food or eat with unclean hands. Providers need not obtain a permit, a license, pay any fee, or even register with the City, but must only provide (1) adequate personnel to conduct the food service event and restore the site at the conclusion of the food service event; (2) adequate trash removal measures to contain all trash, refuse, and litter on the site of the food service event and to properly dispose of all trash, refuse, litter and remove unused foods from the site at the conclusion of the food service event, and (3) adherence to the Texas food code/ Houston Food Ordinance guidelines for food preparation, transport, serving, handling, storage and packaging. *Id.* All such requirements promote sanitation, safety and support Houston's enforcement of its health and safety ordinances, State law prohibiting public health nuisances, and State law prohibiting littering and illegal dumping. TEX. HEALTH & SAFETY CODE §341.011, *et seq*., §365.012; 25 TEX.

ADMIN. CODE §228.1, *et seq*.; *see also* Houston Code of Ordinances §28-19; §10-483.

29.    No City official can arbitrarily deny the use of the accessible public forum located at 61 Riesner for charitable feeding—it is available to all organizations on an as-requested basis. **Exh. C(3)**. Designated public forums, such as the Houston Municipal Courthouse located at 1400 Lubbock Street in Downtown Houston, are places that the government "intentionally create[s]… for the same widespread use as a traditional public forums." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758 (5th Cir. 2010). Even FNBH admits that the 61 Riesner location, which is bordered by Lubbock Street and Artesian Place, located adjacent to is "next to the municipal courthouse," a designated public forum.  *See* motion at 8 (Dkt. 44). Nothing in the ordinance provides any opportunity for any undetectable censorship. *Shuttlesworth*, 394 U.S. at 151. Any burden on speech, if any, is not done in a manner inconsistent with Houston's advancement of its governmental goals of keeping the public safe and promoting the health and well-being of all members of the public. *McCullen*, 573 U.S. at 486. The requirements of the ordinance, rules and regulations are content-neutral, leave open alternative channels of speech, and are narrowly focused on the substantial interest of the government in ensuring healthy and safe delivery of food and removal of all trash, refuse, litter and remove unused foods from the site at the conclusion of the food service event. *See* **Exh. C(3).**

30.     Despite FNBH's assertion on page 4 of its motion (Dkt. 44) that the ordinance contains no criteria by which the City decides whether to grant or deny permission for charitable feedings, Houston's competent summary judgment evidence shows that the criteria for appropriate charitable feeding locations on City property are well-established and locations in addition to 61 Riesner could possibly be approved as well, as long as they meet the criteria. *See* **Exhs. D(1)-(3)**; Deposition of Capt. Kennedy at 128, ln. 12-130, ln. 21, attached as **Exh. F**. FNBH has submitted no competent summary judgment evidence that any license or permit is required to conduct charitable feeding at 61 Riesner, and Houston has submitted competent summary judgment evidence that a permit is not required.  *See* **Exhs. C(1)-(2)**; *see also* **Exh. C(3)** ("A permit to feed the homeless is not required."). FNBH has not submitted any competent summary judgment evidence that any request to serve food at the designated charitable feeding location 61 Riesner has ever been rejected, nor that the ordinance provides any means for rejection of such a request. *Id*.

31.     The standards for approved City locations are concrete, specific, and clearly set out in the applicable regulations. *Id*. The City is not a third party that needs to "apply to get a location approved" as FNBH argues on page 23 of its motion (Dkt. 44). The regulations supporting the ordinance simply identify required characteristics for charitable feeding locations. *See* Deposition of Capt. Kennedy at 130, ln. 10-21, attached as **Exh. F**. Likewise, FNBH does not select City locations

designated for City charitable feeding.   The power to select charitable feeding locations belongs to the City, which is entirely appropriate as the City is the owner of the property and is the party responsible for the property. **Houston** selecting a suitable property for charitable feeding is an independent process from Houston allowing users to schedule the property for charitable feeding, rendering FNBH's argument on page 23 of its motion that **FNBH** somehow needs to satisfy certain property qualification criteria moot. (Dkt. 44). FNBH on page 7 of its motion acknowledges the notices posted at the Downtown Central Library are not targeted to FNBH or any speech or expression, contrary to its argument that the City has somehow "weaponized the Ordinance against FNBH" on page 23 of its motion (Dkt. 44). *See* **Exh. C(5)**. FNBH's arguments on pages 19-24 of its motion (Dkt. 44) that the ordinance is an invalid prior restraint that lacks narrow, objective or definite standards or operates to suppress a particular point of view do not apply to this set of facts and therefore fail as a matter of law. *See Shuttlesworth*, 394 U.S. at 150-51.

32.    Despite FNBH's unsupported assertion on page 8 of its Response that "many of the people who have attended FNBH events at the Central Library … cannot get to [the 61 Riesner location]," Captain Kennedy testified that Houston provides transportation where requested and the Homeless Outreach Team could load its Sprinter vans to transport individuals to 61 Riesner. *See* Deposition of Capt. Kennedy at 49, ln. 14—52, ln. 17, attached as **Exh. F**. Other transportation options

to 61 Riesner include zTrips, METROLift and METRO shuttles. *Id*. at 52, ln. 5-13. Houston has raised a disputed issue of fact as to whether the 61 Riesner Street location is accessible to people who have attended FNBH events at the Central Library and FNBH is not entitled to summary judgment on the issue of whether the 61 Riesner location is an accessible public forum.

33.    The standards guiding the ordinance are clearly outlined in state and federal law and provide clear direction to the City officials in implementing such standards. 25 TEX. ADMIN. CODE §228.1, *et seq*. Governments are afforded latitude in designing regulatory solutions to address content-neutral interests, "so long as the means chosen are not substantially broader than necessary to achieve the government's interest." *Ward*, 491 U.S. at 800; *Clark*, 468 U.S. at 299; *Albertini*, 472 U.S. at 689. The validity of the challenged government regulation does not turn on whether the Court agrees with Houston's conclusion that its chosen regulatory path is best or "most appropriate" but rather whether Houston's policy is reasonable and well-grounded. *TikTok*, 145 S.Ct. at 71, quoting *Albertini*, 472 U.S. at 689.

34.    Plaintiffs have ample alternative channels for communication other than in-person expressive activity at 500 McKinney Street at the Downtown Central Library. *McCullen*, 573 U.S. at 477. Plaintiffs have regularly communicated their speech through electronic media including YouTube, Facebook, Reddit, Instagram, and on the FNBH website.  *See* **Exhs. C, C(27)-(28)**; *see also* video attached as **Exh.**

**34** to Plaintiffs' motion submitted to the Court via USB drive (Dkt. 44.36). Plaintiff Walsh through his business "Punk with a Camera" prints t-shirts, flyers, banners for a living and communicates through social media including YouTube. *See* **Exh. E** at 4, **Exh. C(27)**. Plaintiffs are sophisticated users of social media who are capable of reaching a wide audience from any public forum, broadcasting their message regularly and widely on the Internet. The ordinance and its regulations provide for adequate alternative channels of communication adjacent to the Municipal Courthouse, a designated public forum. *Fairchild*, 597 F.3d at 758. Using the Municipal Courthouse as a backdrop for their video messages instead of the Downtown Central Library does not change the character of Plaintiffs' message in a concrete or meaningful way, despite Plaintiffs' argument on page 31 of their motion. (Dkt. 44). To the extent a traditional public forum is Plaintiffs' desired location, one downtown municipal building should be as objectively acceptable as another for the communication of Plaintiffs' message.

35.    Contrary to Plaintiffs' argument on pages 32-33 of their motion (Dkt. 44), police resources are allocated based on locations where complaints and consistent issues are present, not because one location is inherently more likely to be monitored than another. *See* **Exh. F** at 176, ln. 6-22. Plaintiffs have submitted no competent summary judgment evidence that Houston has in any way prevented Plaintiffs from communicating effectively with their intended audience. *See* motion

at 29 (Dkt. 44). Houston has produced competent summary judgement evidence contrary to Plaintiffs' assertions on page 29 of their motion (Dkt. 44) that the ordinance forecloses all adequate alternative channels of communication and therefore Plaintiffs' motion on this issue should be denied.

36.    Plaintiffs do not contest that it is within the power of local government to regulate usage of City property and impose health and safety regulations on the activity of feeding groups of 5 or more people.  The City's interests are served by the ordinance and the City's interest in regulating charitable feeding groups grounded in State and local health and safety laws is unrelated to the suppression of speech. Indeed, there are no restrictions on the broad variety of messages that have been conveyed and food that has been shared at 61 Riesner Street from March 2023 through the present. **Exh. C(9)-(10)**. The incidental restriction of alleged freedoms under the First Amendment Plaintiff claims to have experienced is not greater than necessary to further the interests of the City in ensuring the health and safety of its citizens.  The City is in the best position to determine how best to manage the burdens that Plaintiff places on City property by engaging in charitable feeding activities and the City has established a suitable downtown location available to Plaintiff and all other interested individuals and groups at 61 Riesner, Houston, Texas 77002 and supported it with adequate resources to address quality of life issues, including crime prevention.  *See* Deposition of Capt. Kennedy, 176, ln. 6-

177, ln.18, **Exh. F**. The Ordinance is no more restrictive than necessary to further Houston's governmental health and safety interests. *McCullen*, 573 U.S. at 490-94.

37.    The City has proven through trial and error that less-restrictive alternative locations were not ultimately suitable for the purpose of charitable feeding. *See* motion at 28-29 (Dkt. 44); **Exhs. C(16)-(17)**. City parks proved not to be secure locations in 2016 because many of the Kush users at that time would attend the charitable feeding events high on Kush and create a disturbance at the event. **Exh. C**. Kush abuse led to lots of issues at the parks. *Id*. As a result, charitable feeding events were canceled at the parks due to the City's serious concerns that it could no longer safely host charitable feeding events on park property. *Id*. Because the City has shown less restrictive alternatives failed to achieve its governmental purpose, it has met its burden of proof that the ordinance survives intermediate scrutiny. *McCullen*, 573 U.S. at 494.

38.    The limited, content-neutral restrictions in Houston's charitable feeding ordinance and regulations promulgated by the HHD do not interfere with any message conveyed through the charitable feeding activity. The ordinance is enforced at multiple locations, not just 500 McKinney Street. *See* Deposition of Renee Beckham at 154-57, attached as **Exh. H**. The ordinance regulates feeding conduct in a reasonable way, tied to the stated purpose of the ordinance. "[A]n incidental burden on speech is no greater than is essential, and therefore is permissible under

*O'Brien*, so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *United States v. Albertini*, 472 U.S. 675, 689 (1985). Because Houston's reasonable restrictions to time, place and manner do not in any way prevent the sharing of Plaintiffs' message, and Plaintiffs have ample alternative means of communication, the challenged sections of the ordinance do not violate the free speech or free exercise clauses of the First Amendment. U.S. CONST. amend. I.

39.    Houston has a governmental obligation to ensure food safety and any incidental burden on Plaintiff's speech is no greater than is necessary. The neutral charitable feeding ordinance promotes a substantial governmental interest that would be achieved less effectively absent the regulation. Plaintiff's challenge to the ordinance on its face should be dismissed pursuant to Federal Rule of Civil Procedure 56.

### 3.    Food Not Bombs Houston has no injury in fact and no associational standing for its vagueness argument

40.    FNBH states it is an unincorporated association affiliated with the grassroots international Food Not Bombs movement. Dkt. 1, at ¶16.  An association has standing to bring suit on behalf of its members when (1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual

members. *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826, 827-28 (5th Cir. 1997) (*citing Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *Warth v. Seldin*, 422 U.S. 490, 511 (1975)); *Tex. Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 447 (Tex. 1993) (citations omitted). The "irreducible constitutional minimum of standing" requires a plaintiff to "present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be addressed by a favorable ruling." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992).

41.     FNBH makes no allegations of facts to show the third required element of associational standing that neither the claim asserted, nor the relief requested, requires the participation in the lawsuit of each of the individual members. *Friends of the Earth*, 129 F.3d at 827. Rather, FNBH only alleges that it engages in food sharing to communicate its message that "food is a human right" and it "shares food with anyone without restriction, to communicate its message and exhibit what a community based on mutual aid looks like."   (Dkt. No. 1 at 5, ¶16). FNBH's "formulaic recitation" of the elements of associational standing is insufficient to establish standing. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). FNBH's vagueness arguments are disingenuous because video evidence it submitted in its motion for summary judgment (Dkt. 44) establishes it was challenging the ordinance directly by seeking and receiving a citation for violation of the ordinance. (Dkt. 44-

36); *see also* Deposition of Capt. Kennedy at 127, ln. 11-16 ("it was in February of 2023 when they received warning that they were no longer going to be able to feed there and that they have to feed at 61 Riesner, so before any sort of enforcement action took place."). "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010)(citation omitted). Although chilled expression is one type of cognizable injury recognized in First Amendment jurisprudence, FNBH lacks standing to assert a facial challenge to the ordinance based on vagueness. *Id*. at 19. Without an injury, FNBH's claims do not meet the *Twombly* test and should be dismissed. *Id*.

### 4. Walsh has no injury in fact and no standing for an as-applied or facial challenge to the ordinance

42. "A party typically cannot challenge a statute as-applied unless the statute has been applied to him." *Ctr. For Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006). When a plaintiff challenges a policy that has not been applied to him, he has not established injury in fact sufficient to support standing. *Lujan*, 504 U.S. at 560. Plaintiff Brandon Walsh has never received a citation for violation of Houston's Charitable Feeding Ordinance. *See* Brandon Walsh Deposition at 58, ln. 5-7, attached as **Exh. E**; Dkt. 1 at 3, ¶9. Therefore, Walsh lacks standing to maintain the challenges he brings in this case.

5. **Even if Plaintiffs' feeding people on public property without permission is protected speech or expressive conduct, it is subject to Houston's reasonable time, place, and manner restrictions**

43.     Even if Plaintiffs' feeding people on public property without permission is protected speech, it is subject to time, place, and manner restrictions based on the government's significant interest in protecting the health and safety of the public. The City's reasonable time, place and manner restrictions are fair and apply to every member of the public. Plaintiffs possess no First Amendment right to conduct food sharing on City property where food sharing is not otherwise permitted.

44.     The City has designated an appropriate time (24 hours/ 7 days per week), an appropriate place (61 Riesner Street, Houston, Texas 77002), and manner (reasonable health and safety criteria) restrictions on charitable feeding on public property.  *See* **Exhs. A, B, C(1)-(3).** The City has put the necessary infrastructure in place to address unusually high accumulation of litter and discarded food at a specific location (61 Riesner Street).  The City has prepared in advance to remedy the potential health and safety issues promptly before it attracts birds, rats, vermin, bugs and other animals that are a nuisance could spread disease. The restrictions imposed by the City serve legitimate government interests unrelated to the content of the expression. Exchanging one type of designated public forum (sidewalk adjacent to a library) for another type of designated public form (parking area adjacent to municipal courthouse) does not constitute a restriction on expressive conduct or conduct commonly associated

with expression. *City of Lakewood*, 486 U.S. at 759.  It is reasonable to require the consent of the property owner before conducting a charitable food service event on the City's property, and any incidental restriction on speech or expressive content is no more restrictive than necessary and leaves open multiple alternate channels of communication. *McCullen*, 573 U.S. at 477. Because Houston's competent summary judgment evidence has raised a genuine issue of material fact that its reasonable time, place, and manner restrictions are (1) based on the government's significant interest in protecting the health and safety of the public, (2) narrowly tailored to serve a significant government interest and (3) leave open ample alternative channels of communication, Plaintiffs are not entitled to summary judgment.

### 5.    Houston's ordinance is constitutional on its face and as applied and Houston's official policies do not cause a constitutional injury to Plaintiffs

45.    The enactment and function of the City ordinance is a matter of government property rights and does not run counter to guaranteed First Amendment freedoms. In *United States v. O'Brien*, the United States Supreme Court held that a governmental regulation is justified if it "is within the constitutional power of the Government; if it furthers an important or substantial governmental interest" that is unrelated to the suppression of free speech; and "if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. 367, 377 (1968).

46.    Regarding any "incidental restrictions on alleged First Amendment freedoms," any potential harm resulting from the prohibition of food service events on public property without the prior consent of the property owner is cured by the provision of an alternate, pre-approved location for food service events at 61 Riesner Street, a comparable public forum. *See* HOUSTON HEALTH DEPARTMENT, *Charitable Feeding* (last visited Sept. 20, 2023).[2] 61 Riesner Street has access to adequate parking, trash containment, restrooms, and hand washing stations in accordance with the HHD criteria detailed in subsection (A) and functions as an open alternative channel for the expression of the defendant's message.[3]

47.    By ensuring the public health concerns regarding food preparation, handling and storage as well as safety concerns are addressed, the ordinance protects all citizens of Houston and is not inconsistent with civil liberties protected by the First Amendment. Plaintiffs' challenges do not outweigh the City's responsibility to protect the health and safety of all its residents. Plaintiff's challenge seeking to invalidate parts of the ordinance should be dismissed.

---

[2] https://www.houstonconsumer.org/services/permits/food-permits/charitable-feeding.

[3] *Id.*; Walking Directions from 1000 Smith Street, Houston, TX 77002 to 61 Riesner Street, Houston, TX 77002, Google Maps, http://maps.google.com (using the "Directions" feature, search starting point field for "1000 Smith St., Houston, TX 77002" and search destination point field for "61 Riesner St., Houston, TX 77002").

6.    **Plaintiff's claims for permanent injunctive relief are not appropriate for summary judgment**

48.    Plaintiffs impermissibly seek to have the federal district court serve as a *de facto* federal housing best practices board that would displace the discretionary policymaking authority entrusted to local elected municipal government representatives and its community partners. As the Supreme Court noted in *City of Grants Pass, Oregon v. Johnson,* "[h]omelessness is complex. Its causes are many. So may be the public policy responses required to address it." 603 U.S. 520, 560 (2024). A request for permanent injunctive relief, absent a viable substantive cause of action supporting entry of a judgment, is fatally defective and does not state a claim. *See, e.g.*, *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex. 2002). Houston has produced competent summary judgment evidence defeating Plaintiff's claims and causes of action on summary judgment.  Because Plaintiffs have not demonstrated a likelihood of success on the merits, injunctive relief is not appropriate, and the court must preserve Houston's right to a jury trial.  FED. R. CIV. P. 65(a)(2). As set forth more fully above, no controversy exists that can support the grant of injunctive relief and Plaintiffs' motion for permanent injunctive relief should be denied.

## VI.    CONCLUSION

For the reasons stated above, Defendant City of Houston respectfully requests that Plaintiffs' motion for summary judgment pursuant to Rules 56 of the Federal

Rules of Civil Procedure be denied and that this Court grant such other relief to which Defendant may be justly entitled.

Respectfully submitted,

**ARTURO G. MICHEL**
City Attorney
**SUZANNE R. CHAUVIN**
Chief, General Litigation Section


By:        */s/ M. Lucille Anderson*
           M. Lucille Anderson
           Sr. Assistant City Attorney III
           Federal ID No. 19377
           Texas Bar No. 00793260
           City of Houston Legal Department
           P.O. Box 368
           Houston, Texas 77001-0368
           832.393.6485
           832.393.6259 Fax

**ATTORNEYS FOR DEFENDANT**
**CITY OF HOUSTON, TEXAS**

**OF COUNSEL:**

Kenneth Soh
Sr. Assistant City Attorney III
Federal ID No. 11882
Texas State Bar No.: 00794670
Kenneth.soh@houstontx.gov
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-0368
832.393.6485
832.393.6259 Fax

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 18, 2025, I served the following attorneys with a true and correct copy of the foregoing document in accordance with Rule 5(b)(3) of the Federal Rules of Civil Procedure via the court's electronic filing / service system (and/or mail to the plaintiff).

Randall Hiroshige
Travis Fife
Christina Beeler
Texas Civil Rights Project
1405 Montopolis
Austin, Texas 78741
(512) 474-5073

Remington Alessi
Attorney at Law
PO Box 230381
Houston, Texas 77223
(281) 438-3733

Randall L. Kallinen
Alexander C. Johnson
Kallinen Law PLLC
511 Broadway Street
Houston, Texas 77012
(713) 320-3785

*/s/ M. Lucille Anderson*
M. Lucille Anderson
Senior Assistant City Attorney