IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **FOOD NOT BOMBS HOUSTON,** | § | |
| **BRANDON WALSH** | § | |
|     **Plaintiffs** | § | |
| | § | |
| **v.** | § | **C.A. No. 4:24-CV-00338** |
| | § | |
| **THE CITY OF HOUSTON, TEXAS,** | § | |
|     **Defendant** | § | |

**Consolidated with**

| | | |
|---|---|---|
| **PHILLIP PICONE,** | § | |
|     **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | **C.A. NO. 4:23-CV-1206** |
| **OFFICER A. ANCIRA,** *in his* | § | |
| *Individual capacity***, and THE CITY OF** | § | |
| **HOUSTON, TEXAS,** | § | |
|     **Defendants** | § | **Judge Andrew Hanen** |

**DEFENDANT CITY OF HOUSTON, TEXAS'S RESPONSE TO
PLAINTIFF PHILLIP PICONE'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant the City of Houston, Texas files this its Response to Plaintiff

Phillip Picone's Motion for Summary Judgment on its claims and causes of action

pursuant to Federal Rule of Civil Procedure 56.

## <u>TABLE OF CONTENTS</u>

I.    NATURE AND STAGE OF THE PROCEEDINGS....................................1

II.    STATEMENT OF THE ISSUES AND STANDARD OF REVIEW........2

III.    SUMMARY OF THE ARGUMENT .............................................2

IV.    SUMMARY JUDGMENT EVIDENCE .........................................3

V.    ARGUMENT AND AUTHORITIES ...........................................7

    A.    SUMMARY JUDGMENT STANDARD .........................................7

    B.    FACTUAL BACKGROUND .........................................................8

        1.    Houston's policy to end street homelessness .........................8

        2.    The Citations ...................................................................11

    C.    THE ORDINANCE IS SUFFICIENTLY SUPPORTED .............12

        1.    Houston's charitable food services provider program is subject to intermediate scrutiny ............................................12

        2.    Houston's ordinance survives intermediate scrutiny ..............19

        3.    Even if Plaintiff's feeding people on public property without permission is protected speech or expressive conduct, it is subject to Houston's reasonable time, place, and manner restrictions ...................................................................25

        4.    Houston's ordinance is constitutional on its face and as applied and Houston's official policies do not cause a constitutional injury to Plaintiffs ...................................................................26

        5.    Plaintiff's claims against Houston under 42 U.S.C. §1983 and the First Amendment to the U.S. Constitution are time-barred ...................................................................29

**6. Plaintiffs' claims for permanent injunctive relief are not appropriate for summary judgment** .........................................31

**VI.    CONCLUSION AND PRAYER FOR RELIEF** .......................................32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 250 (1986) ...............................................................8

*Burrell v. Newsome*,
    883 F.2d 416, 418 (5th Cir. 1989) ...............................................30

*Butnaru v. Ford Motor Co.*,
    84 S.W.3d 198, 210 (Tex. 2002) ..................................................32

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 322–25 (1986) ..........................................................7

*City of Grants Pass, Oregon v. Johnson*
    603 U.S. 520, 560 (2024) .............................................................31

*Clark v. Cmty. for Creative Non-Violence*,
    468 U.S. 288, 293 (1984) .............................................................18

*Fairchild v. Liberty Indep. Sch. Dist.*,
    597 F.3d 747, 758 (5th Cir. 2010) ..........................................23, 24

*Forsyth County v. Nationalist Movement*,
    505 U.S. 123, 131 (1992) ............................................................. 18

*Holder v. Humanitarian Law Project*,
    561 U.S. 1, 18-19 (2010) .............................................................17

*Jackson v. Johnson*,
    950 F.2d 263, 265 (5th Cir. 1992) ...............................................30

*King-White v. Humble Indep. Sch. Dist.*,
    803 F.3d 754, 760 (5th Cir. 2015) ...............................................30

*Longoria v. City of Bay City, Texas*,
    779 F.2d 1136, 1138 (5th Cir. 1986) ...........................................30

iv

*McCullen v. Coakley*,
573 U.S. 464 (2014) ………………………………………….............*ibid.*

*Monell v. Dep't of Soc. Servs. v. New York*,
436 U.S. 658, 694 (1978)…………………………………..…………… *ibid.*

*Piotrowski v. City of Houston*,
51 F.3d 512, 514 n.5 (5th Cir. 1995) ...............................................31

*Piotrowski v. City of Houston*,
237 F.3d 567, 576) (5th Cir. 2001) ............................................. *ibid.*

*Reed v. Town of Gilbert*,
576 U.S. 155, 163 (2015) ..........................................................12, 13

*Shuttlesworth v. City of Birmingham, Alabama*,
394 U.S. 147, 151 (1969) ..........................................................18, 23

*Spotts v. United States*,
613 F.3d 559, 574 (5th Cir. 2010) ……………………………..........30

*TikTok, Inc. v. Garland*,
604 U.S. ---, 145 S.Ct. 57 (2025) …………………….………………..*ibid.*

*Triple Tee Golf, Inc. v. Nike, Inc.*,
485 F.3d 253, 261 (5th Cir. 2007) …………………….…………………7

*Turner Broadcasting System, Inc. v. FCC*,
520 U.S. 180, 189 (1997) ……..………………………………………..*ibid.*

*United States v. Albertini*,
472 U.S. 675, 689 (1985) ……..……………….………………………..*ibid.*

*United States v. O'Brien*,
391 U.S. 367, 377 (1968). ……..…………………..…….…..…… *ibid.*

*Ward v. Rock Against Racism*,
491 U.S. 781, 791 (1989) …………………………..………………*ibid.*

## Statutes

U.S. CONST. amend. I ......................................................................... *ibid.*

42 U.S.C. §1983 ................................................................................ *ibid.*

21 C.F.R. §§100.1-190.6.................................................................... *ibid.*

25 Tex. Admin. Code §228.1, *et seq.*................................................ *ibid.*

Tex. Civ. Prac. & Rem. Code §101.0215 ............................................13

Tex. Civ. Prac. & Rem. Code §16.003.................................................31

Tex. Civ. Prac. & Rem. Code §16.051.................................................31

Tex. Health & Safety Code §437.001, *et seq.*……………………………..*ibid.*

Tex. Loc. Gov't Code §51.003(a)……………………………………………………31

Tex. Loc. Gov't Code § 51.072 …………..……………………………………17

**Rules**

Federal Rule of Civil Procedure 56 .................................................... *ibid.*

Federal Rule of Civil Procedure 65(a)(2) ............................................32

Pursuant to Federal Rule of Civil Procedure 56(c), Houston responds to Plaintiff Phillip Picone's motion for summary judgment.

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Picone filed his Original Complaint on March 31, 2023 (Dkt. 1) and his First Amended Original Complaint on May 20, 2023 (Dkt. 8). Defendants Ancira and Houston moved to dismiss Plaintiff's claims on June 21, 2023 (Dkt. 14). Defendant Ancira's motion to dismiss was granted on November 1, 2023 (Dkt. 25). The Court dismissed the Fourth Amendment claims against Houston but ordered Houston to file a motion for summary judgment on Plaintiff's First Amendment constitutional claims by December 4, 2023 (Dkt. 25). Plaintiff Picone's case was consolidated with C.A. No. 4:24-CV-00338 on June 6, 2024, and Houston's motion for summary judgment in C.A. 4:23-cv-1206 was denied as moot. (Dkt. 29; 32). Discovery is complete in the consolidated cases and Houston filed a consolidated motion for summary judgment on March 28, 2025 (Dkt. 46). Plaintiff Picone filed a motion for summary judgment on March 30, 2025. (Dkt. 47). On April 1, 2025, Plaintiff Picone joined in Plaintiffs Food Not Bombs Houston (FNBH) and Brandon Walsh ("Walsh")'s motion for summary judgment (Dkt. 44) in its entirety and filed a separate motion for summary judgment as to liability and in support of a permanent injunction (Dkt. 47), to which Houston now responds.

## II.    STATEMENT OF THE ISSUES AND STANDARD FOR REVIEW

1.    Does intermediate scrutiny apply to Houston's content-neutral regulation of non-expressive activity that disproportionately burdens those engaged in expressive activity? *TikTok, Inc. v. Garland*, 604 U.S. ---, 145 S.Ct. 57, ___ (2025);

2.    Does the ordinance further an important government interest unrelated to suppression of free expression on an as-applied challenge? *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); U.S. CONST. amend. I.

3.    Do the standards in the U.S. Food and Drug Administration model Food Code, as adopted by the State of Texas, sufficiently support Sections 20-252 and 20-257 of the ordinance?  25 TEX. ADMIN. CODE §228.1, *et seq*.; TEX. HEALTH & SAFETY CODE §437.001, *et seq*.; 21 C.F.R. §§100.1-190.6.

4.    Can Plaintiff prove that Houston's charitable feeding ordinance promulgated by an official policy maker caused a deprivation of Plaintiff's constitutional rights under the First Amendment? *Monell v. Dep't of Soc. Servs. v. New York*, 436 U.S. 658, 694 (1978); and

5.    Are Plaintiff's claims against Houston time-barred? *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001).

## III.    SUMMARY OF THE ARGUMENT

Plaintiff Picone (hereinafter "Plaintiff") interferes with Houston's governmental obligations to ensure healthy and safe food distribution by refusing to follow Houston's Charitable Food Services Ordinance and the Houston Health Department (HHD) rules and regulations at issue and the alleged constitutional deprivation (free speech). (Dkt. 8 at 2, ¶¶3-5). Plaintiff complains that the ordinance violates his First Amendment rights to speak freely, associate with his fellow citizens, and freely practice his religion. *Id*. Plaintiff complains of civil rights violations and seeks damages, declaratory and injunctive relief against Houston.

(Dkt. 8 at 16-17, ¶¶66-70). Plaintiff complains that Houston engaged in a pattern and practice of discrimination in violation of the principles outlined in *Monell*. (Dkt. 8 at 14-15, ¶¶54-58). Plaintiff cannot establish a direct causal link between Houston's municipal policy as set forth in the ordinance and HHD rules and regulations and the alleged constitutional deprivations (free speech and freedom of religion). Plaintiff cannot establish a direct causal link between Houston's municipal policy as set forth in the content neutral ordinance and HHD regulations and his First Amendment claims. U.S. CONST. amend. I.  Plaintiff's challenge to Houston's ordinance under 42 U.S.C. §1983 and the First Amendment is barred by the applicable statutes of limitations. Plaintiff's First Amendment claims against Houston should be dismissed and the constitutionality of Houston's charitable food service ordinance should be upheld pursuant to Federal Rule of Civil Procedure 56.

### IV.   SUMMARY JUDGMENT EVIDENCE

| | |
|---|---|
| **Exhibit A** | City of Houston Ordinance No. 2012-269; |
| **Exhibit B** | City of Houston Ordinance No. 2015-820; |
| **Exhibit C** | Affidavit of Captain Jennifer Lynn Kennedy; |
| **Exhibit C(1)** | Charitable Food Services Ordinance [COH 000009-11]; |
| **Exhibit C(2)** | Charitable Feeding Regulations [COH 000012-16]; |
| **Exhibit C(3)** | City of Houston HHD Charitable Food Services Guidelines [COH 008219-20]; |
| **Exhibit C(4)** | Email from Christopher Sparks to David Opheim dated February 9, 2023 [COH 110287-92]; |
| **Exhibit C(5)** | Photo of Notice installed at Library [COH 000001-2] (Exhibit 18); |

**Exhibit C(6)**    Memo from Dr. Rhea B. Lawson to Walter Hambrick, Mayor's Office dated August 10, 2022 [COH 084996-97];

**Exhibit C(7)**    City of Houston's Objections and Answers to Plaintiff's First Set of Interrogatories dated January 26, 2025;

**Exhibit C(8)**    COH First Amendment Expression—Tranquility Park [COH 001018];

**Exhibit C(9)**    Email from Patrick Key to Graciana Garces dated January 2, 2013 [COH 001579-81];

**Exhibit C(10)**   Email from Patrick Key to James Koski dated January 23, 2015 re: Charitable Feeding discussion points [COH 002138-40];

**Exhibit C(11)**   Email dated January 22, 2015 re: measurable reduction in trash after passage of ordinance in 2012 [COH 002125-26];

**Exhibit C(12)**   Email dated February 11, 2015 from Joe Turner re James Bute Park [COH 002198];

**Exhibit C(13)**   Email dated November 16, 2015 re: addresses no longer approved for feeding from HHD website [COH 003065];

**Exhibit C(14)**   Email dated March 25, 2016 from Carolyn Gray to citizen re: trash complaints [COH 003959-60];

**Exhibit C(15)**   Email dated March 31, 2016 from Rubi Longoria to citizen re Peggy's Point Plaza Park [COH 003979-81];

**Exhibit C(16)**   Email dated July 8, 2016 from Joe Turner to Rubi Longoria re drug use, Purple Kush [COH 11863-64; COH 048066-67];

**Exhibit C(17)**   Email dated September 13, 2016 from David McCoy re: drug use, Purple Kush [COH 025692-93];

**Exhibit C(18)**   HHD complaint about conditions outside Downtown Central Library, urine and feces as of April 3, 2020 [FNB010387-89];

**Exhibit C(19)**   Email from Saima Kadir to Dr. Lawson dated January 9, 2023 re: trash outside Downtown Central Library [COH 091789-92];

4

| **Exhibit C(20)** | Photos of trash and bricks to hold place in line; |
| **Exhibit C(21)** | Email from Dr. Rhea Lawson to Mayor Sylvester Turner dated November 5, 2021 [COH-089759]; |
| **Exhibit C(22)** | Email re: knife incident at Downtown Central Library [COH 110561-72]; |
| **Exhibit C(23)** | Photo of knife [COH 112774-76]; |
| **Exhibit C(24)** | Incident report dated June 28, 2022 re: man throwing bricks at vehicles [COH 112963-65]; |
| **Exhibit C(25)** | Incident report dated June 28, 2022 re: man throwing rock at vehicle [COH 112960-62]; |
| **Exhibit C(26)** | Email from Brian Crimmins dated February 28, 2023 re: notice signs [COH 110561]; |
| **Exhibit C(27)** | Social media posts on YouTube, Facebook, and FNBH website; and |
| **Exhibit C(28)** | Draft offense report dated February 7, 2025 re: harassing COH Public Library employee in person and on the telephone, posting of employee's private information on social media accounts Reddit and Instagram [COH 122174-80]; and |
| **Exhibit C(29)** | Draft incident report dated February 7, 2025 re: harassing phone calls, verbal altercation over blocking emergency ramp; threats of rape, dragging behind a car, harassing phone calls [COH 122181-82]. |
| **Exhibit D** | Affidavit of Renee Beckham; |
| **Exhibit D(1)** | Article V. Charitable Food Services Ordinance [COH 000009-11]; |
| **Exhibit D(2)** | Charitable Feeding Regulations [COH 000012-16]; |
| **Exhibit D(3)** | HHD City of Houston Charitable Food Services Guidelines [COH 008219-20]; |
| **Exhibit D(4)** | Registered Charitable Food Service Groups list as of October 30, 2019; |
| **Exhibit D(5)** | Email from Christopher Sparks to David Opheim dated February 9, 2023 re: updates to HHD website [COH 110287-92]; |

| | |
|---|---|
| **Exhibit D(6)** | Email from Patrick Key to Graciana Garces dated January 2, 2013 re: update on first 6 months of ordinance [COH 001579-81]; |
| **Exhibit D(7)** | Email from Patrick Key to James Koski dated January 23, 2015 re: Charitable Feeding discussion points [COH 002138-40]; |
| **Exhibit D(8)** | Email dated January 22, 2015 re: measurable reduction in trash after passage of ordinance in 2012 [COH 002125-26]; |
| **Exhibit D(9)** | Email dated February 11, 2015 from Joe Turner re: Harris County formally denied any further feeding at James Bute Park [COH 002198]; |
| **Exhibit D(10)** | Email dated November 16, 2015 re: removal of addresses no longer approved for feeding from HHD website [COH 003065]; |
| **Exhibit D(11)** | Email dated March 25, 2016 from Carolyn Gray to citizen re trash complaints at Peggy's Point Plaza Park [COH 003959-60]; |
| **Exhibit D(12)** | Email dated March 31, 2016 from Rubi Longoria to citizen re Peggy's Point Plaza Park [COH 003979-81]; |
| **Exhibit D(13)** | Email dated September 13, 2016 from David McCoy re: drug use, Purple Kush [COH 025692-93]; |
| **Exhibit D(14)** | Email dated July 8, 2016 from Joe Turner to Rubi Longoria re drug use, Purple Kush and homeless initiatives re how best to provide services to those in need, not just feedings [COH 048066-67]; |
| **Exhibit D(15)** | HHD complaint about conditions outside Downtown Central Library, urine and feces as of April 3, 2020 [FNB010387-89] |
| **Exhibit D(16)** | Memo from Dr. Rhea B. Lawson to Walter Hambrick, Mayor's Office dated August 10, 2022 re: feedings and the problems they cause continue  unabated [COH 084996-97] |

| | |
|---|---|
| **Exhibit D(17)** | Email from Saima Kadir to Dr. Lawson dated January 9, 2023 re: trash, rocks, and food waste outside Downtown Central Library [COH 091789-92]; and |
| **Exhibit D(18)** | Photos of trash and bricks to hold place in line; |
| **Exhibit E** | Deposition excerpts for Phillip Picone (pp. 13-14; 49-59; 67-84; 89-90); |
| **Exhibit E(1)** | Plaintiffs' First Amended Original Complaint in C.A. No. 4:19-cv-01661 (Exh. 49); |
| **Exhibit E(2)** | Plaintiff's First Amended Original Complaint in C.A. 4:23-cv-01206 (Exh. 50); |
| **Exhibit E(3)** | February 10, 2020 Order granting Houston's motion to dismiss in 4:19-cv-01661 (Exh. 51); |
| **Exhibit F** | Deposition excerpts for Capt. Jennifer Lynn Kennedy (pp. 49-53; 78-85;128-30; 174-77); |
| **Exhibit G** | Deposition excerpts for Saima Kadir (pp. 105-120); and |
| **Exhibit H** | Deposition of Renee Beckham (pp. 154-57). |

## V.    ARGUMENT AND AUTHORITIES

### A.    SUMMARYJUDGMENT STANDARD

1.    Summary judgment is appropriate only where there is no genuine dispute as to any issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc*., 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). The burden then shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. Rule 56(c).  *Celotex*, 477 U.S. at 322. Where there is a genuine

issue as to any material fact, the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).

## B.    FACTUAL BACKGROUND

### 1.    Houston's policy to end street homelessness

2.    In 2012, the Houston City Council approved an ordinance establishing a voluntary program to coordinate outdoor food service operations for those in need, including persons experiencing food insecurity. *See* Houston Ordinance No. 2012-269, attached as **Exh. A; C(1)**; Ordinance No. 2015-820, attached as **Exh. C(3)**. The intent of the ordinance was three pronged: (1) to improve the quality, quantity, and distribution of food provided outdoors; (2) to expand the opportunities for the homeless to connect with service providers; and (3) to reduce the disproportionate environmental impact of food service operations on public and private property. *See* Affidavit of Houston Police Dept. Captain Jennifer Kennedy, **Exh. C**. Mayor Whitmire's goal is to end street homelessness in Houston. *Id*.

3.    The charitable food services program consists of four basic steps: (1) register the formal or informal food service organization; (2) get free, food handling training for the food service organization; (3) get property owner consent; and (4) schedule your food service. *See* **Exh. C(2)**. Registration instructions and information are listed on the HHD website. *See* **Exh. C**. Registration is voluntary and **no permit is required**. Participation in the charitable food service program itself is voluntary

and the only mandatory step is the requirement to obtain owner consent before using either public or private property for food service of more than five people. *Id.*

4.      In early 2016, the synthetic marijuana drug called Kush permeated the City including the population of persons experiencing homelessness and there was a noticeable increase in use of Kush in the homeless population. *Id.*; **Exhs. C(16)-(17)**. Many of the Kush users would attend the charitable feeding events high on Kush and create a disturbance at the event. *Id.* Houston no longer hosted charitable feedings at city parks as of the summer of 2016 and there was no enforcement of the ordinance from 2016-2019. Deposition of Capt. Kennedy at 79, ln. 10-14, **Exh. F**.

5.      In 2022, the City experienced an increase in several different types of violent incidents at the Downtown Central Library. **Exhs. C, C(22)-(25)**. As a result of the increased violence in October 2022, Houston Police Officer presence increased at the Downtown Central Library. **Exh. C**. Metal detectors were installed. *Id.* The enhanced security reduced the instances of violence at the library. *Id.* The cost of providing extra security is over $2,000 per week for 4 feeding events per week at the library. *Id.*

6.      In February 2023, Houston installed signs on the premises of the Downtown Central Library indicating charitable feeding was no longer allowed at that location for any individuals or groups and that charitable feeding was welcomed at a new City-owned location—61 Riesner. *Id.*; **Exh. C(5)**. FNBH volunteers and

others were warned verbally and in writing that feedings would no longer take place at the Downtown Central Library and were instructed to move operations to the new location at 61 Riesner Street. **Exh. C**. Houston Police Officers offered assistance including shuttle transportation for those willing to move charitable feeding operations to 61 Riesner Street. *Id*. As of the date of this motion, the City of Houston Properties Approved for Charitable Food Services Events has had one approved location, 61 Riesner Street, Houston, Texas 77002. *Id*.

7.     Ordinance Section 20-257 authorizes and requires the director of public health to develop rules, regulations, and criteria for the use of city property for food services events and City departments maintain a list of such properties with areas approved for food services events. *See* **Exh. C(1)**. The Houston Public Library is not an approved property with an area approved for food services events as of February 25, 2023. *See* Notice installed at Houston Public Library, Downtown Central Branch attached as **Exh. C(5)**.

8.     The HHD Charitable Feeding Program regulations for approved charitable food service locations on City of Houston property require: (1) adequate parking for the personnel conducting the food service event, with a minimum of ten (10) dedicated parking spaces during charitable food service events; (2) adequate trash containment to contain all trash, refuse, and litter on the site of the food service event; and (3) two portable restrooms with handwashing stations available during

food service events and available 24 hours per day, seven (7) days per week. *See*

**Exh. C(3)**. The HHD Charitable Feeding Program regulations for approved

charitable food service providers on City of Houston property require: (1) adequate

personnel to conduct the food service event and restore the site at the conclusion of

the food service event; (2) adequate trash receptacles, trash containment and removal

measures to contain all trash, refuse, and litter on the site of the food service event

and to properly dispose of all trash, refuse, litter and remove unused foods from the

site at the conclusion of the food service event, and (3) adherence to guidelines for

food preparation, transport, serving, handling, storage and packaging in accordance

with the FDA model food code/ Houston Food Ordinance. Houston Code of

Ordinances §20-251, *et seq.; see also* U.S. Food and Drug Administration model

Food Code, as adopted by the State of Texas, 25 TEX. ADMIN. CODE §228.1, *et seq*.;

TEX. HEALTH & SAFETY CODE §437.001, *et seq*.

## 2.    The Citations

9.    Following the notice and grace period for compliance with the updated

HHD rules and regulations, and following receipt of a written warning, citations

were issued to individuals sharing food with more than five people on City property

at 500 McKinney Street, the location of the Houston Central Library. (Dkt. 8 at 8-9,

¶¶22-24; 10, ¶¶28-31). Plaintiff received a citation for violation of Houston's

Charitable Feeding Ordinance on March 3, 2023. *See* Dkt. 26 and Citation, Exh. F,

(Dkt. 26-6) in Case 4:23-cv-01206; Deposition of Phillip Picone at 70, ln. 2-77, ln. 17, attached hereto as **Exh. E**; Dkt. 8 at 10, ¶¶28-30. Plaintiff admits that he received a written warning in advance of receiving a ticket on March 3, 2023 for violating the ordinance and that he had the opportunity to comply with the ordinance before receiving the ticket. **Exh. E** at 75, ln. 14-77, ln. 17. Prior to March 3, 2023, Plaintiff reviewed the posted notice that was pinned to the steel gates and received a written warning prior to receiving a ticket on March 3, 2023. *Id*. at 77, ln. 5-81, ln. 25.

## C.    THE ORDINANCE IS SUFFICIENTLY SUPPORTED

### 1.    Houston's charitable food services provider program is subject to intermediate scrutiny

10.    The Supreme Court acknowledges as recently as January 2025 that it had not articulated a clear framework for determining whether a regulation of non-expressive activity (such as serving food) that disproportionately burdens those engaged in expressive activity (such as food-related protests) triggers heightened review. *TikTok*, 145 S. Ct. at 66.  Laws that target speech based on its communicative content are presumptively unconstitutional and may be justified "only if the government proves that they are narrowly tailored to serve compelling state interests." *Id*., citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).  Content-neutral laws "are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the

public dialogue." *TikTok*, 145 S. Ct. at 66, citing *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 642 (1994).

11.    The charitable feeding ordinance promotes and maintains the health and safety of Houstonians, including the vulnerable homeless population, by ensuring safe and sanitary food sharing and waste disposal. *See* TEX. HEALTH & SAFETY CODE §365.012; §437.001, *et seq*; **Exhs. A, B, C(1)-(3)**.[1] The ordinance on its face is not content-based because it does not discuss ideas, messages, or other speech-related topics. *Reed*, 576 U.S. at 163. The ordinance does not facially regulate "particular speech because of the topic discussed or the idea or message expressed." *Id*. The ordinance likewise does not deserve to be treated as a content-based regulation of speech because the ordinance can be justified without reference to the content of the regulated speech and because its adoption was completely independent from any government disagreement with the message the "speech" conveys. *Id*. at 164, citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). No one is in charge at FNBH but people "just showed up, you know, for a cause." *Id*. at 81, ln. 10-25. In the thirteen years Plaintiff has been serving food with FNBH, no Houston Police officer or Houston employee has ever told him or any other

---

[1] Health and sanitation services are government functions. TEX. CIV. PRAC. & REM. CODE §101.0215(2).

member of FNBH that they could not post a sign, say certain words, or wear a certain t-shirt.  **Exh. E** at 89, ln. 8-90, ln. 1.

12.    Food poisoning can cause illness or even death. *See* Affidavit of Renee Beckham, attached as **Exh. D**. As applied to Plaintiff, the challenged provisions of the ordinance are facially content-neutral and are justified by a content-neutral rationale.  The ordinance is "decidedly content agnostic." *TikTok*, 145 S.Ct. at 68. It "neither references the content of the speech" nor "reflects disagreement with the message such speech conveys." *Id*.; *see also Ward*, 491 U.S. at 792-93.

13.    The ordinance restricts only certain actions that are directly related to the health and well-being of Houston's citizens and that support State law. *Id*. By requiring adherence to guidelines for food preparation, transport, serving, handling, storage and packaging in accordance with the national standards set out in the FDA model food code/ Houston Food Ordinance, the ordinance provides City representatives with clear standards to guide their decisions and contains no facial restrictions on the free exercise of speech or expressive activity. Houston Code of Ordinances §20-251, *et seq*., attached as **Exh. C(1)**; *see also* U.S. Food and Drug Administration model Food Code, as adopted by the State of Texas, 25 TEX. ADMIN. CODE §228.1, *et seq*.; TEX. HEALTH & SAFETY CODE §437.001, *et seq*. The ordinance allows the HHD to enact regulations supporting the ordinance.  *See* **Exhs. D(1)-(3)**; *see also* Deposition of Capt. Kennedy at 128, ln. 12-130, ln. 21, attached as **Exh. F**.

14.     Despite Plaintiff's unsupported argument on pages 5-6 and 12-13 of his motion (Dkt. 47) that Plaintiff's challenges to the ordinance are reviewed under a strict scrutiny standard, the ordinance is not "a subtle means of exercising a content preference" as might justify application of a strict scrutiny standard of review. *Turner*, 512 U.S. at 645.  Nor are organized, regular feedings every weekend over a 12+ year time span a "spontaneous act of charity" protected by the First Amendment. (Dkt. 47 at 12); *see* **Exh. E** at 14, ln. 6-23. Houston Chief Sanitarian Renee Beckham has personally trained numerous food service organizations, including religious groups, in proper food handling rules, guidelines and techniques. *See* **Exh. D**. As of October 30, 2019, 199 Charitable Food Services Groups have become registered through Houston's charitable food service provider program. *Id*. The application of the ordinance underscores no content preference whatsoever in the ordinance's training program and the provisions of the ordinance serve the government's interest "in a direct and effective way." *Ward*, 491 U.S. at 800.

15.     Likewise, the regulations Houston enacted pursuant to the ordinance do not operate to exercise any content preference or hindrance to free exercise of religion that may trigger a strict scrutiny review as Plaintiff argues on pages 12-14 of his motion. (Dkt. 47). Under the current regulations of the HHD, ***any*** charitable food service providers seeking to provide food on City property must have adequate trash receptacles, trash containment and removal measures to contain all trash,

refuse, and litter on the site of the food service event and to properly dispose of all trash, refuse, litter and remove unused foods from the site at the conclusion of the food service event. *Id*. (emphasis added). Food has special characteristics that justify regulation of proper handling and waste disposal, and the ordinance and supporting regulations are not presumed invalid under the First Amendment. *See id*. The ordinance and supporting regulations further important governmental interests unrelated to the suppression of free expression and do not burden substantially more speech than necessary to further the governmental interests supported by the ordinance. *See* **Exh. D**.

16.    Food for human consumption has unique characteristics separate and apart from any quality of that food that might be considered First Amendment protected activity under certain circumstances. U.S. CONST. amend. I. Food is only safe for consumption if it is handled properly, and if left unregulated, consumption of food that does not meet health and safety standards and abandonment of unused food left to deteriorate or decay on public property can cause serious public health and safety consequences if left unchecked. For these reasons, the provision of food for human consumption is regulated by the state and by the federal government. *See* 25 TEX. ADMIN. CODE §228.1, *et seq*.; 21 C.F.R. §§100.1-190.6. Plaintiff's argument on pages 6-9 of his motion (Dkt. 47) that the ordinance is unconstitutionally vague by parsing individual words does not resonate when Plaintiff clearly knew what

conduct was proscribed, engaged in such conduct willfully over a period of 12+ years, and continues to maintain his challenge to the ordinance over more than a decade. *See* **Exh. E** at 49, ln. 10—54, ln. 11; 70, ln. 9-75, ln. 3. "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010)(citation omitted).

17.    The passage the ordinance in 2012 and its subsequent enforcement are within the City's constitutional power as a "home-rule" city and are related to the City's important governmental interest in ensuring the health and safety of its citizens by addressing public issues of poor sanitation, crime, loitering, crowds, heavy trash accumulation, noise, traffic control, and food safety. *See generally* TEX. LOC. GOV'T CODE § 51.072; CITY OF HOUSTON CHARTER ART. II, SEC. 2. Such important governmental interests are unrelated to the suppression of expressive activity as it "serves purposes unrelated to the content of expression." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *see also McCullen v. Coakley*, 573 U.S. 464, 480-481 (2014); TEX. HEALTH & SAFETY CODE §437.001, *et seq*.

18.    The ordinance draws no distinctions between food service activities with a message and food service activities without a message.  The test for content neutral regulation of First Amendment expressive conduct asks whether the regulation is narrowly drawn to further a substantial governmental interest unrelated

to the suppression of free speech. *United States v. O'Brien*, 391 U.S. 367, 377 (1968); *Clark v. the Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984). A time, place, and manner restriction on First Amendment speech or expressive conduct must be narrowly tailored to serve a significant governmental interest and leave open ample alternative channels for communication of the information. *Id*. The requirement of narrow tailoring is satisfied as long as regulation promotes substantial governmental interest that would be achieved less effectively absent the regulation, and the means chosen are note substantially broader than necessary to achieve the governmental interest. *Ward*, 491 U.S. at 799-800. Government may, consistent with the First Amendment, enforce reasonable time, place, and manner regulations on expression in a park. U.S. CONST. amend. I; *Shuttlesworth v. City of Birmingham, Alabama*, 394 U.S. 147, 151 (1969); *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992); *see also* **Exh. C(8)**.

19.    "Sound policymaking often requires legislators to forecast future events and to anticipate the likely impact of these events based on deductions and inferences for which complete empirical support may be unavailable." *Turner*, 512 U.S. at 665; quoted in *TikTok*, 145 S.Ct. at 69-70; accord *Clark*, 468 U.S. at 293; *see also* TEX. HEALTH & SAFETY CODE §437.001, *et seq.* It is generally known that that food poisoning can cause illness or even death. *See* **Exh. D**. Houston regulates food service to ensure the health and safety of the public. Sec. 20-250, et seq.; 25 TEX.

18

ADMIN. CODE §228.1, *et seq*.; TEX. HEALTH & SAFETY CODE §437.001, *et seq*.; 21

C.F.R. §§100.1-190.6. The experiences of library staff and other Houston citizens

confirm that unsanitary events connected with FNBH's food service happened on

multiple occasions outside the Downtown Houston Central Library. **Exh. G** at 115,

ln. 14-116, ln. 24; *see also* **Exhs. D(15)-(18)**. Houston has raised a genuine issue of

material fact as to whether the food Plaintiff and FNBH serves meets the health and

safety standards proscribed by Texas law. *See* 25 TEX. ADMIN. CODE §228.1, *et seq*.;

TEX. HEALTH AND SAFETY CODE §437.001, *et seq*. By supporting Houston's

legitimate purpose that includes a low-level citation enforcement procedure,

Houston's governmental action to promote and ensure the health and safety of all its

citizens is measured, appropriate and serves a legitimate purpose of improving food

quality and ending street homelessness. **Exhs. C; C(1)-(2)**.

**2.    Houston's ordinance survives intermediate scrutiny**

20.    Plaintiff's repeated insistence that at the time of his citation on March

3, 2023 he had current permission to conduct expressive food sharing at 500

McKinney Street is contradicted by Houston's competent summary judgment

evidence.  In February 2023, Houston posted notices on the fence outside the library

complex at 500 McKinney notifying the public including Plaintiff as follows:

> The Houston Health Department rules and regulations governing
> charitable food service events on public property have been updated,
> and can be viewed at:
> www.houstonhealth.org/services/permits/food-permits/charitable-feeding

> To comply with the updated rules and regulations, Houston has an approved charitable food service location that offers port-a-cans, handwashing station(s), adequate trash receptacles, electrical outlets, and volunteer parking.  If you want to conduct charitable food service on City property, you must do so at the nearby, downtown location of 61 Riesner Street, Houston,  Texas 77002.
>
> If you do not comply with these rules and regulations, beyond 7:00 p.m. on Friday, February 24th, you run the risk of violating the law.
>
> The city supports, and is grateful for, the charitable food services provided throughout the city.  To assist efforts, we are now providing a dedicated location with the appropriate needed space and infrastructure/amenities to serve Houstonians with the dignity they deserve.

*See* Notice and photo of notice as installed, attached as **Exh. C(5)**. Plaintiff does not contest the existence of the notice, and acknowledges he received a written warning to comply with the updated rules and regulations. *See* Dkt. 1 at 8; Dkt. 8 at 10; **Exh. E** at 75, ln. 22-77, ln. 17.  Plaintiff does not reconcile the plain language of the notice and the policy behind the notice with his behavior ignoring the notice, the written warning,  and the eventual ticket he received for violating the ordinance. *Id*. Despite ample warning that new rules and regulations applied, even to him, Plaintiff chose not to follow the warnings and chose to accept the consequences for violating the ordinance, a citation. *See* Dkt. 47 at 16.

21.    Despite his argument and representation on page 15 of his motion, Plaintiff was not arrested on March 3, 2023—he simply received a ticket after choosing not to comply with the ordinance, after receiving a warning. *See* Dkt. 47 at 15; **Exh. E** at 70, ln. 24-74, ln. 25; 83, ln. 2-84, ln. 15. In his motion, Plaintiff

mischaracterizes his ticket as an "arrest" and quotes cases discussing arrests in the absence of probable cause. *See* Dkt. 47 at 15-16. Not only was Plaintiff not arrested on March 3, 2023 for violating ordinance Section 20-252, Plaintiff identifies the probable cause supporting his ticket in his own words that he "was sharing food for about an hour." *See* Dkt. 8 at 10; **Exh. E** at 70, ln. 2—75, ln. 3; 76, ln. 13–81, ln. 25. Plaintiff's own recitation of the facts and his deposition testimony undercuts his argument and cannot serve as a basis to grant Plaintiff's motion.

22.    Even assuming Plaintiff's feeding people on public property without permission is protected speech or expressive conduct, Houston's content-neutral regulation satisfies intermediate scrutiny because the ordinance promotes a substantial governmental interest that would be achieved less effectively absent the regulation and does not burden substantially more speech than is necessary to further that interest. The Charitable Feeding Program meets and survives the intermediate scrutiny standard because it "promotes a substantial government interest that would be achieved less effectively absent the regulation" and does not "burden substantially more speech than is necessary" to further that interest. *TikTok*, 145 S. Ct. at 70, citing *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). The Program's health and safety-based requirements of (1) adequate parking for the personnel conducting the food service event, (2) adequate trash containment on the site of the food service event; and (3) two (2) portable

restrooms with handwashing stations available during food service events ensures the health and safety of all participants. **Exh. C(3)**. Plaintiff cites case law concerning challenges to laws that require permits and licenses on page 10-11 of his motion but that authority does not apply to the ordinance in this case. *See* motion at 10-11 (Dkt. 47). Providers need not obtain a permit, a license, pay any fee, or even register with the City. **Exh. C(3)** ("A permit to feed the homeless is not required.").

23.     All ordinance, rule and regulation requirements promote sanitation, safety and support Houston's enforcement of its health and safety ordinances and State law. TEX. HEALTH & SAFETY CODE §341.011, *et seq*., §365.012 25 TEX. ADMIN. CODE §228.1, *et seq*.; *see also* Houston Code of Ordinances §28-19 §10-483. No City official can arbitrarily deny the use of the accessible public forum located at 61 Riesner for charitable feeding—it is available to all organizations on an as-requested basis. **Exh. C(3)**. FNBH admits that the 61 Riesner location is "next to the municipal courthouse," a traditional public forum.  *See* motion at 8 (Dkt. 44). The requirements of the ordinance, rules and regulations are content-neutral, leave open alternative channels of speech, and are narrowly focused on the substantial interest of the government in ensuring healthy and safe delivery of food and removal of all trash, refuse, litter and remove unused foods from the site at the conclusion of the food service event. *See* **Exh. C(3).** Designated public forums, such as 61 Riesner Street, are places that the government "intentionally create[s]… for the same

widespread use as a traditional public forums." *Fairchild v. Liberty Indep. Sch. Dist*., 597 F.3d 747, 758 (5th Cir. 2010). Nothing in the ordinance provides any opportunity for any undetectable censorship. *Shuttlesworth*, 394 U.S. at 151. Any burden on speech, if any, is not done in a manner inconsistent with Houston's advancement of its governmental goals of keeping the public safe and promoting the health and well-being of all members of the public. *McCullen*, 573 U.S. at 486.

24.    The validity of the challenged government regulation does not turn on whether the Court agrees with Houston's conclusion that its chosen regulatory path is best or "most appropriate" but rather whether Houston's policy is reasonable and well-grounded. *TikTok*, 145 S.Ct. at 71, quoting *Albertini*, 472 U.S. at 689. Plaintiffs FNBH, Walsh and Picone have ample alternative channels for communication other than in-person expressive activity at 500 McKinney Street at the Downtown Central Library. *McCullen*, 573 U.S. at 477. All Plaintiffs have regularly communicated their speech through electronic media including YouTube, Facebook, Reddit, Instagram, and on the FNBH website. *See* **Exhs. C, C(27)-(28)**; *see also* video attached as **Exh. 34** to Plaintiffs FNBH and Walsh's motion submitted to the Court via USB drive (Dkt. 44.36). No Houston Police officer or employee has ever told Plaintiff or another member of FNBH in Plaintiff's earshot that they could not post a sign, say something in particular, or could not wear a particular t-shirt. *See* **Exh. E** at 89, ln. 8-90, ln. 1. FNBH Plaintiffs including Plaintiff Phillip Picone are sophisticated users

of social media who are capable of reaching a wide audience from any public forum, broadcasting their message regularly and widely on the Internet. The ordinance and its regulations provide for adequate alternative channels of communication adjacent to the Municipal Courthouse, a designated public forum. *Fairchild*, 597 F.3d at 758. Plaintiff Picone's argument on page 11 of his motion that the location isn't "'ample' enough for First Amendment scrutiny" or that one location is insufficient is not supported by any evidence that demand for appropriate locations on public property exceeds the supply Houston has provided. (Dkt. 47 at 11). Plaintiffs have submitted no competent summary judgment evidence that Houston has in any way prevented Plaintiffs from communicating effectively with their intended audience. *See* motion at 10 (Dkt. 47). Therefore, Plaintiff's motion on this issue should be denied.

25.    Houston has a governmental obligations to ensure food safety and any incidental burden on Plaintiff's speech is no greater than is essential. (Dkt. 8 at 13-14, ¶¶48-53). The City's interests are served by the ordinance and the City's interest in regulating charitable feeding groups grounded in State and local health and safety laws is unrelated to the suppression of speech. "[A]n incidental burden on speech is no greater than is essential, and therefore is permissible under *O'Brien*, so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *United States v. Albertini*, 472 U.S.

675, 689 (1985). The Ordinance is no more restrictive than necessary to further Houston's governmental health and safety interests. *McCullen*, 573 U.S. at 490-94. Because the reasonable restrictions to time, place and manner do not in any way prevent the sharing of Plaintiffs' message, and Plaintiffs have ample alternative means of communication, they do not violate the free speech or free exercise clauses of the First Amendment. U.S. CONST. amend. I. Plaintiff's challenge to the ordinance on its face should be dismissed pursuant to Federal Rule of Civil Procedure 56.

> **3.    Even if Plaintiff's feeding people on public property without permission is protected speech or expressive conduct, it is subject to Houston's reasonable time, place, and manner restrictions**

26.    Even if Plaintiff's feeding people on public property without permission is protected speech, it is subject to time, place, and manner restrictions based on the government's significant interest in protecting the health and safety of the public. The City's reasonable time, place and manner restrictions are fair and apply to every member of the public. Plaintiff possesses no First Amendment right to conduct food sharing on City property where food sharing is not otherwise permitted.

27.    The City has designated an appropriate time (24 hours/ 7 days per week), an appropriate place (61 Riesner Street, Houston, Texas 77002), and manner (reasonable health and safety criteria) restrictions on charitable feeding on public property. *See* **Exhs. A, B, C(1)-(3).** The City has put the necessary infrastructure in place to address unusually high accumulation of litter and discarded food at a specific

location (61 Riesner Street). It is reasonable to require the consent of the property owner before conducting a charitable food service event on the City's property, and any incidental restriction on speech or expressive content is no more restrictive than necessary and leaves open multiple alternate channels of communication. *McCullen*, 573 U.S. at 477). Because Houston's competent summary judgment evidence has raised a genuine issue of material fact that its reasonable time, place, and manner restrictions are (1) based on the government's significant interest in protecting the health and safety of the public, (2) narrowly tailored to serve a significant government interest and (3) leave open ample alternative channels of communication, Plaintiffs are not entitled to summary judgment.

### 4.   Houston's ordinance constitutional on its face and as applied and Houston's official policies do not cause a constitutional injury to Plaintiffs

28.   Because the ordinance is neither unconstitutional on its face nor as applied, Plaintiff cannot satisfy *Monell* and the City must be dismissed. *Monell v. Dep't of Soc. Servs. v. New York*, 436 U.S. 658, 694 (1978). The enactment and function of the City ordinance is a matter of government property rights and food safety and does not run counter to guaranteed First Amendment freedoms. In *United States v. O'Brien*, the United States Supreme Court held that a governmental regulation is justified if it "is within the constitutional power of the Government; if it furthers an important or substantial governmental interest" that is unrelated to the suppression

26

of free speech; and "if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. 367, 377 (1968).

29.    Regarding any "incidental restrictions on alleged First Amendment freedoms," any potential harm resulting from the prohibition of food service events on public property without the prior consent of the property owner is cured by the provision of an alternate, pre-approved location for food service events at 61 Riesner Street. *See* HOUSTON HEALTH DEPARTMENT, *Charitable Feeding* (last visited Sept. 20, 2023).[2] 61 Riesner Street has access to adequate parking, trash containment, restrooms, and hand washing stations in accordance with the HHD criteria detailed in subsection (A) and functions as an open alternative channel for the expression of the defendant's message, located less than a mile away from the 500 McKinney feeding location.[3]

30.    The challenged ordinance was passed for the health and safety of Houston's citizens, does not violate the constitutional rights of the Plaintiff, and is no more restrictive than necessary. The only requirement for an outdoor food service event serving 5 or more people is to obtain the consent of the property owner. *See*

---

[2] https://www.houstonconsumer.org/services/permits/food-permits/charitable-feeding.
[3] *Id.*; Walking Directions from 1000 Smith Street, Houston, TX 77002 to 61 Riesner Street, Houston, TX 77002, Google Maps, http://maps.google.com (using the "Directions" feature, search starting point field for "1000 Smith St., Houston, TX 77002" and search destination point field for "61 Riesner St., Houston, TX 77002").

Houston Code §§20-252; 20-254, attached as **Exh. C(1).** The ordinance programs are largely voluntary. *Id*. Establishing property owner consent for conducting activity on the owner's property does not qualify as a "moving force behind a constitutional violation" and Plaintiff's claims under *Monell* should be dismissed.

31.     The ordinance supports the health and safety of Houston's citizens and does not violate Plaintiff's constitutional rights. When one holds an outdoor food service event in which charitable food services are provided to five or more people at a time, a person or organization must do just one thing: obtain the consent of the property owner. *See* **Exh. C(1)**. Houston had only one approved location for charitable feeding as of February 24, 2023—61 Riesner Street, Houston, Texas 77002. *Id.* Plaintiff acknowledges that 61 Riesner Street is the only Houston property currently designated for charitable feeding, yet claims a preference for the Library Plaza. Dkt. 8 at 9, ¶24. Plaintiff does not articulate the manner in which he claims his constitutional rights have been violated. *See* Dkt. 8 at 10, ¶¶28-31.

32.     Plaintiffs' freedom of speech, association and religion claims are subject to the reasonable time, place and manner restrictions found in City Code Section 20-252 and in the HHD rules, regulations and guidelines governing charitable food service events. *See* motion at 11-13 (Dkt. 47). Plaintiffs' as-applied First Amendment challenge does not outweigh Houston's substantial health and safety interests or the City's responsibility to protect the health and safety of all its residents. *See* Dkt. 8 at

10, ¶¶28-31. By ensuring the public health concerns regarding food preparation, handling and storage are addressed, the ordinance protects all citizens of Houston and is not inconsistent with civil liberties protected by the First Amendment. Plaintiff's challenges do not outweigh the City's responsibility to protect the health and safety of all its residents. Plaintiff's challenge seeking to invalidate parts of the ordinance should be dismissed.

     **5.**    **Plaintiff's claims against Houston under 42 U.S.C. §1983 and the First Amendment to the U.S. Constitution are time-barred.**

    33.    Plaintiff first started sharing food with FNBH in 2011 and continued to share food on a weekly basis through 2023. *See* Deposition of Phillip Picone at 13, ln. 2-14, ln. 22, attached as **Exh. E**. Plaintiff previously challenged Houston's charitable feeding ordinance on August 7, 2019 in Civil Action No. 4:19cv1661; *Houston Food Not Bombs, Shere Dore, Phillip Picone, and Aliene Adams vs. City of Houston, Texas*, in the United States District Court for the Southern District of Texas, Houston Division. *See* Deposition of Phillip Picone at 13, ln. 6-21; 49, ln. 10-59, ln. 4, attached as **Exh. E**, and Exhibits 49-50, thereto, attached as **Exhs. E(1)-(2)**. Such lawsuit was dismissed in 2020. *See* **Exh. E** at 67, ln. 20-68, ln. 21, and Exh. 51 thereto, attached as **Exh. E(3)**. Plaintiff's 2023 lawsuit asserts the same claims as his 2019 lawsuit. City Code Sections 20-251, *et seq*. were enacted in 2012

and modified in 2015. Plaintiff's current challenge is untimely and is barred by the applicable statutes of limitations.

34.     Federal courts utilize the forum state's general personal injury limitations period for Section 1983 claims. *See Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 760 (5th Cir. 2015). "Although Texas law governs the limitations period and the tolling exceptions, federal law governs when a cause of action arises." *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992) (citing *Burrell*, 883 F.2d at 418). "Under federal law, a claim accrues and 'the [limitations] period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576) (5th Cir. 2001). Injury is a prerequisite to Plaintiffs' challenge to this ordinance under Section 1983 and the cause of action on a claim accrues when the injured party knows or has reason to know of the injury which forms the basis for the action. *See, e.g., Longoria v. City of Bay City, Texas*, 779 F.2d 1136, 1138 (5th Cir. 1986). Plaintiff admits he had sufficient information to know of any injury under the charitable food service ordinance on its effective date of July 1, 2012, and challenged the ordinance in 2019. (Dkt. 8 at 7, ¶17; 14, ¶56); **Exh. E** at 13, ln. 6-21; 49, ln. 10-59, ln. 4.

35.    The two-year limitations period in TEX. CIV. PRAC. & REM. CODE §16.003 applies to Plaintiff's First Amendment to the U.S. Constitution claims under Section 1983. *Piotrowski v. City of Houston*, 51 F.3d 512, 514 n.5 (5th Cir. 1995); *Piotrowski v. City of Houston*, 237 F.3d at 576.  Such two-year limitation period expired on July 1, 2014 and the two-year limitation period following the date such ordinance was amended expired on August 26, 2017. The residual four-year statute of limitations period following the original ordinance expired on July 1, 2014 and on August 26, 2019 for the amended charitable feeding ordinance. TEX. CIV. PRAC. & REM. CODE §16.051. In addition, the Texas Local Government Code provides that municipal acts or proceedings are conclusively presumed valid if not challenged within three years.  *See* TEX. LOC. GOV'T CODE §51.003(a). Plaintiff has been sharing food since 2011 yet sued the City on May 20, 2023. **Exh. E** at 14, ln. 15-23. Plaintiff's 2023 claims against Houston challenging the ordinance are time-barred.

**6.    Plaintiff's claims for permanent injunctive relief are not appropriate for summary judgment**

36.    By joining in Plaintiffs FNBH and Walsh's motion for permanent injunction, Plaintiff Picone impermissibly seeks to have the federal district court serve as a *de facto* federal housing best practices board that would displace the discretionary policymaking authority entrusted to local elected municipal government representatives and its community partners. As the Supreme Court noted in *City of Grants Pass, Oregon v. Johnson,* "[h]omelessness is complex. Its

causes are many. So may be the public policy responses required to address it." 603 U.S. 520, 560 (2024). A request for permanent injunctive relief, absent a viable substantive cause of action supporting entry of a judgment, is fatally defective and does not state a claim. *See, e.g.*, *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex. 2002). Houston has produced competent summary judgment evidence defeating Plaintiff's claims and causes of action on summary judgment. Because Plaintiffs have not demonstrated a likelihood of success on the merits, injunctive relief is not appropriate, and the court must preserve Houston's right to a jury trial. FED. R. CIV. P. 65(a)(2). As set forth more fully above, no controversy exists that can support the grant of injunctive relief and Plaintiffs' motion for permanent injunctive relief should be denied.

## VI.   CONCLUSION

For the reasons stated above, Defendant City of Houston respectfully requests that Plaintiffs' motion for summary judgment pursuant to Rules 56 of the Federal Rules of Civil Procedure be denied and that this Court grant such other relief to which Defendant may be justly entitled.

Respectfully submitted,

**ARTURO G. MICHEL**
City Attorney
**SUZANNE R. CHAUVIN**
Chief, General Litigation Section

By:      */s/ M. Lucille Anderson*
M. Lucille Anderson
Sr. Assistant City Attorney III
Federal ID No. 19377
Texas Bar No. 00793260
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-0368
832.393.6485
832.393.6259 Fax

**ATTORNEYS FOR DEFENDANT
CITY OF HOUSTON, TEXAS**

**OF COUNSEL:**

Kenneth Soh
Sr. Assistant City Attorney III
Federal ID No. 11882
Texas State Bar No.: 00794670
Kenneth.soh@houstontx.gov
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-0368
832.393.6485
832.393.6259 Fax

33

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2025, I served the following attorneys with a true and correct copy of the foregoing document in accordance with Rule 5(b)(3) of the Federal Rules of Civil Procedure via the court's electronic filing / service system (and/or mail to the plaintiff).

Randall Hiroshige
Travis Fife
Christina Beeler
Texas Civil Rights Project
1405 Montopolis
Austin, Texas 78741
(512) 474-5073

Remington Alessi
Attorney at Law
PO Box 230381
Houston, Texas 77223
(281) 438-3733

Randall Kallinan
Alexander C. Johnson
Kallinen Law PLLC
511 Broadway Street
Houston, Texas 77012

<u>*/s/ M. Lucille Anderson*</u>
M. Lucille Anderson
Senior Assistant City Attorney