# EXHIBIT E(2)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PHILLIP PICONE, | § | Civil Action No. 4:23-cv-1206 |
| *Plaintiff*, | § | (Jury Trial Demanded) |
| | § | |
| v. | § | |
| | § | |
| OFFICER A. ANCIRA, *in his* | § | |
| *individual capacity*; and THE | § | |
| CITY OF HOUSTON, TEXAS, | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT**

**TO THE HONORABLE ANDREW S. HANEN:**

NOW COMES PLAINTIFF Phillip Picone, pursuant to FRCP 15 amending and complaining of Officer A. Ancira, in his individual capacity, and the City of Houston, Texas for the violation of his First and Fourth Amendment rights requesting damages, a temporary restraining order, preliminary injunction, and permanent injunction. He respectfully shows the Court as follows:

### I. Jurisdiction and Venue

1. This Court has jurisdiction under 28 U.S.C. § 1331 federal question jurisdiction because this case arises under 42 U.S.C. § 1983 for an alleged violation of Plaintiff's civil rights. Jurisdiction also exists under 28 U.S.C. § 1343(3) to redress the deprivation of Plaintiff's civil rights.

2. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the Defendant resides within the District, and the incident at issue took place in and about Harris County, Texas.

## II.   Overview

3. Phillip Picone was seized for the purpose of being given a ticket merely for his participation in a food-sharing event with other volunteers associated with Food Not Bombs Houston (FNBH).[1] He is forced to appear in a City of Houston municipal court for trial.

4. The ordinance under which he was ticketed is the City of Houston's draconian anti-food-sharing law, for which FNBH has special permissions, despite the fact that his actions clearly did not meet *any* of the conduct prohibited by the ordinance; despite the City's best efforts, it cannot and did not outlaw compassion.

5. Absent any form of probable cause whatsoever, this seizure and the ticket violated his Fourth Amendment right to be free from unreasonable seizures, as well as his First Amendment rights to speak freely, associate with his fellow citizens, and freely practice his religion.

## III.   Parties

6. Plaintiff Phillip Picone is a resident of Harris County, Texas.

7. Defendant Officer A. Ancira is police officer for the City of Houston, Texas, and can be served with process at 61 Reisner Street, Houston, Texas 77002.

---

[1] A partially redacted copy of the ticket is attached as **Exhibit 1**.

*Plaintiff's Original Complaint*
**2** *of* **18**

8. Defendant City of Houston is a municipality within Harris County and the U.S. Southern District of Texas, and it can be served with process by serving the City Secretary at 900 Bagby, Houston, Texas 77012.

## IV. Facts

**Introduction and Background**

9. On the evening of Friday, March 3rd, 2023, Phillip Picone went to the Central Houston Public Library Plaza (the Library Plaza) to meet up with other FNBH members, where he shared high-quality vegetarian and vegan food with some of the City of Houston's citizens who are experiencing poverty or homelessness.

10. Phillip has been sharing food alongside other FNBH volunteers since October 2011, and has set aside most of his Fridays to do so since 2017, by which point he had retired from his career in foodservice.

11. Phillip grew up in a devout Catholic family, where he regularly attended and participated in church services, including as an altar boy, and he attended Catholic school all the way through his secondary education, after which he ultimately attended the Catholic University of St. Thomas Houston.

12. Due to his devout upbringing and education, the values and ethos of the Catholic faith are deeply ingrained in who Phillip is as a person and guides his actions and decisions.

13. The Bible contains numerous passages extolling the virtues of sharing food and resources with the hungry and poor, including this small sample of passages from the New Revised Standard Version Catholic Edition:

> **Psalm 146 vv. 5, 7** – Happy are those . . . who execute[] justice for the oppressed; who give[] food to the hungry.

**Tobit 1:16–17** – In the days of Shalmaneser I performed many acts of charity to my kindred, those of my tribe. I would give my food to the hungry and my clothing to the naked.

**Tobit 4:15–16** – And what you hate, do not do to anyone. Do not drink wine to excess or let drunkenness go with you on your way. Give some of your food to the hungry, and some of your clothing to the naked. Give all your surplus as alms, and do not let your eye begrudge your giving of alms.

**Proverbs 25:21** –If your enemies are hungry, give them bread to eat; and if they are thirsty, give them water to drink.

**Isaiah 58:10–11** – if you offer your food to the hungry and satisfy the needs of the afflicted, then your light shall rise in the darkness and your gloom be like the noonday. The LORD will guide you continually, and satisfy your needs in parched places, and make your bones strong; and you shall be like a watered garden, like a spring of water, whose waters never fail.

**Ezekiel 18:15–17** – Who does not . . . wrong anyone, exacts no pledge, commits no robbery, but gives his bread to the hungry and covers the naked with garment, withholds his hand from iniquity . . . he shall surely live.

**Matthew 25:34–36** – Then the king will say to those at his right hand, "Come, you that are blessed by my Father, inherit the kingdom prepared for you from the foundation of the world; for I was hungry and you gave me food, I was thirsty and you gave me something to drink, I was a stranger and you welcomed me, I was naked and you gave me clothing, I was sick and you took care of me, I was in prison and you visited me."

**Romans 12:19–21** – Beloved, never avenge yourselves . . . for it is written . . . "if your enemies are hungry, feed them; if they are thirsty, give them something to drink. . . ." Do not be overcome by evil, but overcome evil with good.

14. Many other religions including other Abrahamic religions like Islam, polytheistic religions like Hinduism, and others such as Buddhism or Unitarian

Universalism all have similar directives to their adherents to feed the hungry and care for the impoverished.

15. FNBH is a collection of anti-poverty, anti-food waste, and anti-war volunteers that recover high-quality vegetarian and vegan food, and share that food with those experiencing poverty and homelessness; their stated agreements and vison are as follows:

> We, participants in Food Not Bombs Houston (FNBH), agree;
>
> 1. to use sharing of free food, exchange of information, and dialogue as a means of promoting social justice, cultural exchange, horizontal organizing, and mutual aid
>
> 2. not to use or tolerate sexual, racial, or any other form of harassment, authoritarianism, assault, or threat thereof in conjunction with FNBH
>
> 3. to bring only vegan (containing no animal products) or ovo-lacto freegan (may contain dairy or egg, but obtained for free) food that is safe for consumption, and to indicate any non-vegan ingredients
>
> 4. to respect each other's privacy and views, to try to contribute constructively to the group, and to refrain from disparaging the contributions of others
>
> 5. not to sell food or otherwise profit from any kind of donations given to FNBH
>
> 6. not to represent our personal viewpoints as viewpoints of FNBH, or make decisions on behalf of FNBH
>
> 7. to establish a group decision before: inviting the media to FNBH sharings, giving interviews as a FNBH volunteer, giving the media names or any other information about those coming to share or eat (everyone can choose whether or not to speak for themselves)
>
> 8. to act in a friendly and calm manner when police visit FNB, and to explain to officers that we are just trying to help people

9. to encourage each other to call for a circle at any meal sharing to make proposals, work on group decisions, or raise concerns, including those about individuals not respecting these agreements

**Vision**

If we were to spend the amount of money we spend on weaponry on feeding the homeless. We could eliminate the homeless problem the world over. Poverty is a form of violence. We often assume that poverty is inevitable for some people, but with the surplus of food in this country alone, no one should have to go hungry. Poverty is, instead, a way of maintaining the status quo in a society. If everyone had equal access to the necessities of life, as well as equal opportunity to education, work, etc., some very powerful people would suddenly find themselves with a little bit less due to the fact that they no longer control such a large piece of the economic pie. As an organization, Food Not Bombs simply tries to redistribute a tiny portion of the wealth (in this case, food) that so many seem to not want to give up. The name "Food Not Bombs" means just that. With so many people at home and abroad going hungry, and so much of our wealth controlled by so few, and going towards such terrible things as weaponry, it's insane to assume that we can't redistribute some of that wealth to those who need it.

**International Food Not Bombs Mission Statement**

Food Not Bombs recovers and shares free vegan or vegetarian food with the public without restriction in over 1,000 cities around the world to protest war, poverty and the destruction of the environment. Each group is independent and invites everyone to participate in making decisions for their local chapter using the consensus process. Food Not Bombs is dedicated to taking nonviolent direct action to change society so no one is forced to stand in line to eat at a soup kitchen expressing a commitment to the fact that food is a right and not a privilege. With over a billion people going hungry each day how can we spend another dollar on war?[2]

---

[2] This statement was retrieved on March 29th, 2023, and can be found at FNBH's website: https://houstonfoodnotbombs.org/about/.

16. Although the people with whom Phillip and FNBH share food are experiencing poverty or homelessness, there are numerous food banks, charities, and shelters from which those individuals can, and often do, acquire food; their decision to share food with FNBH is driven by preference.

## The Anti-Food-Sharing Law and Context

17. In July 2012 under Mayor Annise Parker, the City of Houston passed the anti-food-sharing law, which primarily consists of Houston Code of Ordinances §§ 20-251 and 20-252, which read as follows:

### Sec. 20-251. – Definitions.

As used in this article, the following words and phrases shall have the meanings set forth in this section:

*Charitable food services* means providing food without charge, payment or other compensation to benefit those in need at an outdoor location not owned, leased, or controlled by the individual or organization providing the food.

*Food service event* means each instance in which charitable food services are provided to more than five individuals.

. . .

### Sec. 20-252. – Use of property without consent prohibited.

It shall be unlawful for any organization or individual to sponsor or conduct a food service event on public or private property without the advance written consent of the public or private property owner or other individual with lawful control of the property.

18. Shortly after this ordinance was passed, Mayor Parker provided an additional policy clarification document, attached here as **Exhibit 2** in its entirety,[3] which included the following language: "Mayor Annise Parker has designated the Central Houston Public Library Plaza, 500 McKinney, Houston 77002, as an approved charitable food service location for Food Not Bombs."

19. Despite this clear and explicit permission, officers from the Houston Police Department (HPD) have regularly been present at FNBH food sharing events (including those that Phillip attended) since the passage of the ordinance, although they had not previously given out tickets or made any arrests under the ordinance until the days leading up to Phillip's ticket on March 3rd, 2023.

20. To date, all FNBH food sharing events in which Phillip has participated have been orderly, and any potential conflicts were identified an de-escalated by the participating community and did not require police intervention; the event on March 3rd, 2023 was no different.

21. The anti-food-sharing law also creates a program called the City of Houston Recognized Charitable Food Service Provider Program (the Program) in the Houston Code of Ordinances §§ 20-253 and 20-254, which is a voluntary, non-exclusive program for individuals or organizations to work directly with the City to host "food service events" pursuant to the anti-food-sharing law.

22. Section 20-253 describes the Program as "a voluntary coalition," while § 20-254 expressly provides that "An individual or organization providing charitable food

---

[3] As of the filing of this document, this official statement is still published on the City of Houston's website and can be found at: https://www.houstontx.gov/citizensnet/HomelessFeedingProgram090512.html.

services with the consent of the property owner but without participating in the program established by this article shall not be deemed in violation of this article."

23. Participants in the Program are restricted to the use of 61 Reisner Street, where HPD is also located.

24. Many of those experiencing poverty or homelessness often seek to avoid interactions with the police due to the stigma attached to the former group and the devastating consequences of even a small ticket or short detention; due to this justified aversion and the inconvenience of the distance between the Library Plaza and 61 Reisner, many Houston citizens experiencing poverty or homelessness prefer FNBH's location at the Library Plaza.

25. FNBH does not participate in the Program, and has permission from Mayor Parker to use the Library Plaza apart from the Program that has not been officially, explicitly revoked by Mayor Parker or her successor, Mayor Sylvester Turner.[4]

26. After the anti-food-sharing law was passed in 2012, various citizens of Houston collected 34,000 petition signatures in an attempt to get rid of the law by placing it on the November 6the, 2012 election ballot.

27. The petition and signatures were presented to the City and were enough to place the issue on the ballot, but the City did not put the issue on the November 6th, 2012 ballot because the City falsely and without basis or evidence claimed that over ten thousand signatures were invalid; a separate petition garnered over 75,000 signatures against the anti-food-sharing law.

---

[4] *See* **Exhibit 2**, which gives FNBH specific, exclusive permission to use the Library Plaza "in addition" to (as in, separately from) the Program.

*Plaintiff's Original Complaint*
**9** *of* **18**

### March 3rd, 2023, Seizure and Ticket

28. On March 3rd, 2023, when Phillip was sharing food alongside other FNBH volunteers, he did not direct or manage the sharing of food in any way from an operational perspective, nor did he direct, manage, lead, or otherwise command any of the other volunteers or their actions.

29. After sharing food for about an hour, Phillip was approached by HPD Officer A. Ancira, who detained Phillip for the purpose of issuing Phillip a ticket; Ancira knew that Phillip was part of the FNBH group.

30. The location of the violation was listed as 500 McKinney and described the violation as "conduct[ing] a food service event (feed homeless) without consent of prop owner."[5]

31. Put differently, Phillip was ticketed for violating Houston Code of Ordinances § 20-252, which reads as follows: "It shall be unlawful for any organization or individual to **sponsor or conduct a food service event** on public or private property **without the advance written consent** of the public or private property owner or other individual with lawful control of the property" (emphasis added); a "food service event" as defined in § 20-251 involves serving food to 5 or more people "to benefit those in need."[6]

32. None of the following terms are defined in the anti-food-sharing law: "sponsor," "conduct," "benefit," or "those in need."

---

[5] **Exhibit 1.**
[6] "Charitable food services" is a defined term contained in the definition for "food service event."

33. In order for Phillip to be in violation of this ordinance, he must violate *every part* of the ordinance; or, put differently, if any element within the ordinance is not met, he cannot be in violation of the ordinance at all.

34. Phillip did not "sponsor or conduct" the food sharing event for which he was ticketed — the officer did not claim or have any information that Phillip was a sponsor of the event, nor could Phillip's actions be described as "conducting" the event, which is defined by Merriam Webster as follows:

> **Conduct** (verb)
> *Transitive verb*
>
> 1a: to direct or take part in the operation or management of
> b: to direct the performance of
> c: to lead from a position of command
>
> *Intransitive verb*
>
> 2a: to act as leader or director[7]

35. It is not clear whether the people experiencing poverty or homelessness are considered "those in need" under the ordinance, because they did not need the food provided by FNBH and Phillip, but preferred receiving food in that environment.

36. Perhaps most importantly, FNBH and Phillip have explicit, "advance written consent" to share food at the Library Plaza located at 500 McKinney.[8]

37. Because FNBH and Phillip have the explicit and advance written consent to use the Library Plaza, the anti-food-sharing law itself makes clear that their sharing of food is not a "violation of this article."

---

[7] Merriam Webster, "conduct," https://www.merriam-webster.com/dictionary/conduct (last visited March 29th, 2023.
[8] **Exhibit 2.**

38. Officer Ancira did not observe Phillip "conducting" the food sharing event on March 3rd, 2023, because Phillip did not do so.

39. Officer Ancira did not know whether or not the food sharing event was covered by the anti-food-sharing law because "those in need" is not defined.

40. Officer Ancira knew that FNBH, and, by extension, Phillip, had advance written consent to share food at 500 McKinney.

41. Despite observing these facts and having this knowledge, Officer Ancira detained Phillip and issued him a ticket for violating an ordinance with which Phillip was undoubtedly in compliance.

42. Members of Food Not Bombs have received around 30 additional tickets under similar circumstances as Phillip including several ticketed within the week before this instant filing. There is no sign that the Houston police will stop giving out tickets and if they did stop they could resume at any time.

43. Because Phillip might get another ticket he did not share food on at least one occasion since he received his first ticket. Phillip plans on further sharing of food with the homeless in the future and is very worried about getting another ticket.

44. Phillip has suffered great mental anguish including anxiety and depression because of his ticketing.

## V.   Civil Rights Violations

45. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

46. The Fourth Amendment to the U.S. Constitution reads as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath

or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

47. The First Amendment to the U.S. Constitution reads as follows:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**Claims against Officer Ancira under § 1983**

48. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

49. Plaintiff has a cause of action to redress his constitutional injuries under 42 U.S.C. §§ 1983 and 1988.

50. Officer Ancira knew that Phillip and FNBH had permission to use the Library Plaza at 500 McKinney, did not observe Phillip "conduct" a "food service event," and thus knew that he did not even arguably have probable cause to seize or in any way detain Phillip under the Fourth Amendment, and any reasonable officer would have known the same and not seized or ticketed Phillip.

51. Officer Ancira's decision to seize and ticket Phillip infringed on Phillip's rights under the First Amendment to engage in speech in the form of food sharing, to freely associate with those with whom he was sharing food, and to exercise his Catholic religion by feeding the hungry.

52. Because Officer Ancira did not even arguably have probable cause for the seizure, and because the ticket was written specifically to punish Phillip for "feed[ing]

homeless,"[9] Officer Ancira clearly issued the ticket in retaliation to Phillip's speech, association, and religious practice.

53. Being seized by a police officer, receiving a ticket that could result in a $2,000 fine, and risking jail would all deter a person of ordinary firmness from continuing to engage in these actions, which are ordinarily considered acts of compassion and kindness that should be lauded and encouraged in a civilized society.

## *Monell* claims against the City of Houston

54. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

55. Plaintiff has a cause of action to redress his constitutional injuries against the City under *Monell* because the City's official policies directly caused the constitutional injuries.

56. The City's policymakers — the City Council and Mayor Anise Parker — enacted the Anti-Food-Sharing Law as an official written policy of the City of Houston.

57. The Anti-Food-Sharing Law outlaws and discourages many forms of food sharing which directly led to Phillip's unconstitutional seizure and harm to his First Amendment right to freedom of expression, association, and religion.

58. Leading up to and following Phillip's arrest, the City has programmatically detained and ticketed members of FNBH at the Library Plaza under the Anti-Food-Sharing Law despite FNBH's permission to share food at the Library Plaza; this series of unconstitutional detentions and tickets is part of a City policy to issue such tickets until FNBH members stop exercising their constitutional rights to share food

---

[9] **Exhibit 1.**

with those experiencing poverty or homelessness at the Library Plaza, or, in the alternative, is a pattern or custom of action by the City that can be considered a policy.

**Facial challenge to the Anti-Food-Sharing Law**

59. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

60. The Anti-Food-Sharing Law is unconstitutional on its face: it violates the First Amendment by its unjustified prior restraint on citizens' ability to freely associate with others, freely express messages — for example, messages of compassion or against food waste — through the sharing of food, and freely exercise their sincerely held religious beliefs by feeding the hungry and helping the impoverished; it is overbroad in its prohibition of this protected First Amendment conduct; and it is unconstitutionally vague in its failure to define basic terms such as: "sponsor," "conduct," "benefit," or "those in need." *See, e.g., Houston v. Hill*, 482 U.S. 451 (1987).

61. This law cannot withstand any level of scrutiny, as it is not tailored at all to achieve a legitimate government interest.

62. The overbreadth and vagueness of the Anti-Food-Sharing Law not only serves as a prior restraint on citizens' compassionate exercise of their First Amendment rights by sharing food, it also allows for the unjust and arbitrary enforcement of the law to target certain individuals or groups, such as FNBH.

**As applied challenge to the Anti-Food-Sharing Law**

63. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

64. In addition and in the alternative, the Anti-Food-Sharing Law is unconstitutional as it was applied to Plaintiff.

65. Whether or not the law is facially valid, the use of the law to prohibit an individual from exercising his core rights in a manner that is otherwise expressly permitted is an unconstitutional application of the Anti-Food-Sharing Law.

## VI.   Punitive Damages

66. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

67. Officer Ancira's actions cause him to be liable for punitive damages, as he was deliberately and consciously indifferent to Plaintiff's constitutional rights, he committed such constitutional violations knowingly, and his actions were extreme, outrageous, and shocking to the conscious.

## VII.   Attorney's Fees

68. Plaintiff is entitled to recover attorneys' fees and costs to enforce his Constitutional rights under 42 U.S.C. §§ 1983 and 1988.

## VIII.   Jury Trial

69. Plaintiff requests a trial by jury on all issues triable to a jury.

## IX.   Prayer for Relief

70. Plaintiff respectfully requests that the Court:

   A. Enter judgment for the Plaintiff and against the Defendants, holding the Defendants liable;

   B. Find that Plaintiff is the prevailing party in this case, and award attorneys' fees and costs pursuant to federal law against the Defendants;

C. Award damages to the Plaintiff for the violations of his civil rights under the U.S. Constitution;

D. Award pre- and post-judgment interest;

E. Award punitive damages against the Defendants;

F. Award declaratory and injunctive relief against Defendants if such relief is reasonable and just;

G. Grant a temporary restraining order, preliminary injunction, and permanent injunction enjoining the City from enforcing the Anti-Food-Sharing Law,

H. Declare the Anti-Food-Sharing Law Unconstitutional, and

I. Grant any other further relief that is reasonable and just to which Plaintiff shows himself entitled.

Respectfully submitted,

*/s/ Alexander C. Johnson*
Alexander C. Johnson
Kallinen Law PLLC
State Bar of Texas
　　Bar No. 24123583
U.S. Southern District of Texas
　　Federal ID No. 3679181
511 Broadway Street
Houston, Texas 77012
Telephone: 573.340.3316
Fax: 713.893.6737
Email: alex@acj.legal

Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas
　　Bar No. 00790995
U.S. Southern District of Texas

Federal ID No. 19417
511 Broadway Street
Houston, Texas 77012
Telephone: 713/320-3785
Fax: 713.893.6737
Email: attoreykallinen@aol.com

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I certify that on May 20th, 2023, I have served a true and correct copy of the foregoing document that was delivered by the ECF in accordance with the Federal Rules of Civil Procedure to all ECF notice attorneys of record.

*/s/ Randall L. Kallinen*
Randall L. Kallinen